FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

NOV 3 1993

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

| | | |
|---|---|---|
| JENEVA FRAZAR, *et. al.*, | § | |
| plaintiffs, | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | 3:93CV65 |
| RICHARD LADD, *et.al.*, | § | |
| defendants | § | |

### DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, Richard Ladd, Texas Health and Human Services Commission, David Smith, the Texas Department of Health, Deann Friedholm, Bridget Cook, Susan Penfield, M.D. and Beverly Koops, M.D. ("Defendants") ,and file this, their Motion to Dismiss pursuant to Rule 12(b), F.R.Civ.P., or, in the alternative, Motion for Summary Judgment pursuant to Rule 56(b), F.R.Civ.P. In support of this Motion, Defendants respectfully would show the Court as follows:

### INTRODUCTION

*The Issue*

Plaintiffs argue that 1) federal Medicaid laws, regulations and interpretive guidelines require the Texas Early and Periodic, Screening, Diagnosis and Treatment ("EPSDT") program to *"assure"* or *"guarantee"* that a specific level of health care information and health care services *is received* by Medicaid eligible persons and 2) the Texas EPSDT program fails to satisfy this requirement.

Defendants contend that 1) *the express and unambiguous terms of* federal Medicaid laws and regulations--not interpretive guidelines--require that the Texas EPSDT program be *"designed "* to *"provide"* for health care information and health care services to Medicaid eligible persons, and 2) the Texas EPSDT program is in *substantial compliance* with and *reasonably attempts to accomplish* the purposes of applicable federal laws and regulations.



*EPSDT*

As part of the Medicaid program, EPSDT's purpose is "...*providing* Early and Periodic Screening and Diagnosis of eligible Medicaid recipients under age 21 to ascertain physical and mental defects and *providing* treatment to correct or ameliorate defects and chronic conditions found." 42 C.F.R. § 441.50

The Texas EPSDT program, published by the Department of Human Services in the *Medicaid Provider Procedures Manual,* is attached hereto as Exhibit "A."

*The Federal/State Medicaid "contract"*

Justice BRENNAN described the framework of the current Medicaid system in *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498 [110 S.Ct. 2510, 110 L.Ed.2d 455] (1990):

> "[M]edicaid is a cooperative federal/state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals. Although participation in the program is voluntary, participating States must comply with certain requirements imposed by federal law and regulations promulgated by the Secretary of Health and Human Services ("Secretary")[through its administrative arm the Health Care Financing Administration ("HCFA").]"

The express terms of this federal/state contract--the federal laws and regulations--must be "unambiguous" and "stated with a clear voice." *Pennhurst State School v. Halderman,* 451 U.S. 1, 17, [67 L.Ed.2d 694, 101 S.Ct. 1531] (1981).

*The Claim*

Plaintiffs assert a federal claim pursuant to 42 U.S.C. § 1983[1] arguing in six "causes of action" (not claims) that the Texas EPSDT program, as implemented by state policies, is deficient and has caused Plaintiffs to be deprived of rights, privileges or immunities secured by federal Medicaid statutes, specifically, 42 U.S.C. §§ 1396a(a)(43); 1396d(r).[2]

---

[1] 42 U.S.C. § 1983 provides that: [E]very person who, under color of any statute, ordinance, regulation, custom or usage of any State...subjects, or causes to be subjected, citizens...to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law...
[2] amended complaint paragraph 3

2

*Defendants' Response*

Defendants move to dismiss the amended complaint in that:

*I)* Plaintiffs seek injunctive and prospective relief against *a state agency* in federal court in violation of the Eleventh Amendment to the United States Constitution;

*II)* Plaintiffs' *§ 1983 claim is legally insufficient* and cannot be sustained in that:

*A.)* the amended complaint fails to properly allege or show that Plaintiffs' rights allegedly deprived are *guaranteed by federal law;* and

*B.)* the amended complaint fails to properly plead specific facts with sufficient particularity to allege or show that Plaintiffs were subjected to a *deprivation* by Defendants.

