ECD 8-15-94

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

PARIS DIVISION

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 1 0 1994

BY DAVID J. MALAND, CLERK
DEPUTY

| | | |
|---|---|---|
| LINDA FREW, at al., | § | |
| Plaintiffs, | § § § | |
| V. | § § | 3:93 CV 65 |
| RICHARD LADD, et al., | § § | |
| Defendants. | § § | |

O R D E R

I.  Background

Plaintiffs, as next friend of their minor children, have filed suit against Richard Ladd, and others, claiming that defendants do not adequately provide Early and Periodic Screening, Diagnosis, and Training (EPSDT) to young Medicaid recipients, as required by 42 U.S.C. §§ 1396a(a)(43) and 1396d(r).  Plaintiffs instituted this civil action pursuant to 42 U.S.C. § 1983 against defendants, alleging that the Texas EPSDT program (1) does not have policies and procedures to assure that recipients receive health, dental, vision, and hearing screens; (2) does not meet the annual participation goals that the Secretary of Health and Human Services set for the program; (3) does not effectively inform all eligible persons about the availability of EPSDT; (4) does not have policies or procedures to assure that recipients receive other necessary health care, diagnostic services, treatment, and other measures; (5) does not assure that case management services are available to all EPSDT recipients as needed; and (6) does not assure that the

EPSDT services exist, operate, and function uniformly in all political subdivisions of the state.

Defendants have filed a motion to dismiss and, in the alternative, a motion for summary judgment.[1] Defendants proffer several arguments to support their assertion that plaintiffs' claims cannot be maintained under 42 U.S.C. § 1983. First, defendants assert that plaintiffs have not demonstrated that they have been deprived of any right secured by the Constitution or federal law. Defendants further contend that plaintiffs do not possess a private right of action to enforce the participation goals established by the Secretary of Health and Human Services. Finally, defendants maintain that the plaintiffs do not have Article III standing. In addition, several of the defendants submit, that, because they do not have the authority to create state policy, a suit against them for prospective injunctive relief is improper. Finally, defendants move to dismiss the two state agency defendants, since they are allegedly immune from suit pursuant to the Eleventh Amendment of the Constitution.

After thoroughly reviewing the briefs and accompanying evidence submitted by the parties, as well as the relevant case law, it has been determined that the defendants' motion to dismiss is without merit, except as to the state agency defendants. For the reasons discussed in more detail below, the defendants' motion

---

[1] Since the arguments urged in defendants' motion raise purely legal questions that do not require any factual determinations, the motion will be treated as a motion to dismiss for failure to state a claim, and not as a motion for summary judgement.

will be denied in part and granted in part.

## II.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is authorized to dismiss a claim on the basis of dispositive law. Neitzke v. Williams, 490 U.S. 319, 326 (1989).  The motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.   Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105 (1983).   In reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them.   O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).   Rule 12(b)(6) does not countenance dismissals based on disbelief of a complaint's factual allegations.  Neitzke v. Williams, 490 U.S. at 327.

## III.   Analysis

### A.   Standing

Defendants contend that the complaint should be dismissed because plaintiffs have failed to properly assert Article III standing.   The irreducible constitutional minimum of standing contains three elements: 1) plaintiff must have suffered an actual injury; 2) there must be a causal connection between the injury and the defendant's allegedly illegal conduct; and 3) that the injury is likely to be redressed by a favorable judicial determination. Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992).   The Court has explained that in considering a motion to dismiss,

3

general factual allegations of injury resulting from defendants' conduct will suffice because, on a motion to dismiss, a court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim." Id. at 2137 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

In the instant action, plaintiffs have alleged substantial injury in fact. Plaintiffs maintain that they have not had the periodic screening, nor have they had other medical treatment such as follow-up care for ongoing medical problems. Defendants maintain that plaintiffs have not demonstrated any causal connection between their injuries and defendants' allegedly illegal conduct. Although plaintiffs do not state that they would have used the EPSDT services if they had been aware of them, the court finds that this is an obvious and inevitable inference based on plaintiffs' allegations.[2] The injuries complained of in the instant action are "fairly . . . trace[able] to the challenged action of the defendant[s]." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976). In an effort to clarify any question regarding the causal connection, plaintiffs will be permitted to amend their complaint to indicate that if they had been aware of the availability of EPSDT services, they would have used such services. Finally, defendants' argument that the injuries complained of are not capable of being redressed is not

---

[2] The court acknowledges that one other inference is possible: that plaintiffs knew about the services, but chose not to use them. However, when the class was certified, the court excluded all persons who knowingly and voluntarily refused EPSDT services.

