FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAY 1 1 1998

DAVID J. MALAND CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

| | | |
|---|---|---|
| LINDA FREW, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:93CV65 |
| | § | |
| MICHAEL McKINNEY, ET AL. | § | |
| Defendants. | § | |

## DEFENDANTS' MONITORING REPORT, APRIL 1998

TO THE HONORABLE JUDGE JUSTICE:

Pursuant to Paragraph 306 of the Consent Decree, Defendants file their Monitoring Report, attached as Exhibit A, and Exhibit B, Status Reports of Services to Plaintiff Families, and are incorporated by reference.

Respectfully submitted,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DAVID A. TALBOT, JR.
Deputy Attorney General for Litigation

TONI HUNTER
Chief, General Litigation Division

LAURIE R. EISERLOH
Texas Bar No. 06506270
Assistant Attorney General
General Litigation Division

*Signing for:*

EDWIN N. HORNE
Texas Bar No. 10008000
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512)463-2120
(512)320-0667 (Telefax)
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Defendants' Monitoring Report, April

1998, has been served on this the 8th day of May, 1998, on the following counsel of record:

Susan F. Zinn                                    **(VIA FIRST CLASS MAIL)**
Attorney at Law
P.O. Box 15126
San Antonio, Texas 78212

Jane Swanson                                     **(VIA FIRST CLASS MAIL)**
Law Offices of A. Rodman Johnson
2202 Timberloch Place, Suite 112
The Woodlands, Texas 77380

LAURIE R. EISERLOH
Assistant Attorney General

2

1605

# *Exhibit A*

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#17**<br>■ Mail letters to clients due for medical and/or dental check- up. | In 1995, TDH central office begin mailing newly- designed client periodic due letters for medical and dental check- ups. |
| ■ Mail letters about the 1 year dental check up 2 months months before due by 1/1/96. | In April 1996, TDH central office began mailing letters to clients about the 1 year old dental check- ups 2 months prior to the 1 year old due date. |
| ■ Letters to be effective and appropriate (see Consent Decree p.10). | All client letters include purpose of letter, type of check- up due, information on preventive care and age appropriate information based on the age of the child named in the letter. All client letters were reviewed and approved by plaintiffs' attorneys. This included the addition of plaintiffs' requested changes or revisions to the letters. As discussed with plaintiffs at the April 20, 1998 negotiation meeting, Defendants are conducting client focused assessment of the client informing letters. Also, see response to Paragraph #73 (page11). |
| ■ Provide brochures/flyers to clients, applicants and agencies where the EPSDT population may be found. | Regional THSteps staff are responsible for distributing brochures/flyers and other program educational and marketing materials etc. to clients and other agencies on an ongoing basis. During the period from January 1998 through April 1998, the TDH warehouse provided 239,715 brochures and 128,145 wallet cards to various entities throughout the state ( e.g. doctors, dentists, local health departments, schools, clinics, DPRS, TDH, TDHS, etc.). Also, see response to Paragraph # 65 (page 8). |
| ■ Create age appropriate information for use by recipients of specific ages. | All client letters and oral informing text used by DHS staff include age appropriate information. |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#18**<br>This paragraph does not preclude the development of a new Medicaid card format in the future as contemplated by paragraph 304. | The Plaintiffs were not satisfied with the " fee for service" Medicaid ID form (MED ID) implemented in 1996. Defendants agreed to conduct further testing on both forms. Qualitative testing of both the "fee for service" and "managed care" MED ID forms was completed in April, May and June of 1997 with clients, providers and provider front line staff.<br><br>Plaintiffs were sent a copy of the final report "Testing the Fee-for-Service and Managed Care Medicaid Identification Forms" (Executive Summary, Summary Report and Detailed Research Findings) on December 19, 1997.<br><br>In response to SB 910, 75th Legislature, an interagency task force chaired by the State Comptroller's office is evaluating the feasibility of adding the Medicaid program to the state's electronic benefits transfer system. Tasks involved in that evaluation include: defining best practices in other states, defining the role of technology in alternate solutions, gathering information on design considerations and making decisions on sponsorship.<br><br>Commencement of the Texas Integrated Eligibility and Services (TIES) Project was announced in late October 1997. HB 2777, 75th Legislature, charges the Health and Human Services Commission to develop and implement a plan for integration of services and functions relating to eligibility determination and service delivery by health and human services agencies, the Texas Workforce Commission and other agencies. The legislation specifies that business practices (eligibility and service delivery) are to be "reengineered". One of the immediate improvements being evaluated by the TIES Project is to eliminate the monthly mailing of the MED ID.<br><br>Both of the above projects are State legislative mandates which could impact the entire MED ID process. |

2

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#20**<br>Eligibility workers will discuss EPSDT with those who apply for benefits on behalf of an EPSDT eligible person. (For discussion elements see Consent Decree p.12-13). | In 1995, a client bilingual informing Desk Reference (used by TDHS eligibility workers) was updated to include all of the elements required in the Consent Decree. Workers were also supplied with an informing text to use as a training tool for the informing process.<br><br>The Desk Reference is being updated to include information on medical case management. The target date for completion of the printing is June 30, 1998. |
| **#21**<br>Eligibility workers will provide an EPSDT brochure and a wallet card schedule of medical check ups to each applicant household. | In 1995, TDHS eligibility workers were provided with a new bilingual client brochure "About EPSDT--for Babies, Children and Youth up to Age 21" to give to all new and recertified clients for AFDC and Medicaid programs. An EPSDT wallet card was also provided to workers for distribution to clients. The wallet card was designed to give clients a quick reference for the EPSDT check-up schedule and the recommended schedule of childhood immunizations.<br><br>In 1996, TDHS workers were furnished with a new and improved client brochure : "STEP UP GET A CHECK-UP". This brochure used the new program name (THSteps).<br><br>During the period from January 1998 through April 1998, the TDH warehouse provided 51,825 brochures and 65,845 wallet cards to TDHS offices throughout the state. |

3

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#23**<br>Provide assistance to help applicants request further oral outreach by an outreach unit. | In August 1995, TDHS workers were provided with an "Extra Effort Referral" form to facilitate referral of clients directly to regional EPSDT/THSteps outreach staff.  An offer of oral outreach was also included in the letters mailed from TDH central  office to all THSteps recipients  newly certified and recertified for Medicaid. Plaintiffs have previously been furnished with a copy of the "Extra Effort Referral" form.  THSteps staff also accept other methods of referral, e.g.: telephone and a TDHS Form 1088 (used to validate medical check-ups and immunizations for THSteps recipients to avoid TANF [formally AFDC] sanctions.)  Currently,  there are no reports which capture the number of TDHS referrals.  THSteps staff have an excellent working relationship with their TDHS counterparts and  respond to all TDHS referrals.  Many THSteps outreach staffs are located in TDHS offices.<br><br>In  May 1998, THSteps staffs will pilot a revised version of the "Extra Effort Referral" form in Region 11 (preliminary draft attached).  Appropriate changes will be made to the TDHS handbook when the revised form is implemented statewide.<br><br>Exhibit A |
| **#32**<br>Outreach units will have sufficient staff and other reasonably necessary resources to handle their workload promptly and effectively. | As of March 1998, there is a Regional THSteps worker/client ratio of 1:2923. The number negotiated with Plaintiffs was 1:3500. |