*The Common Goal*

At the outset, Defendants clearly recognize that the state of Texas has no greater interest than promoting the health and welfare of the state's children and young adults. Defendants also recognize that, whatever the cause, Plaintiffs' circumstances, in particular, are of great concern. Defendants share the commitment to quality health care and the EPSDT program and only dispute Plaintiffs' bald assertions that the Texas EPSDT program is deficient as measured by inapplicable and subjective standards. The development and implementation of the Texas EPSDT program is necessarily defined and controlled by specific federal laws and regulations. This clearly stated legal structure is essential to all parties so that the EPSDT portion of the Medicaid program can be understood, managed, evaluated and successfully implemented.

## I. LACK OF JURISDICTION

*Eleventh Amendment Immunity for State Agencies*

As a preliminary consideration, Plaintiffs assert a claim in federal court against two State agency Defendants, the Texas Health and Human Services Commission and the Texas Department of Health.

As agencies of the State of Texas, these Defendants share in the State's immunity under the Eleventh Amendment to the United States Constitution. U.S.C.A.Const. Amend. 11. An unconsenting

State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 233 (1964); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Absent an *express waiver* of its Constitutional immunity by the State, neither the State nor its agencies may be sued for injunctive relief in federal court. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978); *Sessions v. Rusk State Hospital*, 648 F.2d 1066 (5th Cir. 1981). The State agency Defendants have not waived their Eleventh Amendment immunity.

The burden of establishing jurisdiction is always on the party asserting it. *See Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982). In this case, Plaintiffs' have made no showing that the Eleventh Amendment bar should not apply to the State agency Defendants. Therefore, Defendants' Motion to Dismiss for lack of jurisdiction as to the Texas Health and Human Services Commission and the Texas Department of Health, pursuant to Rule 12(b), F.R.Civ.P., should be granted.

*"Official Capacity" Defendants*

In addition to the immunity of the State agency defendants, several Defendants have been improperly sued as "official capacity" defendants[3] In an "official capacity" suit a governmental entity is liable under § 1983 only when the entity itself is a "moving force behind the deprivation." *Kentucky v. Graham*, 473 U.S. 167 [105 S.Ct. 3099] (1985), *Polk County v. Dodson*, 454 U.S. 312, 326[ 102 S.Ct. 445, 454, 70 L.Ed.2d 509] (1981). The entity's policy or custom must have played a part in the violation of federal law. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55, [98 S.Ct. 2018,2035, n.55, 56 L.Ed.2d 611] (1968). The implementation of state policy or custom may be reached in federal court only because "official capacity" actions for prospective relief are not treated as actions against the state. *See Ex parte Young*, 209 U.S. 123,[28 S.Ct. 441, 52 L.Ed. 714] (1908).

In this case, the amended complaint alleges as "official capacity defendants" persons that are *not* directly responsible for state policy or custom. For example, Bridget Cook, Susan Penfield, M.D., and

---

[3] amended complaint paragraphs 8,10,12, 13

4

Beverly Koops, M.D., as employees of the Texas Department of Health may participate in the development of policy but have no authority to adopt or create policy. It is the Board of the Texas Department of Health and the Texas Health and Human Services Commission ("THHSC") that officially creates and adopts policy. The THHSC is the single state agency responsible for creating policies and customs of the Texas EPSDT program. Moreover, should Plaintiffs prevail, the Court may only prospectively enjoin those officials with authority to create policy or who are responsible for policy implementation. Defendants Cook, Penfield and Koops fit neither of these categories. Therefore Defendants' Motion to Dismiss as to these individuals pursuant to Rule 12(b) F.R.Civ.P. should be granted.

## II. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Ten years ago in *Mitchell v. Johnston,* 701 F.2d 327 (5th Cir.1983), this Circuit evaluated the Texas EPSDT program in a § 1983 action--specifically, the court examined the Texas Legislature's cutbacks in EPSDT funding and services. The court held that suits in federal court under section 1983 are proper to secure compliance with the provisions of the ***Social Security Act*** on the part of participating states. *Mitchell, 701 F.2d at 344 (citing Maine v. Thiboutot,* 448 U.S. 1 [100 S.Ct. 2502, 65 L.Ed.2d 555] (1980).

However, the ***key distinctions*** between *Mitchell* and the instant case are: A.) Plaintiffs' allege rights that are ***not secured by provisions of the Social Security Act***; B.) in this case there have been no state legislative cutbacks nor any other overt "deprivation" and Plaintiffs have failed to allege specific facts whereby their injuries resulted from Defendants' actions. Therefore, *Mitchell* is fundamentally different from the instant case and § 1983 jurisdiction is improper in the facts of this case.