4

persuasive.  If it is ultimately determined that plaintiffs' claims are meritorious, the court will have broad discretion to fashion a remedy redressing such problems.  Having reviewed the plaintiffs' complaint for purposes of determining whether plaintiffs have standing, it is so found.

B.  <u>Private Right of Action to Enforce Participation Goals</u>

Defendants argue that the complaint should be dismissed, because plaintiffs do not have a private cause of action under 42 U.S.C. § 1983 to enforce the EPSDT participation goals.  In <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980), the Supreme Court concluded that private individuals may use § 1983 to enforce rights contained in the Constitution, as well as those rights defined by federal statutes.  However, not every violation of a federal statute may be challenged under § 1983.  <u>Golden State Transit Corp. v. City of Los Angeles</u>, 493 U.S. 103, 106 (1989).

The Supreme Court has established a framework for analyzing questions of enforceability under § 1983.  <u>See</u> <u>Wright v. City of Roanoke Redev. & Hous. Auth.</u>, 479 U.S. 418 (1987).  First, plaintiff has the burden of demonstrating that the statutory provision creates an enforceable right.  In deciding whether the statute creates an enforceable right, a court considers three factors:  a) whether the statutory provision in question was intended to benefit the plaintiff; b) whether the statute creates a binding obligation on the state government as opposed to merely expressing a congressional preference; and c) whether the interest asserted by the plaintiff is sufficiently specific and definite as

5

to be judicially enforceable.  Id at 430-32.  Second, even if a statute creates an enforceable right, a court must still determine if Congress has foreclosed enforcement under § 1983.  With regard to this issue, the defendants have a heavy burden to demonstrate "by express provision or other specific evidence from the statute itself" that Congress intended to foreclose private enforcement. Id. at 423.

Using the framework described above, the Supreme Court analyzed a provision of the Medicaid Act, the same statute at issue in the instant action, in Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990).  In Wilder, the Court held that the Boren Amendment to the Medicaid Act created a right enforceable under § 1983 because: a) the plaintiffs, health care providers, were the intended beneficiaries of the Boren Amendment; b) the Boren Amendment imposes a binding obligation on participating states to adopt reasonable and adequate rates; c) the statute sets out factors which a state must consider in adopting its rates; and d) the administrative scheme established pursuant to the Boren Amendment is not sufficiently comprehensive to demonstrate a congressional intent to preclude § 1983 relief.

The Court again considered the question of whether a federal statute could be enforced in a § 1983 suit.  In Suter v. Artist M., ___ U.S. ___, 112 S.Ct. 1360 (1992), the Court held that the plaintiffs could not bring a § 1983 action to enforce a provision of the Adoption Assistance and Child Welfare Act of 1980 requiring the state to use reasonable efforts to prevent removal from the

6

home, and to return a child to his or her home.   42 U.S.C. §§ 620-628, 670-679a.

Rather than analyze the question using the framework described above, the <u>Suter</u> opinion referred to the decision in <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1 (1981), and asked whether the statute unambiguously confers an enforceable right upon the Act's beneficiaries.   <u>Id.</u> at ___, 112 S.Ct. at 1370.   In determining whether a statute unambiguously confers an enforceable right, the Court looked at the whole legislative enactment in detail.   Specifically, the Court found that there was no private right to enforce the statute because 1) it did not provide guidance as to how "reasonable efforts" are to be measured; 2) the method of compliance was left largely up to the state; and 3) the statute has other enforcement mechanisms, and, therefore, the absence of a private remedy under § 1983 did not make the "reasonable efforts" clause ineffectual.   <u>Id.</u> at ___, 112 S.Ct. at 1368-69.