4

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#34**<br>Beginning 9/1/95 outreach units will provide oral outreach to all recipients who request information about EPSDT beyond that provided by TDHS eligibility workers. | In October 1995, EPSDT/THSteps staff began receiving and responding to formal client referrals for oral outreach from TDHS workers.  See response to Paragraph # 23 (page 4). |
| **#40**<br>Provide a current Outreach List to each outreach unit monthly. | Client outreach lists are downloaded electronically every month to each TDH  region for  use by THSteps staff.<br><br>The client periodic "Dues" and "Overdues"  files will also be electronically downloaded monthly to the MCOs in  each TDH region. ( The client periodic " Dues" list was delivered to the MCOs on  April 26, 1998. Processes are now being put in place for also sending the client "Overdues" files.)  Files for the MCOs will be separated by  Plan and Service Delivery Area.  MCOs are to work these client files actively  each month. (These files also give the MCOs an opportunity to see if the  check-ups they have already performed are reflected in the client file information..)  On March 27, 1998, THSteps staff met with  representatives from the MCOs to discuss collaboration on client outreach and marketing strategies ( meeting agenda, minutes and sign -in sheet attached).<br><br>Exhibit B |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#43**<br>Identify clients requesting information beyond that provided by TDHS eligibility workers. | Client referrals from TDHS eligibility workers are made on an "Extra Effort Referral" form to EPSDT/THSteps outreach staff who respond to each referral.  See response to Paragraph # 23 (page 4). |
| **#60**<br>Each month the outreach unit will report certain numerical information to the EPSDT program (See Consent Decree page 20 for details). | A regional automated system, CARES, was implemented in August 1995 to collect and report the client information specified in Consent Decree Paragraph #60.  On March 10, 1997,  Plaintiffs were provided with a detailed report (including corrective actions and report options) about the Department's problems with the data entry system for these outreach reports.  On May 7, 1997, Plaintiffs notified Defendants of the report options they preferred and were furnished on a monthly basis with the requested data that was available for select regions.  Beginning September 1997, complete reporting information was sent  to Plaintiffs on a regular monthly basis. During the current quarter,  Plaintiffs were sent regional outreach information for the months of September, October and November of 1997.  The December 1997 report will be mailed to Plaintiffs in early May 1998.<br><br>Exhibit C |
| **# 61**<br>Defendants will develop and implement a method that reports the number and percent of recipients who receive medical and or dental check ups after receipt of oral outreach. | See the response to Paragraph # 60 (page 6). |