### *A. FAILURE TO PROPERLY ALLEGE RIGHTS SECURED BY FEDERAL LAW*

In a § 1983 suit, the first inquiry is whether Plaintiff has been deprived of a right secured by the federal Constitution and laws. *Baker v. McCollan,* 443 U.S. 137, [99 S.Ct. 2689, 61 L.Ed.2d 433] (1979). In this case, Plaintiffs have alleged the deprivation of rights guaranteed by 42 U.S.C. §§ 1396a(a)(43);

5

1396d(r).[4] As noted above, the Medicaid laws and regulations are the express terms of the federal/state Medicaid "contract" and, to be enforceable, these terms must be "unambiguous" and "stated with a clear voice." *See Pennhurst, supra.* A necessary and painstakingly detailed review of the applicable Medicaid laws and regulations reveals that Plaintiffs' allege guaranteed rights based on 1) inaccurate readings of the law, 2) interpretive guidelines without the force of laws, or 3) contradictions of terms defined by HCFA regulations.

### *1) INACCURATE READING OF THE LAW*

Plaintiffs' 42 U.S.C. § 1983 claim is not based on an accurate reading of the law.

For example, Plaintiffs sixth cause of action states:

> "62. Defendants and the Texas EPSDT Program do not *assure* that EPSDT services exist, operate and function **uniformly** in all political subdivisions of the state. **42 U.S.C. § 1396 a(a)(1); 42 C.F.R. § 431.50**" (Emphasis added)[5]

However, a careful reading of 42 U.S.C. § 1396a(a)(1) reveals the following:

> "§ 1396a. State Plans for medical assistance
> (a) contents
> A State plan for medical assistance must--
> (1) *provide* that it shall be *in effect* in all political subdivisions of the State, and, if administered by them, be mandatory upon them;"
> (Emphasis added) 42 U.S.C. 1396a(a)(1)

This section employs the active terms *"provide"* and *"in effect"* and does not employ the terms *"assure"* or *"uniformly"* as Plaintiffs assert. In addition, a careful reading of the second authority cited by Plaintiffs reveals the following:

> "§ 431.50 Statewide Operation
> (a) *Statutory basis.* Section 1902(a)(1) of the Act require a State plan to be in effect throughout the State, and section 1915 permits certain exceptions.
> (b) *State plan requirements.* A State plan must provide that the following requirements are met:
> (1) The plan will be in operation statewide through a system of local offices, under equitable standards for assistance and administration

---

[4] amended complaint paragraph 3
[5] amended complaint paragraph 64

6

>     that are mandatory thoughout the State.
> (2) If administered by political subdivisions of the State, the plan will be mandatory on those subdivisions.
> (3) The agency will ensure that the plan is continuously in operation in all local offices or agencies through
> (i) Methods for informing staff of State policies, standards, procedures, and instructions;
> (ii) Systematic planned examination and evaluation operations in local offices by regularly assigned State staff who make regular visits; and
> (iii) Reports, controls, or other methods.
> (c) *Exceptions.* (1) Statewide operation does not mean, for example, that every source of service must furnish the service State-wide..."

It is apparent that this regulation does not employ the terms *"assure"* or *"uniformly"* as Plaintiffs assert. Plaintiffs cite no other authority which imposes the duty to *"assure"* that the Texas EPSDT program operates *"uniformly"* throughout the state.

It is important to recognize that the duty to *"assure"* that the Texas EPSDT program operates *"uniformly"* throughout the state is a much greater burden on the state than is the duty to *"provide"* that the state plan shall be *"in effect"* in all political subdivisions. *See Perales v. Sullivan*, 948 F.2d 1348 (2nd Cir. 1991). As a point of statutory interpretation, many sections of 42 U.S.C. 1396 *et. seq. do* employ the term *"assure" or "assurance"* [6] and it is significant that the authority relied upon by Plaintiffs *does not* employ this term. It is obvious that the terms of these authorities cannot be freely interchanged without materially altering the Federal/State Medicaid "contract."