After <u>Suter</u>, courts have been uncertain as to the continuing viability of the <u>Wilder</u> analysis.   However, the Supreme Court discussed and distinguished <u>Wilder</u> in the <u>Suter</u> opinion.   <u>Id</u>.   The United States Court of Appeals expressly has refrained from deciding what effect, if any, <u>Suter</u> had on <u>Wilder</u>.   <u>Resident Council of Allen Parkway Village v. HUD</u>, 980 F.2d 1043, 1052 (5th Cir. 1993)("In this case, we need not decide whether <u>Suter</u> `effected a sea change in the Court's approach to section 1983.'"(quoting <u>Stowell v. Ives</u>. 976 F.2d 65, 68 (1st Cir. 1992)).   Hence, <u>Wilder</u>, and the analytical framework employed in that

7



decision, along with the modifications contained in <u>Suter</u>, guide this court's analysis.   See <u>Arkansas Medical Soc., Inc. v. Reynolds</u>, 6 F.3d 519, 525 (8th Cir. 1993)("[W]e choose to synthesize the two cases by proceeding with the two-step <u>Golden State</u> analysis used in <u>Wilder</u>, bearing in mind the additional considerations mandated by <u>Suter</u>.").

In turning to an analysis of the EPSDT provision the court is guided by the Supreme Court's analysis of the Boren Amendment in <u>Wilder</u>, and, as well, the additional concerns raised in <u>Suter</u>. Initially, it is determined that the plaintiffs are the intended beneficiaries of the statutory provision.   The plain language of the statute demonstrates that Congress was trying to increase preventative health care services for minor Medicaid recipients. <u>See</u> 42 U.S.C. § 1396a(43)(A)-(C).

The second issue for consideration is whether the statute creates a binding obligation on the states as opposed to expressing congressional preference.   With regard to this question, the Court's finding in <u>Wilder</u> provides significant guidance since it, too, analyzed a section of the Medicaid Act.   The Court held that because language of the statute is mandatory rather than precatory, the statute created a binding obligation upon the state.   <u>Wilder</u>, 496 U.S. at 512.   The same mandatory language introduces the EPSDT provision of the statute: a state plan <u>must</u> provide for informing all eligible minors of the availability of the EPSDT services, provide for or arrange for the provision of such services, and arrange for corrective treatment.   In addition, the statute

8



requires the state to report participation goals to the Secretary. 42 U.S.C. § 1396a(43)(A)-(D). Hence, it is apparent that the statute creates a binding obligation upon the state.

The third question, whether the interest asserted is sufficiently specific and definite as to be judicially enforceable, is also answered affirmatively. While it is true that the EPSDT provision gives the state substantial flexibility in determining how to provide the services required under federal law, the statute also provides substantial guidance to the state. In fact, the statute goes into great detail regarding the timing of specific services that must be provided. See 42 U.S.C. 1396d(r). The statute also identifies, in detail, certain information which the state must disclose in an annual report to the Secretary. See 42 U.S.C. § 1396a(43)(D). The EPSDT provision of the Medicaid Act is, if anything, more specific and definite than other sections, such as the Boren Amendment which talks about "reasonable access," but does not define the term. In addition, the EPSDT provision of the Medicaid Act, unlike the statute reviewed in Suter, provides substantial guidance to the state. A court is capable of considering the provisions and requirements of the statute and comparing that to the state's actual performance of such duties. Hence, it is found that the provision is sufficiently specific and definite as to be judicially enforceable; it is further determined that the statute, while allowing some flexibility, provides significant guidance to the state. Plaintiffs have thus satisfied the burden of demonstrating that: 1) they are the intended

9



beneficiaries of the statute; 2) that the statute creates a binding obligation on the state; and 3) the interest asserted is sufficiently specific so as to be judicially enforceable. Accordingly, it is determined that the EPSDT provision creates an enforceable right.

Having determined that the EPSDT provision of the Medicaid statute creates an enforceable right, the second part of the two-step analysis must be considered. Hence, it must be determined whether Congress has foreclosed enforcement under § 1983. Defendants argue that the comprehensive nature of the administrative regulation forecloses plaintiffs' private remedy in the present action. See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981). As the Court explained in Wilder, a congressional remedial scheme has only been found sufficiently comprehensive to foreclose a private remedy under § 1983 in two instances. In each of those cases, the statute contained a comprehensive enforcement scheme. Wilder, 498 U.S. at 521. The Wilder Court held that because the Medicaid Act contains no provision for private judicial or administrative enforcement, Congress had not foreclosed § 1983 enforcement in the Medicaid statute. Wilder, 498 U.S. at 521. In deciding whether Congress has foreclosed a private remedy under § 1983, this court is bound by Wilder. See Arkansas Medical Soc. Inc, 6 F.3d at 528.[3] Having

---

[3] The Suter Court did not review the traditional question of congressional foreclosure; however, it also considered the issue of enforcement mechanisms, asking whether the absence of a private remedy under § 1983 would make the provision ineffectual. The Court explained that because the Secretary has the authority to

determined that the EPSDT provisions of the Medicaid statute both create an enforceable right, and that such right has not been foreclosed by Congress, defendants' motion to dismiss, or in the alternative for summary judgment, will be denied with regard to this issue.