6

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#62**<br>Standardized training of outreach staff. | In 1994 an " EPSDT Training and Orientation Guide" was developed by THSteps central office staff to facilitate standardized training of regional EPSDT/THSteps outreach staff.  Each region then added regional customized training materials to this information.  Central office training staff also delivered certain aspects of regional staff training which was standardized statewide.  In August 1997, the Department  distributed an updated training guide to regional EPSDT/THSteps staff.<br><br>Each year, TDH central office staffs have conducted training for VISTA Volunteers (Pre-Service Orientation.) The 'VISTA Orientation Handbook" developed and used by the Department for training now serves as a model for VISTA training in about 11 other states.<br><br>A new outreach worker training curriculum is now under development ( status report attached).<br><br>Exhibit D |
| **#64**<br>Conduct other appropriate, aggressive outreach efforts to encourage recipients to use EPSDT services. | Each region has implemented its own unique outreach efforts (examples attached).<br><br><br>Exhibit E |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#65**<br>Work with other agencies to inform clients about EPSDT. (See  Consent Decree page 22 for list of agencies.) | In 1995, THSteps central office staff contacted the commissioners of the agencies specified in Consent Decree Paragraphs # 65 & 70  and furnished them with a comprehensive "EPSDT Program Manual for Professionals" to share with their staff.<br><br>Three of these agencies receive Medicaid funding to provide targeted case management services for Medicaid/THSteps clients (Texas Commission for the Blind, Texas MHMR, and ECI).<br><br>The Department has a EPSDT/THSteps MOU with DPRS and TDHS.<br><br>Department staff  consult  with the State Medicaid Director at HHSC on THSteps matters.<br><br>Regional THSteps staffs coordinate with staff of these and other  agencies at the local level (examples attached).<br><br>On April 17, 1998,  a letter (sample attached) was sent to the agencies listed in Consent Decree Paragraphs #65 & #70 and the Texas Workforce Commission requesting the designation of a THSteps liaison to work with THSteps staff on coordinating client outreach and  informing about the THSteps program.  The letters included a copy of the *Texas Health Steps Resource Catalog*  which contains a description of program marketing materials and ordering instructions. Each  agency  was encouraged to share this information with its staff so they could use the THSteps brochures. A follow-up contact  will be made with  each agency in May 1998.<br><br>Exhibit F |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#68**<br>Provide and update accurate information about EPSDT for inclusion in handbooks of other agencies that serve EPSDT clients. | The agencies designated in Consent Decree Paragraphs # 65 & # 70 were originally sent a comprehensive handbook entitled "The Texas Medicaid EPSDT Program, A Manual for Professionals." The THSteps program has changed dramatically and rapidly since this program manual was written and distributed. As of April 1998, the manual is undergoing a total revision. The new manual will incorporate all of the changes resulting from the implementation of managed care and provide a greater level of program detail. The target date for completion and distribution of the new manual is July 1, 1998.<br><br>For several years Defendants have routinely provided THSteps policy updates (as needed) to the DPRS and the TDHS for their handbook material. Attached is the last information sent to these agencies in 1996. No revisions have been required since then.<br><br>Exhibit G |
| **#70**<br>Provide handbook inserts to agencies and programs on an ongoing basis. (See page 23 for list of agencies). | A program manual (as opposed to inserts) is under development by EPSDT/THSteps central office staff.<br><br>See response to Paragraph # 68 (page 9). |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#72**<br>Encourage other agencies to use EPSDT brochures and provide adequate supplies of brochures to requesting agencies. | Regional EPSDT/THSteps staff  coordinate with other agencies at the  local level and provide and/or distribute THSteps brochures.<br><br>On April 22, 1998, the Department's managed care enrollment  broker (Maximus) was given a supply of the *Texas Health Steps Resource Catalog* for distribution to each of its area managers.  Maximus staff may now order THSteps marketing materials directly from the TDH warehouse.<br><br>See responses to Paragraphs #17 (4), (page 1) &  #65 (page 8). |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#73**<br>Arrange for and implement a marketing plan that encourages providers and recipients to participate in the EPSDT program. | In 1995,  the Department negotiated a contract with the marketing firm, TateAustin.  A multi-media campaign focusing on the importance of preventive check-ups was launched on May 6, 1996.  The campaign introduced a new program name "THSteps".  An ad campaign presented THSteps as a way for parents in Texas to build a healthy successful future for their children.  A TV campaign combined  animation and music to convey the message of preventive health care to families.  Radio and outdoor advertising emphasized the need for regular medical and dental check-ups.  The overall campaign was designed to increase awareness and participation in the THSteps program.  Marketing materials such as  banners, client  brochures and refrigerator magnets  were sent to the regions, department's health insuring agent and other agencies for distribution to clients and providers. (Plaintiffs were sent samples of the marketing materials).  A special 1-800 number manned by 10 operators handled responses to public inquiries from clients and non-clients about the campaign and how and where to obtain preventive medical and dental check up services.  The TateAustin contract has expired.<br><br>A new THSteps marketing plan has been developed for the 1998-1999 biennum (attached).<br><br>Exhibit H |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#91**<br>Immunization tracking system to be in place by 1/96 permitting providers to promptly request up to date information about patients' immunization status. | The hardware and software necessary to run ImmTrac, the state's immunization registry and tracking system are in place and are operating.  Immunization Registry legislation was passed in the last session.  Based in part on written comments to the Department and testimony at a public hearing, the Department is modifying proposed rules to implement the law.  These rules should be published for comment in the TEXAS REGISTER  in mid to late summer.  As noted in Consent Decree Paragraph #290, billing information collected on children in THSteps is to be used to measure the prevalence of completed immunizations in THSteps children.  Consequently, NHIC data are presently being loaded into the Imm Trac system. |
| **#96**<br>Beginning 9/1/95 outreach units will respond to providers' requests for assistance re: clients missed appointments/overdue check ups; and, will explain how to contact outreach units. | With the regional implementation of the CARES system in 1995 (See response to Paragraph # 60 (page 6), outreach units began documenting their responses to providers' requests for assistance.  Regions  used various means to contact providers in the area to advise them of  support services and how to contact THSteps outreach units.  In a  response to a 1997  request, Plaintiffs were furnished  with samples of materials used by the regions to convey information to providers.<br><br>The monthly reports referenced in response to Paragraph # 60 (page 6)  identify by region the number of requests for outreach by health care providers. The number ranges from over 500 a month in some regions to zero in other regions.  Since the number of referrals has been minimal in most regions, THSteps central office staff  developed a Provider Referral Protocol (for all provider types) which will establish a minimum statewide standard operating procedure (SOP).  Regions with local procedures that exceed the SOP  will be encouraged to continue their own processes. The proposal was sent to  regional staff in March 1998 for review and comment.  Plaintiffs were furnished with a draft of the proposal on March 20, 1998.  Changes are still  being made to the attached draft of the referral form.  The target date for implementation of the SOP is June 1998.<br><br>Exhibit I |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#99**<br>By 9/1/97 implement a method to index the reimbursement rate for medical check ups in non-managed care areas. | On January 30, 1997, Plaintiffs were sent an indexing method which resulted in fee increases beginning in SFY 1998.  On February 20, 1997, Plaintiffs were provided with additional information on the indexing methodology.<br><br>On March 10, 1998, Plaintiffs were advised that the maximum allowable "fee for service" reimbursement rate for a THSteps medical check-up (performed in traditional Medicaid) would  increase from $40 to $46.20 effective for dates of service on and after March 1, 1998.<br><br>Exhibit J |
| **#102**<br>By 5/30/95 list all relevant professional schools in Texas that are not enrolled as EPSDT providers and by 10/31/95 complete efforts to recruit them to become providers. | A complete update will be sent to the Plaintiffs by May 15, 1998. |
| **#103**<br>NHIC will increase its provider relations staff to 28 to increase recruitment efforts. | As of April 1998, NHIC has  fourteen provider representative positions  filled and one  position in the process of  being filled. Eight Austin-based provider coordinator positions handle provider phone calls for the provider representatives and perform  research to assist the provider representatives with problem resolution. There are a total of 23 staff after the pending vacancy is filled. |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#106**<br>Regional provider relations staff will:<br>■ Assist providers to receive training relevant to provision of services to clients.<br>■ Assist providers and their administrative staff to receive training about the administration of the program. | Each TDH region has designated THSteps provider liaison staff who supplement the provider relations activities of the Department's health insuring agent, NHIC.  THSteps staff do provider training independently and in coordination with the NHIC provider relations staff.<br><br>Beginning September 1, 1998, TDH Regional Dental Directors will assume responsibility for training THSteps outreach and provider relations staff on the dental program.  They will also be doing dental provider relations, recruitment and education.<br><br>Attached are examples of regional staff initiatives to assist providers to receive training.<br><br>Exhibit K |
| **#107**<br>Provide information and facilitate ongoing training about Medicaid and EPSDT at all relevant professional schools in Texas. | The plan for meeting this requirement will be completed by the end of the summer of 1998. |

14

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#108**<br>Make staff available to participate in ongoing training in conjunction with appropriate professional training, e.g. how to conduct a medical check up for a teenager or a dental check up for an infant. | See response to Paragraph #107 (page 14). |
| **#111**<br>Facilitate annual NHIC training seminars for medical and dental check up providers.  Trainers will include physicians and dentists. | See response to Paragraph # 107 (page 14). |
| **#112**<br>Facilitate training for professionals about mental health assessments for indigent children and youth.  The training will describe recent expansions in Medicaid coverage of outpatient mental health services. | See response to Paragraph # 107 (page 14). |



**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#116** <br> Facilitate training for professionals in the provision of EPSDT services to teenagers. | See response to Paragraph # 107 (page14). |
| **#117** <br> Facilitate training on new clinical issues regarding provision of care to EPSDT clients. | See response to Paragraph # 107 (page 14). |
| **#120** <br> Develop training modules designed to be included in other training programs about the realities of EPSDT clients' lives to attempt to improve providers' attitudes toward recipients and provide to professional schools. | See response to Paragraph # 107 (page 14). |