In similar fashion, Plaintiffs' first, second, fourth and fifth "causes of action" cite 42 U.S.C. § 1396d(r) as authority requiring that the Texas EPSDT program:

1) *"assure"* that recipients receive health, dental, vision and/or hearing screens... ;

2) *"meet"* annual participation goals... ;

3) *"assure"* that recipients receive other necessary health care... ; and

4) *"assure"* that case management services are available.... (emphasis added)[7]

---

[6] 42 C.F.R. § 441.352, (State Assurances)
[7] amended complaint Paragraphs 59, 60, 62, 63

7

However, a careful reading of 42 U.S.C. § 1396d(r)-- a section devoted to definitions-- reveals that this authority:

1) does **not** employ the term nor impose the duty to *"assure"* that recipients receive health, dental, vision and hearing services... ;

2) does **not** employ the term nor impose the duty to *"meet"* annual participation goals...; (In fact, the only duty expressed by 42 U.S.C. 1396d(r) regarding *"annual participation goals"* is imposed on the Secretary of Health and Human Services, not on the States)

3) does **not** employ the term nor impose the duty to *"assure"* that recipients receive other benefits... ;

4) does **not** employ the term nor impose the duty to *"assure"* that case management services are available...

As stated above, the key distinction here is that the duty to *"assure"* certain Medicaid services is a vastly greater burden on the State than is the duty to *"provide"* for these services. In the context of a Federal/State Medicaid "contract" these two terms cannot be freely interchanged without materially altering the agreement. Again, other sections of 42 U.S.C. 1396 *et. seq. do* employ the term *"assure" or "assurance"* and it is significant that this term is not used in the sections cited by Plaintiffs.

In contrast to Plaintiffs' sixth cause of action, these four causes of action also cite § § 5121; 5124; 5310; 5330; 5360 of HCFA's *State Medicaid Manual* ( these sections are attached hereto as exhibit "B") as authority imposing duties on the Texas EPSDT program.[8] A fundamental flaw in this allegation is that the terms used in the *State Medicaid Manual* are ***not federal laws securing underlying rights*** but are ***interpretive guidelines*** and cannot be freely substituted as federal laws that secure rights, privileges or immunities under a § 1983 claim. This will be more fully detailed below.

---

[8] amended complaint paragraphs 59,60,62,63

8

## *2)DUE PROCESS CONSIDERATIONS:*
## *WHY INTERPRETIVE GUIDELINES DO NOT HAVE THE FORCE AND EFFECT OF LAW*

Interpretive rules and guidelines expressed in HCFA 's *State Medicaid Manual* are not equal in force and effect to laws and regulations published in the *United States Code* and the *Code of Federal Regulations*. *See Perales v. Sullivan*, 948 F.2d 1348 (2nd Cir. 1991). An interpretive rule is made by an agency to give guidance to its staff and to affected parties as to how the agency intends to administer a statute or regulation. *See Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250 (3rd. Cir. 1978). Where interpretive rules are promulgated, no law is created and no obligation is imposed on the State. *Mathews, supra.*

In order for HCFA guidelines to have the force and effect of laws and regulations, the agency must first have the delegated legislative authority. If that condition is satisfied, the agency guidelines must be made "substantive rules." To create "substantive rules" the HCFA must follow rule-making procedures mandated by the Administrative Procedures Act ("APA") 5 U.S.C. § 551 *et. seq.*; *See also Perales, supra.(**assurance requirement** was a "substantive" regulation, and thus, department was required to give notice to state prior to enacting **assurance** requirement).*

The APA requires that federal agencies provide notice and an opportunity for interested persons to comment on agency rules prior to their promulgation. *See New Jersey v. Department of Health and Human Service*, 670 F.2d 1262, (3rd Cir. 1981). The purpose of the notice and comment procedure is to:

> "ensure that unelected administrators, who are not directly accountable
> to the populace, are forced to justify their quasi-legislative rule making before
> an informed and skeptical public" *New Jersey, supra.*

In contrast to interpretive rules, substantive rules promulgated by agencies create new law affecting individual rights and obligations. *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Substantive rules create laws and impose general, additional obligations pursuant to properly delegated legislative authority. *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir. 1984). The creation of substantive rules imposes an obligation on the state and invokes the notice and comment procedure outlined in the APA, 5 U.S.C. § 551 *et. seq.*

In sum, the APA sets out a safeguard for agency rule-making: 1) If the agency issues an "interpretive" rule it is not required to abide by the notice and comment procedure--but the rule does not have the force and effect of law; 2) If the agency is empowered by the legislature to issue a "substantive" rule, a properly promulgated rule has the force and effect of law --but the agency must first comply with the notice and comment requirements of the APA.