   C.  Deprivation of a Right Secured by Federal Law

   Defendants contend that the rights that plaintiffs' claim they possess are not codified in, nor secured by, federal law, and therefore cannot support a § 1983 claim.  Defendants' primary argument is that plaintiffs' complaint misstates defendants' obligations under federal law.  In several counts of the second amended complaint, plaintiffs allege that defendants have failed to assure proper delivery of services.  Defendants correctly note that the statute itself provides not that defendants assure that the services are used, but rather that such services are provided.

   Plaintiff is correct, however, in responding that defendants' argument is based on a hypertechnical reading of the statute.  The language of the statute is mandatory:  A State plan for medical assistance <u>must</u> provide for informing all eligible persons of the availability of treatment; provide or arrange for the provision of such services when they are requested; arrange for corrective treatment; and report certain information to the Secretary on an

---

reduce or eliminate payments to the state on a finding that the state's plan does not comply with the federal law, the absence of a private remedy would not render the statute ineffectual.  <u>Suter</u>, 112 S.Ct. at 1368.  Although a similar analysis may apply in the instant action, this court is bound by the determination in <u>Wilder</u>, which has not been overruled, that the Medicaid Act may be enforced under § 1983.



annual basis.  42 U.S.C. § 1396a(a)(43).

Defendants' argument that the use of the word "assure" rather than "provide" renders the claims insufficient is unpersuasive. Despite plaintiffs' poor choice of words, plaintiff complains that Texas has not complied with the requirements of the statute. Failure to comply with a federal statute is proper grounds for a suit under 42 U.S.C. § 1983.  Accordingly, defendants' motion to dismiss, or in the alternative for summary judgement, will be denied.

D.  State Agency Defendants

Defendants move to dismiss the two state agency defendants, the Texas Health and Human Services Commission and the Texas Department of Health, arguing that such agencies are immune from suit under the Eleventh Amendment to the Constitution.  Edelman v. Jordan, 415 U.S. 651 (1974); Ex Parte Young, 209 U.S. 123 (1908). Defendants' argument regarding these defendants is meritorious, and plaintiffs do not object to such dismissal.  Accordingly, the motion to dismiss the two state agency defendants will be granted.

D.  Official Capacity Defendants

Defendants argue that defendants Penfield, Cook, and Koop, sued in their official capacities only, should be dismissed.  Ex Parte Young, 209 U.S. 123 (1908), permits suits for prospective injunctive relief against state employees in their "official capacity".  Defendants argue that these three defendants are not directly responsible for state policy or custom.  While this issue is important when attempting to determine whether to attribute

12

liability for an individual's actions to a municipality, it is essentially irrelevant in an official capacity suit for prospective injunctive relief.  <u>See</u>, <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986); <u>City of St. Louis v. Prapotnik</u>, 485 U.S. 112 (1988). The cases cited by the defendants do not support their contention that suit against defendants Cook, Penfield, and Koop are improper.[4]   Accordingly, the motion to dismiss the official capacity defendants will be denied.

IV.  Conclusion

After a thorough review of the pleadings, the applicable statutory law, and the controlling case law, it has been determined that defendants' motion to dismiss is unpersuasive, except as to the state agency defendants.  Plaintiffs may use § 1983 to enforce the EPSDT provisions of the Medicaid Act.  They contend that the state has not, and is not, performing its duties under federal law in an adequate manner.  As a result, plaintiffs maintain that they have not been informed of the availability of the EPSDT services, and have not utilized such services.  Such complaint states a claim for which relief may be granted.   However, the state agency defendants may not be sued since they are immune pursuant to the Eleventh Amendment.  Accordingly, it is

**ORDERED** that defendants' motion to dismiss shall be, and it is hereby, **GRANTED**, as to the state agency defendants.  It is further

**ORDERED** that defendants' motion to dismiss shall be, and it is

---

[4]    In fact, the cases cited by the defendants do not even stand for the propositions asserted by the defendants; such misrepresentations hinder, rather than help defendants' argument.

13



hereby, **DISMISSED** in all other respects.

**SIGNED** this _10th_ day of August, 1994.


William Wayne Justice
United States District Judge