16



**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#130**<br>By 1/31/96 conduct a professional and valid evaluation of pharmacists' knowledge of EPSDT coverage of items commonly found in pharmacies. If pharmacists' understanding is unacceptable, conduct an initiative to orally inform pharmacists about EPSDT's coverage. | A survey was developed in collaboration with the Department's Vendor Drug Program pharmacists to measure pharmacists' knowledge of EPSDT Comprehensive Program (CCP) services.  Surveys were mailed in July 1996 and data collected for the next several months. The survey report produced in November 1996, indicated that surveys coming from 154 counties (out of 213 surveyed) had over 50% errors.<br><br>The parties agreed that the pharmacist's EPSDT/ CCP program knowledge was unacceptable and a 4 part training plan was proposed to Plaintiffs in December 1996.<br><br>Following  Plaintiff's approval, the following pharmacist training plan has been completed as follows:<br><br>Part 1: Distributing informational handouts to all pharmacies enrolled in the Vendor Drug Program.  A supply of the handout was mailed to each regional TDH pharmacist  to be used at the annual visit with each enrolled Vendor Drug Program pharmacy.  Each THSteps regional manager received a supply of the handout to use in responding to general inquiries.<br><br>Part 2: Providing EPSDT-CCP pharmacy information on a TDH web page.  Effective July 1997,  the TDH web site incorporated a Medicaid CCP flyer, listing of CCP procedure codes with prices for pharmacies, and a sample billing form.<br><br>Part 3: Participating in the annual Texas Pharmaceutical Association meeting.  An EPSDT/CCP booth was set up at the meeting and  open during exhibit hours on July 17 and July 18, 1997.  The state office program specialist for  EPSDT/CCP services manned the booth and was available to provide both oral and written information to pharmacists about the EPSDT/CCP program. |

17



## 1998 LAWSUIT ACTION ITEMS
### Updated APRIL 30, 1998

| Action | Status |
|---|---|
| **#130 (cont.)** | Part 4:  Defendants are still evaluating the possibility of developing and producing a 15-20 minute video for pharmacists.<br><br>The Department's program specialist for THSteps (EPSDT) CCP services will attend the annual Texas Pharmaceutical Association meeting in June 1998, for the purpose of  providing oral and written information to pharmacists on the CCP. |
| **#131**<br>Arrange scholarships to enable needy providers to attend TDH sponsored EPSDT training programs. | 15 scholarships for nurses training (how to perform THSteps check-ups) were provided between July 1995 and February 1996.  Funding for provider training scholarships is not an allowable cost under Title XIX Medicaid.  The non-Medicaid dollars originally allocated to pay for nurse training courses are no longer available.  THSteps staff are trying to locate another funding source. |
| **#139**<br>Effort to recruit family planning clinics to provide EPSDT medical check ups will be coordinated with TDH's family planning. | Defendants continue to work on completing the final policy for payment of a combined Family Planning/THSteps checkup visit. This new policy was developed to facilitate the recruitment of family planning entities to provide THSteps check-ups.  As of April 1998, the attached policy is being reviewed and revised based on input received from Plaintiffs.<br><br>Exhibit L |
| **#141**<br>Recruit ISDs to provide EPSDT medical and dental check ups and coordinate other needed services. | Attached are activity reports from each of the TDH regions.<br><br>Exhibit M |

18

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#142**<br>TDH will cooperate with HeadStart programs to ensure that HeadStart students who are EPSDT recipients have access to EPSDT services. | Attached are activity reports from each of the TDH regions.<br><br><br><br>Exhibit N |
| **#148**<br>Conduct outreach to families with EPSDT client infants to help to prevent BBTD. | A "Statewide Dental Health Awareness Plan" was previously furnished to Plaintiffs and included as an Exhibit in the January 1998 Quarterly Monitoring Report.  The plan was implemented according to  schedule. On September 9 and October 27, 1997, Plaintiffs were sent copies of information associated with the plan (training video, poster, brochure, trainers' manual, trainees' workbook for outreach workers and the final report of the Dental Recruitment and Retention Committee). Outreach activities around the State should now be including the dental information from the Statewide Dental Health Awareness Plan training per the information sent to Plaintiffs.<br><br>A  flip chart (which is an addition to the original training plan) has been developed and THSteps staff is now waiting on final bids for the printing. Upon completion,  a  copy of the new flip chart  will be sent to Plaintiffs (no firm date is available at this time). |

19

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#165**<br>No later than 10/31/95, maintain reports of the number and percent of dentists who see 0-29, 30-99 and 100+ EPSDT clients every 3 months. | Plaintiffs have been furnished with the specified data for all of SFY 1996 and SFY 1997. Data not required by the Consent Decree continues to be provided to Plaintiffs to allow assessment on the volume of clients served by active enrolled dental providers.<br><br>A report for the first quarter of SFY 1998 will be sent to Plaintiffs in May 1998. |
| **#167**<br>Finalize policies or rules for the dental audits by 9/30/95. | The Department's (TDH) existing dental rules remained in place in 1995. Defendants began review and revision of the rules in coordination with the TDH Oral Health Services Advisory Committee in 1997. Revised proposed dental rules were presented to the TDH Board of Health on April 17, 1998. The Board of Health approved the proposed rules for publication in the TEXAS REGISTER after being presented with a revised motion (attached). A copy of these rules were sent to Plaintiffs on April 2, 1998 (attached). Plaintiffs were also sent a copy of the attached proposed rules presented to the Medical Care Advisory Committee (MCAC) on March 12, 1998. Defendants responded to Plaintiffs' questions about the proposed rules on April 9, 1998. At Plaintiffs' request, Defendants sent Plaintiffs' comments on the proposed rules to the TDH Commissioner and the members of the MCAC.<br><br>TDH will conduct a hearing on June 4, 1998 to accept public comment on the proposed rules. The date for publication of the proposed rules in the TEXAS REGISTER is pending as of April 26, 1998.<br><br>Exhibit O |

20

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#171**<br>By 9/30/96 prepare a report of the number and percent of clients who receive 1 dental check up/year and 2 dental check ups/year.  Prepare similar reports every year. | On February 5, 1997, Plaintiffs rejected Defendants' report response to Paragraph # 171.  Another methodology/ proposal for meeting this report requirement  was rejected on July 11, 1997.  On September 17, 1997,  Plaintiffs were furnished with an alternate report. A response to Plaintiffs' September 30, 1997, questions received on the report was sent October 20, 1997.<br><br>On April 3, 1998, Plaintiffs  requested the report  be an agenda item for the negotiation meeting between the parties on April 20, 1998.<br><br>At the April 20, 1998 negotiation meeting,  Plaintiffs alleged that Defendants' report  does not meet the Consent Decree requirement since the reporting period  was expanded from 12 months to 18 months (to compensate for those THSteps recipients who had eligibility periods overlapping two fiscal years). Although Defendants do not agree with Plaintiffs' methodology for attaining  accurate report information, Defendants agreed on April 20, 1998 to produce a report limited to a one year reporting period (even though this report will not allow for the review of a 12 month period appropriate to those overlapping eligibility spans).<br><br> As of April 27, 1998, Defendants' completion date for this new report is pending a re-write of the report programming specifications and receipt of the Departments'  health insuring agent's (NHIC) estimated time frames for completion.<br><br>Exhibit P |