In this case, HCFA has not created substantive rules by administrative fiat by simply publishing the *State Medicaid Manual.* While Congress has delegated to HCFA legislative authority to promulgate regulations, HCFA *has not* employed this substantive rule-making procedure to employ the terms *"assure"* or *"meet"* or *"uniformly"* upon which Plaintiffs rely. Plaintiffs offer no authority for the proposition that Congress intended interpretive guidelines to circumvent the APA and operate as a substitute for promulgated regulations and *laws*.

As a point of statutory interpretation, HCFA complies with the requirements of the APA to issue "substantive" rules and apply the term *"assure"* when it chooses to do so and the fact that it has not done so in this instance is significant. This will be more fully detailed below.

### 3) *PLAINTIFFS' ALLEGATIONS CONTRADICT TERMS DEFINED BY HCFA*

Plaintiffs' third "cause of action" asserts that the Texas EPSDT program does not *"effectively inform"* all persons in the State about available EPSDT services... .[9] Plaintiffs' reliance on this term improperly contradicts HCFA's definition of the term *"effectively inform"* and omits important written qualifications applied in conjunction with this term. For example, 42 C.F.R. § 441.56(a) states, *inter alia*:

> "Required Activities
>
> (a) *Informing.* The agency must--
> (1) Provide for a combination of written and oral method *designed to inform effectively* all EPSDT eligible individuals (or their families) about the EPSDT program.
> (2) Using clear and nontechnical language, provide information about the following...
> (3)*Effectively inform* those individuals who are blind or deaf, or who cannot read or understand the English language.

---

[9]amended complaint paragraph 61

>   (4) Provide *assurance* to HCFA that processes are in place to *effectively inform* individuals as required under this paragraph, generally within 60 days of the individual's initial Medicaid eligibility determination and in the case of families which have not utilized EPSDT services, annually thereafter."
>   (Emphasis added) 42 C.F.R. § 441.56

It is important to note that this regulation precedes the active term *"inform effectively"* with the qualifying term *"designed to."* This qualification is consistent with one of the overall purposes of the Medicaid legislation--providing states with flexibility and latitude when formulating a plan to implement EPSDT requirements.

For example, in October of 1984, when 42 C.F.R. 441.56 (a "substantive" rule) was promulgated, the definition of the term *"effectively inform"* was specifically addressed by HCFA during the APA-required "notice and comment" procedure.[10] The comments and responses stated, *inter alia*:

>   "Comment-- One commenter recommended that the regulation include a specific acknowledgment that those administering the program cannot force its benefits on children over the objections of their parents.
>
>   Response-- We believe the suggested addition is unnecessary because at various points the regulation underscores the fact that *participation in EPSDT is voluntary. Screening, other health services, and transportation and scheduling assistance are provided only after the recipient, or recipient's family, requests the services.*"
>
>   Comment--One commenter believes it would be helpful for HCFA to provide in regulations additional guidance concerning the requirement to *"effectively inform."* ...
>   Response--In the preamble to the proposed rule we stated that it was our intent to simplify and provide for *State flexibility* in the informing requirement while still requiring that States to effectively inform eligibles about EPSDT. To this end, we believe that *any further detail or specificity beyond that contained in the proposed regulation, along with the change described above to § 441.56 in this final rule is inappropriate. Effective informing requires States to use methods of communication that recipients can clearly and easily understand to ensure that they have the information they need to utilize fully the services to which they are entitled. The proposed regulations require agencies to provide for a combination of written and oral methods designed to effectively inform all EPSDT eligible individuals (or their families) about the program.*
>   (Emphasis added) 49 Fed.Reg. 43654-01

---

[10] 49 FR 43654-01

11

This notice and comment recording is very important for four reasons. First, it clearly demonstrates that HCFA is well aware of and meticulously complies with the mandates of the APA when a "substantive" rule is promulgated. Second, as noted above in a statutory interpretation argument, this regulation demonstrates that HCFA employs the term *"assurance"* in "substantive" rules when and where it decides such an important term is necessary.