21



**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **# 172**<br>Parties will agree on expected increase in the number and percent of recipients who receive 1 and 2 dental check ups/year. | There has been no discussion between the parties on this matter. See response to Paragraph #171 (page 21). |
| **#174**<br>Arrange for a study to assess the dental health of the EPSDT population. | A RFP to do a dental study was developed and published in the June 3, 1997 TEXAS REGISTER. The contract for the study to assess the dental health of the THSteps/EPSDT population was awarded to UTHSC-San Antonio. Study protocols (including a parent survey instrument and consent forms) to assess 6th grade school children and two year olds in THSteps were submitted to Plaintiffs on January 13, 1998. The Plaintiffs' questions regarding the protocol for 6th graders presented in their February 2, 1998 letter were answered on February 20, 1998. The Plaintiffs' issues regarding the protocol for THSteps two year olds presented in their March 25, 1998 letter were answered in an April 7, 1998 letter. The study protocols were reviewed and approved by both the TDH and the UTHSC-San Antonio Institutional Review Boards. A contract is in place with UTHSC-San Antonio to organize and conduct the studies over the next year.<br><br>Exhibit Q |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#180**<br>Begin this program in the Lower Rio Grande Valley in 1995 and later expand to other areas of the state as needed. | During the summer of 1995, TDH Region 11 obtained a listing from the TDHS data base for children whose families were identified as migrant farm workers.  Using this list, targeted outreach was accomplished.  Initially it was thought  this method could be used state-wide.  Later it was learned that the TDHS migrant farm worker information was not consistently available outside of Region 11.  An alternate plan was developed to use data available from Education Service Centers (ESCs) and school districts.  Region 11 continues to use the TDHS generated migrant listing complemented with the information available through ESCs and school districts.<br><br>A formalized plan for meeting the requirements in paragraphs #180, #181, and 183 was furnished to Plaintiffs.  A state office THSteps  program integrator was hired July 1, 1997 and is working to assure full coordination and implementation of the plan. The plan is as follows:<br><br>TDH will use an existing nationwide program operated by the Federal Migrant Education Program known as the "Bolsa Roja" or "Red Bag" program.  Whenever migrant worker children are identified by the school they are provided  with a red bag.  This bag is used to transport all of the children's records (health and education).  When the child moves, the school places the child's documents in this bag.  The "Red Bag" program also provides parenting skills/health education.  A worker from the school district is requested to conduct a home visit annually.  Records of their home visits are maintained.  TDH is now working on a MOU with the Texas Education Agency (TEA) that will institutionalize this process with ESCs to deliver THSteps information.  Further, TDH will actively solicit cooperation from the related professional organization generally involved with migrant issues.<br><br>A meeting to discuss migrant farm workers was held with TEA on December 15, 1997.  Another interagency meeting was held on March 12, 1998 (minutes attached). On March 27, 1998, THSteps central office staff sent the attached listing of ESC's to the THSteps regional staff  for informational purposes. |



**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| # 180 cont. | As noted on the listing there are ESC's located in each of the TDH regions.  The ESC's maintain a regular contact with migrant families. Central office THSteps staffs have (1) drafted an MOU between TEA and TDH (which is now being reviewed by TDH management staff) and (2) distributed to appropriate regions a database of all licensed migrant labor camps in Texas.  A presentation  by THSteps central office staff was made to the ESC Coordinators on April 13, 1998. The presentation focused on THSteps efforts to reach the migrant family population. A presentation on THSteps was made to TEA staff  on April 15, 1998  (summary and slides presented at meeting attached).  THSteps staff made another presentation to members of the School Health Network (located in the 20 various TEA -ESC centers) on April 22, 1998.<br><br>Exhibit R |
| # 181<br>Defendants will make efforts to help farm worker families to utilize EPSDT benefits promptly upon return to Texas.  Efforts will include door to door outreach in communities where farm workers live. | Attached are activity reports from each of the TDH regions.<br><br><br><br>Exhibit S |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#182**<br>When farm workers apply for Medicaid benefits on behalf of EPSDT eligible children, determine if the applicant would like further information about EPSDT or help to schedule appointments. | See response to  Paragraph # 23 (page 4). |
| **# 183**<br>When outreach units receive information about the identity of migrant farm worker recipients who request outreach services, outreach units will give priority status to those recipients.  They will provide outreach as quickly as possible. Outreach information will encourage this group of recipients to receive as many needed services as possible before they move on again. | Regions have been advised of the importance of expediting services for migrant farm worker recipients. See the response to Paragraph # 180 (page 23)  about efforts to identify and outreach the migrant  population so that they may  receive services on a timely basis. |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#191** Assure that the number and percent of EPSDT patients in each MOU who receive all medical and dental check ups when due and information for outcomes research as needed is accurately collected. | On January 28, 1998 and April 15, 1998, Defendants responded to Plaintiffs' inquiries about check-ups for class members receiving services through managed care organizations (MCOs).  Plaintiffs were furnished with an early report on THSteps check-ups (MCO self reported data) and the initiatives in progress to increase the number of THSteps done and reported to TDH. |
|  | Exhibit T |
| **#192** Assure that MCOs provided medical and dental check ups to newly enrolled clients no later than 90 days enrollment except when clients knowingly and voluntarily decline or refuse services. | This provision is in the TDH-HMO contracts.  MCOs will be sent on a monthly basis the names of clients who are periodically "Due" and "Overdue" for their THSteps check-ups. See response to Paragraph #40 (page 5). |
| **#193** Assure that MCOs cooperate with outreach units so that clients who miss medical and/or dental check ups receive prompt services. | See responses to Paragraph # 192 (page 26) and Paragraph # 40 (page 5). |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#194**<br>Assure that MCOs arrange training for all health care providers and their staff who serve EPSDT clients as authorized by SB601. | 1.  This provision is in the Medicaid managed care contracts.<br><br>2.  The contract provision  referenced in response to Paragraph # 192 will assist in monitoring compliance with this requirement.<br><br>3.  MCOs are required to submit training participant sign -in sheets on request to the Bureau of Managed Care.<br><br>4.  TDH central office will continue to do written training utilizing the provider NHIC Medicaid Bulletins and other written information.<br><br>5. Plaintiffs were furnished with a new "Education Plan for All Texas Health Steps Providers and Their Staff in Medicaid Managed Care Services Areas" at the June 12, 1997,  negotiation meeting.<br><br>6. On August 4-5, 1997, TDH central office staff conducted a comprehensive "train the trainer" session on the THSteps program for MCOs with the expectation that the training modules developed for this session would be used by MCOs to train providers.  Attendance included MCO staff from the Harris Service Delivery Area (SDA) as well as other SDAs in the state. A follow-up training session was held October 1-2, 1997. Plaintiffs comments on the training were  incorporated into the final training modules to be presented at the October 1997 training session referenced above.<br><br>7.  Provider training will occur with the roll-out of each new SDA. Following initial roll-out, MCO staff will be provided training materials. |