Third, it is apparent that HCFA's intent was to *simplify* and *provide for State flexibility* regarding the informing requirement. Finally, it is apparent that HCFA specifically decided *not* to add further detail or specificity to the term *"effectively inform"* other than to require "states to use methods of communication that recipients can clearly and easily understand."

In this case, the express term relied upon as *federal law and regulation* by Plaintiffs has been defined to allow states simplicity and flexibility in the informing process. Plaintiffs' third "cause of action" asserts that the Texas EPSDT program "does not effectively inform all persons in the State."[11] But this is *not the duty* imposed by the regulation. HCFA employed the term *"effectively inform"*--and the regulation clearly states-- to impose a duty that the EPSDT program provide a method *"designed to" effectively inform.*

Similar to the distinction between the duty "to assure" and the duty "to provide" discussed above, the duty to *effectively inform all persons in the State* is a much greater burden on the state than is the duty to *provide a method designed to effectively inform.* These two distinct duties cannot be freely interchanged by Plaintiffs without materially altering the terms of the federal./state Medicaid contract.

### B. FAILURE TO STATE SPECIFIC FACTS ALLEGING A DEPRIVATION

Even assuming, *arguendo,* that Plaintiffs possess an underlying right *guarantee by federal laws and regulations*, Plaintiffs have still failed to allege or show that Defendants caused a *deprivation* of this right--an essential element of a § 1983 claim.

---

[11] amended complaint paragraph 61

In order to properly assert a § 1983 case or controversy in federal court, a plaintiff must show 1) that he or she personally has suffered some actual or threatened injury, 2) that the injury resulted from the putatively illegal conduct of the defendant, and 3) that the injury is likely to be redressed by a favorable decision of the Court. *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450.

In addition, Rule 12(b), F.R.Civ.P., provides that dismissal of a claim is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Blum v. Morgan Guar. Trust Co. of New York*, 709 F.Supp.1463 (11th Cir. 1983); *Cannon v. University of Chicago*, 648 F.2d 1104 (7th Cir. 1981). Simply alleging a § 1983 claim is wholly insufficient--- a plaintiff must plead specific facts with sufficient particularity to set out the required elements of a § 1983 claim. *Elliot v. Perez*, 751 F.2d 1472 (5th Cir. 1985). As stated in *Rodriguez v. Avita*, 871 F.2d 552 (5th Cir. 1989),

> "...it has been laid down as the law of our Circuit that in 'cases invoking 42 U.S.C. § 1983 we consistently require the claimant to state specific facts, not merely conclusory allegations.'"

In this case, Plaintiffs fail to plead specific facts with sufficient particularity to allege a ***deprivation*** of rights, privileges or immunities under color of state law. For example, the amended complaint alleges that "Defendants and the Texas EPSDT program do not employ ***policies or procedures*** to assure" various levels of health awareness and services.[12] Such an allegation is wholly conclusory and is patently insufficient to state a claim for relief. As stated in *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992):

> "...Plaintiffs did not come close to the degree of particularity required to plead a § 1983 claim adequately. The 'blunderbuss phrasing of the arguable claims in the plaintiffs' complaints' are wholly insufficient to state a § 1983 claim. They state no facts to support their bald assertions that Arlington's policies, or its failure to implement policies, in any way violated Fraire's constitutional rights..." *Fraire*, 957 F.2d at 1278

---

[12] amended complaint paragraphs 3,59,62

13

Generally, Plaintiffs' fail to allege a proper case or controversy by failing to show that their injuries *resulted from* Defendants' putatively illegal, intentional actions or grossly negligent conduct. *See Davidson v. Cannon,* 474 U.S. 344, 106 S. Ct. 668, 88 L.Ed.2d 677 (1986); *See also Gladstone, Realtors, v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979). In particular, this Circuit requires that a § 1983 Plaintiff allege or show *specific facts with sufficient particularity* to state the essential element of a § 1983 claim. Since a "deprivation" is one of the essential elements of a § 1983 claim, and since Plaintiffs have failed to allege specific facts wherein Defendants caused a "deprivation", Plaintiffs' allegations are wholly insufficient to assert a proper § 1983 claim.. *See Baker v. McCollan,* 443 U.S. 137 (1979).