27

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#199**<br>MCOs will be subject to independent evaluation of their patients health outcomes, satisfaction and process measures, including the number and percent of EPSDT clients who receive all medical and dental check ups when due. | The Texas Health Quality Alliance, TDH's external quality review organization, became operational in December 1997. The first MCO(s) evaluation (for FY 1997 contract year) is due to TDH by September 1, 1998. |
| **#205**<br>Use innovative means to provide EPSDT services to teenagers. | Attached are activity reports from each of the TDH regions.<br><br>Also see the response to Paragraph # 139 (page 18) about the new policy for a combined Family Planning exam /THSteps check-up.<br><br>.<br><br>Exhibit U |
| **#207**<br>Efforts to inform teens and their parents about EPSDT will address the complex privacy and consent issues involved. | Pending distribution are 3 letters (to providers, parents, and youth) addressing teen privacy and consent issues. These were furnished to the Plaintiffs on March 6, 1998.<br><br>Exhibit V |

28

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#212** TDH and DPRS will present a MOU for Plaintiffs' approval and to the Court by 10/1/95 which will: | Completed |
| Provide training about EPSDT for parents. | In the Memorandum of Understanding (MOU) between the DPRS and the Department (TDH), DPRS agrees to provide appropriate training to parents(s) or subsequent conservators before children leave DPRS conservatorship. (This includes the explanation of THSteps in the parenting classes for the families). DPRS are ordering THSteps materials from the TDH warehouse for use in their training sessions. |
| Report the number and percent of EPSDT recipients under the supervision of TDPRS who receive all of their medical and dental check ups when due. Assure that all clients under supervision of DPRS receive all medical/dental checkups when due. | On April 7, 1998,  Defendants sent Plaintiffs the attached letter from DPRS stating  it was necessary to rely on manual case readings to obtain this information due to unforeseen problems with documentation methods on the  newly-implemented DPRS computer system. DPRS requested that TDH discuss other methods for obtaining accurate data by interfacing DPRS and TDH databases, indicating this might involve a review and amendment of the current interagency MOU. |
| Establish procedures to refer clients to appropriate  case management managers when needed upon  clients' release from DPRS supervision. | DPRS sends client referrals (via form letter from local DPRS offices to Regional THSteps offices) to the THSteps outreach and informing staffs. These staffs  provide information to the families about the importance of preventive health care and give THSteps families help with finding providers. They give lists of local health resources to families of children who are no longer THSteps recipients. They refer qualifying THSteps recipients for medical case management services.

Exhibit W |

## 1998 LAWSUIT ACTION ITEMS
### Updated APRIL 30, 1998

| Action | Status |
|---|---|
| **#223** Conduct annual assessments of the effectiveness of the transportation program. | On August 15, 1997, Plaintiffs confirmed that the RFP proposal selected by the Department (Texas A&M) to evaluate the Medical Transportation Program was professional, valid and the best choice.<br><br>On November 14, 1997, Plaintiffs were sent a copy of the survey instrument to be used to ask providers their perceptions of the Medical Transportation Program. On December 5, 1997, Plaintiffs sent comments on the survey and concurred that the survey instrument was professional and valid. The final draft of the provider instrument (incorporating all but two of Plaintiffs' comments) was sent to Plaintiffs on January 6, 1998, along with the User/Non-User Survey instrument. On April 6, 1998, Defendants responded to Plaintiffs' February 26, 1998 comments on the User/Non-User Survey and sent Plaintiffs a revised draft survey for review.<br><br>The provider survey has been implemented. As of March 29, 1998, 725 interviews are complete. Data collection will continue until June 30, 1998. Analysis will begin once all information is collected.<br><br>Exhibit X |
| **#228** Take corrective action wherever the assessment indicates that transportation services are inadequate. | Pending completion of the Medical Transportation Program evaluation. See response to Paragraph #223 (page 30). |

30

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#243**<br>The toll free numbers to request transportation and scheduling assistance will either be combined or linked. | THSteps locations have the capability to transfer callers to the Medical Transportation Staff.<br>Exceptions:  Region 7 (Waco/Austin) and Region 11 (Harlingen/Edinburg). |
| **#244**<br> Upon request TDH staff will help clients find a provider by giving the name, location and telephone number of least 1 provider of the appropriate speciality in a convenient location (or more than one if requested and available).<br><br>Notify managed care clients of their freedom to choose a PCP of their choice at enrollment. | EPSDT/THSteps outreach and client 1-800 staff have been instructed and trained to provide these services to clients. Each region maintains a listing of providers for this purpose.<br><br>As of April 1998, telephone customer service training is being provided to regional 1-800 telephone staff. THSteps central office staff  received the following response to the training from the Region 04 THSteps Regional Manager: " I want to thank you for the excellent, effective training on customer service for our 1-800 staff.  I think each participant came away from the training feeling it was totally worthwhile.  I can't think of another training that has received such uniform high praise."  Similiar comments on the training have been received from other staff. |

31

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#247**<br>Toll free numbers for EPSDT recipients will be staff sufficiently by well trained personnel. No calls may be answered by a tape recording during working hours except in unusual circumstances. | A monitoring plan to assure compliance with Paragraph #247 was implemented in January 1997 and shared with the Plaintiffs.  The results of client 1-800 number(s) Quality Assurance Surveys and Automatic Call Distribution data for the months of June through December 1997, were sent to  Plaintiffs during  this quarter. There continues to an improvement in services.  Defendants have conducted an analysis of the reports. The analysis has  resulted in the attached "Texas Health Steps and Medical Transportation Program, Client Support Toll-Free Lines, Performance Analysis and Corrective Action Plan"<br><br>In April 1998, regional staff were requested to conduct an annual traffic study to learn the number of attempted calls that receive a busy signal.<br><br>Exhibit Y |
| **# 270**<br>Defendants will finalize medical case management regulations and implement the program. | The medical case management rules were published in the TEXAS REGISTER as adopted rules on December 26, 1997.<br><br>A conference call  between the parties was held February 2, 1998, to discuss the draft of the program manual and other issues.<br><br>On March 20, 1998, Plaintiffs were sent information about the developing case management program.<br><br>On April 6 and April 17, 1998, additional information was sent to Plaintiffs.<br><br>Attached is a "Summary of Implementation Status on THSteps Medical Case Management" as of April 1998.<br><br>Exhibit Z |