Plaintiffs also fail to allege that their injuries are *likely to be redressed by a favorable decision of the Court.* That is, Plaintiffs fail to specify what prospective and injunctive relief the court could order which would *assure* that their knowledge of and utilization of available EPSDT screens is 100% efficient. Even HCFA's interpretive guidelines, published in the *State Medicaid Manual,* plan to achieve only an 80% EPSDT efficiency by 1995--utilizing the combined efforts of the U.S. Department of Health and Human Services, the Texas Department of Health, the Texas Department of Human Services and numerous other state, county and local administrative and outreach programs. Plaintiffs' fail to state a proper § 1983 case or controversy in that the relief requested is *too general* to be granted by this court.

Since the necessary elements of § 1983 case or controversy have not been properly alleged, Defendants' Motion to Dismiss pursuant to Rule 12(b), F.R.Civ.P., should be granted.

### *THE TEXAS EPSDT PROGRAM SUBSTANTIALLY COMPLIES WITH AND REASONABLY ATTEMPTS TO ACCOMPLISH THE PURPOSES OF MEDICAID LAWS AND REGULATIONS*

Perhaps as important as complying with the *express terms* of Medicaid laws and regulations, Defendants point out that the Texas EPSDT program reasonably attempts to accomplish the purposes of Medicaid legislation. The Texas EPSDT program employs numerous techniques and publications within the Medicaid community to provide information and health care services designed to be sufficient in amount, duration and scope. Some of these techniques and publications are attached hereto as Exhibit "C." These techniques and publications include:

1. Monthly Medical Care Identification form (informing persons of eligibility)
2. EPSDT information brochures, in English and Spanish
3. A User's Guide to Medicaid (including EPSDT) publication, in English and Spanish
4. EPSDT periodicity schedule of available screens (given to providers)
5. EPSDT medical screening form--a copy of which is retained by the person screened
6. EPSDT-Comprehensive Care Program
7. *Medicaid Provider Procedures Manual Bulletin* (given to providers)
8. annual notification of availability of benefits
9. notices of screens due

In addition to these notices and publications, an outreach program has been implemented involving the resources of numerous state agencies to identify, locate, inform, screen and treat persons eligible under EPSDT. A thorough examination of these outreach procedures in set out in the affidavit of Bridget Cook, EPSDT program director for the Texas Department of Health, attached hereto as Exhibit "D."

## CONCLUSION

As stated at the beginning of this Motion to Dismiss, Defendants share the common goals of quality health care and an effective EPSDT program in this state. Initially, it appears superfluous to examine in minute detail the distinctions between the words such as "assure" and "provide" when the interest at issue is the health of the state's children and young adults. However, Defendants point out that *certainty* of the governing law--and the duties and obligations imposed thereby--is an essential element in planning and implementing the Medicaid program and achieving these goals. For if Medicaid law is not defined by its express terms, and materially different terms and duties can be freely substituted at will then *ambiguity* and *uncertainty* within the responsible state agencies affected will result. State agencies would be required to devote more resources to interpreting and defending ambiguous claims and evaluations-- leaving fewer resources to serve the EPSDT population. In addition to this required certainty, the *Constitutional mandates of Due Process* require that before the federal/state contract can be materially altered by adding different terms and freely substituted duties, the states must be given *notice and an opportunity to be heard.* In sum, freely substituting materially different terms and duties is decidedly *not in the long term best interest of the EPSDT program or the children it serves*.

Based on the authorities stated above, Defendants respectfully request that their Motion to Dismiss the amended complaint be GRANTED.

15

Respectfully submitted,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY F. KELLER
Deputy Attorney General for Litigation

JORGE VEGA
Chief, General Litigation Division

_____
EDWIN N. HORNE
Bar No. 10008000
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been sent via certified mail, return receipt requested on October 21, 1993 to:

Susan Finkelstein Zinn
Texas Rural Legal Aid, Inc.
405 N. St. Mary's, Suite 910
San Antonio, Texas 78205

Sharon Reynerson
East Texas Legal Services
15 S.W. First Street, 5th Floor
Paris, Texas 75460

_____
EDWIN N. HORNE