32

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#277**<br>Beginning in 1996, measure the percent of EPSDT clients who receive medical check ups.<br><br>Beginning in 1997 measure the percent of EPSDT clients who receive medical check ups and 2 dental check ups/year in each county or county cluster. | This information appeared on both a 1996 statewideness report  (FY 1995 data) and on the HCFA 416 federal report shared with the Plaintiffs.<br><br>This information will appear in the 1997 statewideness report.  See Response to  Paragraph # 280 (page 33). |
| **#280**<br>Complete a statewideness analysis every year by March 30. Identify the counties or county clusters that lag behind the state average for medical and /or dental check ups. | The 1996 (SFY 1995 data) analysis was completed and previously furnished to Plaintiffs.  In accordance with Consent Decree paragraph #279,  Defendants wanted to improve the 1997 (SFY 1996 data)  statewide analysis report and submitted the proposed change in methodology to  Plaintiffs  for approval.  Plaintiffs rejected the proposal July 11, 1997. To avoid further delay Defendants completed the medical portion of the 1997 report and submitted the information to Plaintiffs on November 24, 1997. Plaintiffs rejected the report on January 14, 1998, and Defendants responded with further clarification on the merits of the report on March 23, 1998.<br><br>The medical statewideness report for 1998 and the dental portion of the report for 1997 and 1998  will be completed by mid-summer of 1998.<br><br>Exhibit AA |

33

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#281** Each year Defendants will develop a corrective action plan for those counties that lag behind so that  participation in those counties improves. | A corrective action plan was completed in SFY 1995. Corrective action plans will be completed by October 1998 (based on the data in both the 1997 and 1998 statewideness reports). |
| **#283** Report EPSDT participation statistics to the federal government every year on the HCFA Form 416. | The FFY 1996 report was provided to the Plaintiffs. Attached is the draft FFY 1997 report.  This report has not been officially transmitted to the Health Care Financing Administration (HCFA) by the State Medicaid Director. Plaintiffs will be advised in the event that any substantive alterations are made to the copy of the final report submitted to HCFA.  The report lacks complete  statistical information about the medical check-ups performed in managed care capitated arrangements.  The Department plans to submit an amended 1997 HCFA 416 when this information becomes available. Exhibit BB |

34

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#284** <br> Also report to Plaintiffs the number and percent of clients who receive all of their scheduled medical and dental check ups by December 31 of each year. | Defendants' proposal for meeting paragraph #284 was rejected by Plaintiffs on January 28, 1997. <br><br> Defendants' second proposal for meeting Paragraph #284 was rejected by Plaintiffs on July 11, 1997. <br><br> A letter of clarification on the proposal was sent to Plaintiffs on November 25, 1997 in an effort to resolve the issue and produce a data report that is feasible and reasonable with a THSteps population of well over a million recipients. <br><br> On January 9, 1998, Defendants provided Plaintiffs with further clarification by responding to specific concerns and suggestions on the methodology. <br><br> Exhibit CC |
| **# 294** <br> The parties will further agree on a target goal for each health outcome indicator. | Pending. See response to Paragraph #295 (page 36). |

35

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#295**<br>Defendants will report the best available information on each health indicator annually, beginning 9/1/96 and continuing through 1999.<br><br>Proposed study methodology will be presented for Plaintiffs approval by April 1, 1996. | The parties have agreed on five outcome measures for which there are data that are routinely collected: pregnant teens prenatal care in the first trimester, low birth weight infants, (including percent born in neonatal tertiary care centers), age when hearing loss is diagnosed, blood lead levels, and immunizations.  Data on these measures for 1994-1997 (years vary according to the measure) have been provided to Plaintiffs.<br><br>A third immunization survey of 3-24 month old children in Texas has been completed and parents' immunization records for their children are being validated.  Immunization rates for THSteps children 3-24 months of age should be available in the next few months.<br><br>At the April 20, 1998 meeting between the parties, Defendants apprised Plaintiffs of the statewide databases with various health outcome measures that were available at TDH or other state agencies.  Defendants noted that previously proposed chart reviews would not provide Plaintiffs' desired results to measure relatively rare disabilities within the THSteps population.  Plaintiffs were given copies of summaries for proposed data sources for mental disabilities, vision, developmental milestones, asthma and growth/nutrition (attached).  Laboratory data on the prevalence of anemia by age and race/ethnicity are being evaluated.  Defendants continue to reassess the completeness and representativeness of the data collected within the Women, Infants and Children (WIC) program and by the TDH laboratory.  Data collection and quality assessment are underway for asthma hospitalizations and the percent of  THSteps children (ages 12-35 months and 48-59 months) with elevated blood lead levels who have a subsequent elevated blood lead level 1 year later.<br><br>Exhibit DD |

**1998 LAWSUIT ACTION ITEMS**
**Updated APRIL 30, 1998**

| Action | Status |
|---|---|
| **#296** <br> Defendants will develop corrective action plans to address all matters within Defendants' control to improve results for each health outcome indicator. <br> The corrective action plan will be presented to the Plaintiffs for review and comment by January 30 each year. | At the April 20, 1998, negotiation meeting, Defendants discussed with Plaintiffs the importance of having systems available in order to approach correct actions. It was mutually agreed that as a first step Defendants would send the following information to Plaintiffs: <br> • Agreed health outcomes <br> • Identification of trends <br> • Recommended approach for corrective action (within Defendants' control) |

37

1643

*Exhibit B*

1644

# STATUS REPORTS OF SERVICES TO PLAINTIFF FAMILIES

1645

# AYALA FAMILY

PREPARED BY: _Mart. Partds_

| Action Needed | Who | By When | Date Done | Comments |
|---|---|---|---|---|
| | | | | |

Contact Notes _no contact with mrs. Ayala during this quarter._

_mth - d. t dg LSW._

1647

# FREW FAMILY

# ACTION PLAN

To Be Faxed To: Audrey Terry
                Austin
                (512) 458-7256

PHA 4 & 5N

FEB 2 6 1998

TYLER-R7

Action Plan for CARLA FREW                          Date 022498

Prepared by BETTY WEIR, LMSW-AP

| Action Needed | Who | By When | Date Done | Comments |
|---------------|-----|---------|-----------|----------|
| MONITORING FOR ROUTINE MEDICAL/DENTAL NEEDS AND THS COMPLETION FOR CARLA | B.WEIR | QUARTERLY | QUARTERLY | |
| COMPLETION OF HOPKINS CO. CRCG PLAN | " | 0798 | MONITORED 0298 | |
| OBTAIN MENTOR FOR CARLA | " | 0198 | PENDING | TARGET DATE INCOMPLETE |
| COUNSEL AND FACILITATE APPROPRIATE MEDICAL CARE AND RELATED SERVICES FOR LINDA FREW | " | 0698 | | |
| ASSIST WITH PROVIDING FINANCIAL INFORMATION AND RELATED SERVICES IN BEHALF OF CARLA AND MRS.FREW | " | 0798 | | |

**Contact Notes:**

A TOTAL OF EIGHT (8) HOME VISITS AND NUMEROUS TELEPHONE CALLS
HAVE BEEN MADE SINCE LAST REPORT.  CARLA IS CURRENT FOR THS
MEDICAL AND DENTAL SERVICES WITH NO REPORTED PROBLEMS. THE TARGET
DATE FOR COMPLETION OF THE HOPKINS COUNTY COMMUNITY RESOURCE
COORDINATION GROUP (CRCG) PLAN WAS EXTENDED UNTIL 0798 DUE TO A
PART OF THE PLAN -- COMPLETION OF DRIVER'S EDUCATION
TRAINING/PAYMENT OF FEES -- BEING IMPOSSIBLE TO COMPLETE AS
DRIVER'S EDUCATION WILL NOT BE OFFERED BY SULPHUR SPRINGS
INDEPENDENT SCHOOL DISTRICT UNTIL THE SPRING SEMESTER IS
FINISHED.THE TRAINING IS SCHEDULED TO BEGIN 0698.THE HOPKINS
CO.CRCG WILL PAY THE $155.00 FEE.A VOLUNTEER MENTOR WAS LOCATED
FOR CARLA 1298 THEN LOST DUE TO ILLNESS IN THE MENTOR'S FAMILY.AN
APPROPRIATE VOLUNTEER HAS NOT BEEN LOCATED TO DATE; HOWEVER,
CARLA'S PRIOR FOSTER PARENTS CONTINUE TO HAVE FREQUENT CONTACTS

1649

GENERAL PROVIDE OUT-OF-HOME CARE WHEN NEEDED. THIS ACTION ITEM
IS DEFERRED FOR NOW. MRS.FREW WAS ENCOURAGED TO RETURN FOR
MEDICAL CARE WHICH WAS PERCEIVED AS NEEDED AND SURGERY FOR A
PROLAPSED UTERUS WAS FINALLY SCHEDULED FOR 030498.HER SON, WHO
LIVES IN OKLAHOMA, WILL BE AVAILABLE DURING THE TIME SHE IS
HOSPITALIZED AND WILL ALSO PROVIDE NIGHTLY SUPERVISION FOR CARLA
IN ORDER THAT SHE MAY REMAIN AT HOME/IN SCHOOL.MRS.FREW RECEIVED
A NOTICE THAT HER SSI IS BEING DENIED DUE TO HER NO LONGER BEING
DISABLED (I.E.,LUNG CANCER RECOVERY) AND HAS CHOSEN TO APPEAL THE
DECISION. THUS SHE CONTINUES TO RECEIVE SSI BENEFITS AT THIS TIME
WHICH WILL CONTINUE THROUGHOUT THE APPEAL PROCESS. RELEASED WERE
SIGNED FOR REFERRALS FOR MH AND TRC SERVICES.PLAN: CONTINUE TO
PROVIDE SERVICES/REFERRAL RESOURCES, ETC. AS NEEDED PER ABOVE
ACTION PLAN. INCLUSIVE OF MONITORING FOR THS COMPLIANS/SPECIAL
NEEDS.PROVIDE SERVICES DURING HOSPITALIZATION AS MAY BE NEEDED.
MAKE CONTACTS ON A MINIMUM BASIS OF ONCE MONTHLY THROUGH 0598.

BETTY WEIR LMSW-AP, MEDICAL SOCIAL WORKER     (903) 439-9336/FAX:
885-1166               FEBRUARY 24,1998

PAGE 2 OF 2 PAGES - CARLA FREW

Lawsuit.frm

1650

# TYRONE EDWARDS

1651

FEB 27 1998

Action Plan for <u>Tyrone Edwards</u>                    Date <u>02-27-98</u>

Prepared by <u>Gail Gibson, LSW</u>

| Action Needed | Who | By When | Date Done | Comments |
|---|---|---|---|---|
| Follow-up to see if Mary Fisher found appropriate male counselor | GGibson | 03-01-98 | 02-24-98 | * |
| Follow-up to see if Tyrone is back in public school. | GGibson | 03-01-98 | 02-24-98 | ** |
| Follow-up to see if Tyrone is following through with his parole stipulations. | GGibson | 03-01-98 | 02-24-98 | *** |

Contact Notes: <u>*Ms. Fisher states that Tyrone does not want to</u>

<u>see a counselor at this time.</u>

<u>          **Tyrone is now back in school (NLISD) 10th grade.</u>

<u>Mother states that he is in regular classes and is doing OK.</u>

<u>          ***Tyrone is following through with all the many</u>

<u>stipulations with regard to his arrest. He is on a 5 year pro-</u>

<u>bation. He reports to his probation officer every month. He is</u>

<u>also required to pay $116.00 per month ($2500) and just recently</u>

<u>learned he has to pay $1200 more in damages ($20.00 more per</u>

<u>month). Total per month $136.00 per month.</u>

<u>          J. Gail Gibson, LSW</u>

<u>          Medical Social Worker</u>

1652

FROM : TQM SOCIAL WORK SERV        FAX NO. : 903 595 4706        03-03-98  10:59A  P.05

Action Plan for Tyrone Edwards                    Date 02-27-98

Prepared by Gail Gibson, LSW

| Action Needed | Who | By When | Date Done | Comments |
|---|---|---|---|---|
| Continue with support and referrals if needed. | GGibson | 06-01-98 | | |
| Check and see if Tyrone has job for summer months. | GGibson | 06-01-98 | | |
| Check for problems with probation. | GGibson | 06-01-98 | | |

Contact Notes: _____

_____

_____

_____

_____          FEB 27 1998

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

1653

# GARZA FAMILY

Action Plan for _Sarah & Hilary Garza / Reynaldo Garza family_   Date _4/15/98_

Prepared by _Judy Lara, LSW_

| Action Needed | Who | By When | Date Done | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Contact Notes _4/14/98_ Today I went by the Garza home. No one was there so I left a card with a message asking Ms Garza to call my office.

_4/15/98_ I called the Garza home to check on Sarah and Hilary. I spoke to Amanda. She reported Ms Garza was not home. She indicated Sarah and Hilary have been doing good. No illnesses at this time. I asked her to inform Ms Garza to call me if she needed my services.

1655