

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

| | | |
|---|---|---|
| LINDA FREW, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:93CV65 |
| | § | |
| MICHAEL McKINNEY, ET AL. | § | |
| Defendants. | § | |

## DEFENDANTS' MONITORING REPORT, JULY 1998

TO THE HONORABLE JUDGE JUSTICE:

Pursuant to Paragraph 306 of the Consent Decree, Defendants file their Monitoring Report,

attached as Exhibit A thru Z, and are incorporated by reference.

Respectfully submitted,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DAVID A. TALBOT, JR.
Deputy Attorney General for Litigation

TONI HUNTER
Chief, General Litigation Division

DONA G. HAMILTON
Texas Bar No. 08825600
Assistant Attorney General
General Litigation Division

*Signing for:*

EDWIN N. HORNE
Texas Bar No. 10008000
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512)463-2120
(512)320-0667 (Telefax)
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on this the 11th day of

August, 1998, on the following counsel of record:

Susan F. Zinn                                    **(VIA FIRST CLASS MAIL)**
Attorney at Law
P.O. Box 15126
San Antonio, Texas 78212

Jane Swanson                                     **(VIA FIRST CLASS MAIL)**
Law Offices of A. Rodman Johnson
2202 Timberloch Place, Suite 112
The Woodlands, Texas 77380

DONA G. HAMILTON
Assistant Attorney General

2

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#17**<br>■  Mail letters to clients due for medical and/or dental check- up. | In 1995, TDH central office begin mailing newly- designed client periodic due letters for medical and dental check- ups. |
| ■  Mail letters about the 1 year dental check up 2 months months before due by 1/1/96. | In April 1996, TDH central office began mailing letters to clients about the 1 year old dental check- ups 2 months prior to the 1 year old due date. |
| ■  Letters to be effective and appropriate (see Consent Decree p.10). | All client letters include purpose of letter, type of check- up due, information on preventive care and age appropriate information based on the age of the child named in the letter.  All client letters were reviewed and approved by Plaintiffs' attorneys.  This included the addition of plaintiffs' requested changes or revisions to the letters. As discussed with  plaintiffs at the April 20, 1998 negotiation meeting, Defendants conducted  client focused assessment of the client informing letters. The findings are summarized in the attached "Executive Summary". |
| ■  Provide brochures/flyers to clients, applicants and agencies where the EPSDT population may be found. | Regional THSteps staff are responsible for distributing brochures/flyers and other program educational and marketing materials to clients and other agencies on an ongoing basis. During the period from January 1998 through June 1998, the TDH warehouse provided 517,315  brochures and 190,078 wallet cards to various entities throughout the state ( e.g. doctors, dentists, local health departments, schools, clinics,  DPRS, TDH, TDHS, etc.). Also, see response to Paragraph # 65 (page 8). |
| ■  Create age appropriate information for use by recipients of specific ages. | All client letters and oral informing text used by DHS staff include age appropriate information.<br><br>Exhibit A |

1

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#18**<br>This paragraph does not preclude the development of a new Medicaid card format in the future as contemplated by paragraph 304. | The Plaintiffs were not satisfied with the " fee for service"  Medicaid ID form (MED ID) implemented in 1996. Defendants agreed to conduct further testing on both  forms.  Qualitative testing of both the "fee for service" and "managed care" MED ID forms was completed in April, May, and June of 1997 with clients, providers, and provider front line staff.<br><br>Plaintiffs were sent a copy of the final report "Testing the Fee-for-Service and Managed Care Medicaid Identification Forms" (Executive Summary, Summary Report and Detailed Research Findings) on December 19, 1997.<br><br>In response to SB 910, 75th Legislature,  an interagency task force chaired by the State Comptroller's office  is evaluating the feasibility of adding the Medicaid program to the state's electronic benefits transfer system. Tasks involved in that evaluation include: defining best practices in other states, defining the role of technology in alternate solutions, gathering information on design considerations and making decisions on  sponsorship.<br><br>Commencement of the Texas Integrated Eligibility and Services (TIES) Project was announced in late October 1997. HB 2777, 75th Legislature, charges the Health and Human Services Commission to develop and implement a plan for integration of services and functions relating to eligibility determination and service delivery by health and human services agencies, the Texas Workforce Commission and other agencies. The legislation specifies that business practices (eligibility and service delivery) are to be "re-engineered". One of the immediate improvements recommended by the TIES Project was elimination of  the  monthly mailing of the MED ID.<br><br>Both of the above projects are State legislative mandates which could impact the entire MED ID process. These initiatives have not advanced as anticipated.  The findings of the THSteps MED ID study are being reassessed. A plan for incorporation of changes in the paper MED ID form will be developed by THSteps staff. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#18 (cont.)** | The programing and printing of the form is the responsibility of the TDHS, which is now grappling with millennium or year 2000 compliance.  The timing of any requested MED ID changes will be subject to negotiations with TDHS. |
| **#20**<br>Eligibility workers will discuss EPSDT with those who apply for benefits on behalf of an EPSDT eligible person. (For discussion elements see Consent Decree p.12-13). | In 1995,  a client bilingual informing Desk Reference (used by TDHS eligibility workers) was updated to include all of the elements required in the Consent Decree.  Workers were also supplied with an informing text to use as a training tool for the informing process.<br><br>The Desk Reference has  been updated to include information on  medical case management. The revised  Desk Reference is now being distributed when catalog orders are received and an initial set delivered to TDHS.<br><br>Exhibit B |
| **#21**<br>Eligibility workers will provide an EPSDT brochure and a wallet card schedule of medical check ups to each applicant household. | In 1995,  TDHS eligibility workers were provided with a new bilingual client brochure "About EPSDT--for Babies, Children and Youth up to Age 21" to give to all new and recertified clients for AFDC and Medicaid programs. An EPSDT wallet card was also provided to workers for distribution to clients.  The wallet card was designed to give clients a quick reference for the medical check-up schedule and the recommended schedule of childhood immunizations.<br><br>In 1996, TDHS workers were furnished with a new and improved client brochure : "STEP UP GET A CHECK-UP". This brochure used the new program name (THSteps).<br><br>During the period from January 1998 through June 1998, the TDH warehouse provided 58,575 brochures and 72,845 wallet cards to TDHS offices throughout the state. |

3

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#23**<br>Provide assistance to help applicants request further oral outreach by an outreach unit. | In August 1995, TDHS workers were provided with an "Extra Effort Referral" form to facilitate referral of clients directly to regional EPSDT/THSteps outreach staff.  An offer of oral outreach also was included in the letters mailed from TDH central  office to all THSteps recipients  newly certified and recertified for Medicaid. Plaintiffs have previously been furnished with a copy of the "Extra Effort Referral" form.  THSteps staff also accept other methods of referral, e.g.; telephone and a TDHS Form 1088 (used to validate medical check-ups and immunizations for THSteps recipients to avoid TANF [formally AFDC] sanctions.) Currently,  there are no reports which capture the number of TDHS referrals.  THSteps staff have an excellent working relationship with their TDHS counterparts and  respond to all TDHS referrals.  Many THSteps outreach staffs are located in TDHS offices.<br><br>THSteps staff   piloted  a revised version of the "Extra Effort Referral" form in Region 11.  Comments and recommendations on the revised form are now being completed by TDHS and TDH staff in Region 11. A new form will  incorporate the pilot findings, followed by statewide implementation in FY 1999.<br><br>Appropriate changes will be made to the TDHS handbook when the revised form is implemented statewide. |
| **#32**<br>Outreach units will have sufficient staff and other reasonably necessary resources to handle their workload promptly and effectively. | As of June 1998, there is a Regional THSteps worker/client ratio of 1:1649. The number negotiated with Plaintiffs was 1:3500. |

4

## 1998 LAWSUIT ACTION ITEMS
## Updated JULY 31, 1998

| Action | Status |
|---|---|
| **#34**<br>Beginning 9/1/95 outreach units will provide oral outreach to all recipients who request information about EPSDT beyond that provided by TDHS eligibility workers. | In October 1995, EPSDT/THSteps staff began receiving and responding to formal client referrals for oral outreach from TDHS workers. See response to Paragraph # 23 (page 4). |
| **#40**<br>Provide a current Outreach List to each outreach unit monthly. | Client outreach lists are downloaded electronically every month to each TDH region for use by THSteps staff.<br><br>The client periodic "Dues" and the "Overdues" files will also be electronically downloaded monthly to the MCOs in each TDH region. ( The client periodic " Dues" list was delivered to the MCOs on April 26, 1998. Processes are now being put in place for routinely sending both client files to the MCOs. An amendment to the enrollment broker contract is being developed to assure distribution of this information.) Files for the MCOs will be separated by Plan and Service Delivery Area. MCOs are to work these client files actively each month. (These files will also give the MCOs an opportunity to see if the check-ups they have already performed are reflected in the client file information.) |
| **#43**<br>Identify clients requesting information beyond that provided by TDHS eligibility workers. | Client referrals from TDHS eligibility workers are made on an "Extra Effort Referral" form to EPSDT/THSteps outreach staff who respond to each referral. See response to Paragraph # 23 (page 4). |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#60**<br>Each month the outreach unit will report certain numerical information to the EPSDT program (See Consent Decree page 20 for details). | A regional automated system, CARES, was implemented in August 1995, to collect and report the client information specified in Consent Decree Paragraph #60. On March 10, 1997, Plaintiffs were provided with a detailed report (including corrective actions and report options) about the Department's problems with the data entry system for these outreach reports. On May 7, 1997, Plaintiffs notified Defendants of the report options they preferred and were furnished on a monthly basis with the requested data that was available for select regions. Beginning September 1997, complete reporting information was sent to Plaintiffs on a regular monthly basis. The February 1998 report was sent to Plaintiffs on July 13, 1998.<br><br>Exhibit C |
| **# 61**<br>Defendants will develop and implement a method that reports the number and percent of recipients who receive medical and or dental check ups after receipt of oral outreach. | See the response to Paragraph # 60 (page 6). |

6

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#62**<br>Standardized training of outreach staff. | In 1994 an " EPSDT Training and Orientation Guide" was developed by THSteps central office staff to facilitate standardized training of regional EPSDT/THSteps outreach staff. Each region then added regional customized training materials to this information. Central office training staff also delivered certain aspects of regional staff training which was standardized statewide. In August 1997, the Department distributed an updated training guide to regional EPSDT/THSteps staff.<br><br>Each year, TDH central office staff has conducted training for VISTA Volunteers (Pre-Service Orientation). The 'VISTA Orientation Handbook" developed and used by the Department for training now serves as a model for VISTA training in about 11 other states.<br><br>A new outreach worker training curriculum is under development ( July 15, 1998 status report attached).<br><br>Exhibit D |
| **#64**<br>Conduct other appropriate, aggressive outreach efforts to encourage recipients to use EPSDT services. | Each region has implemented its own unique outreach efforts (examples attached).<br><br><br><br>Exhibit E |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#65**<br>Work with other agencies to inform clients about EPSDT. (See  Consent Decree page 22 for list of agencies.) | In 1995, THSteps central office staff contacted the commissioners of the agencies specified in Consent Decree Paragraphs # 65 & # 70  and furnished them with a comprehensive "EPSDT Program Manual for Professionals" to share with their staff.<br><br>Three of these agencies receive Medicaid funding to provide targeted case management services for Medicaid/THSteps clients (Texas Commission for the Blind, Texas MHMR, and ECI).<br><br>The Department has a EPSDT/THSteps MOU with DPRS and TDHS.<br><br>Department staff  consult with the State Medicaid Director at HHSC on THSteps matters.<br><br>Regional THSteps staff coordinate with staff of these and other agencies at the local level (examples attached).<br><br>On April 17, 1998,  a letter  was sent to the agencies listed in Consent Decree Paragraphs #65 & #70 and the Texas Workforce Commission requesting the designation of a THSteps liaison to work with THSteps staff on coordinating client outreach and  informing about the THSteps program.  The letters included a copy of the *Texas Health Steps Resource Catalog*  which contains a description of program marketing materials and ordering instructions. Each  agency  was encouraged to share this information with its staff so they could use the THSteps brochures. As a follow-up to the above letter, representatives from the agencies listed in the Consent Decree have been  invited  to a THSteps   reception scheduled during August 1998. A THSteps display with all program materials will be set up at the reception. THSteps staff will present  an overview of the THSteps program and discuss inter-agency collaboration.<br><br>Exhibit F |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#68**<br>Provide and update accurate information about EPSDT for inclusion in handbooks of other agencies that serve EPSDT clients. | The agencies designated in Consent Decree Paragraphs # 65 & # 70 were originally sent a comprehensive handbook entitled "The Texas Medicaid EPSDT Program, A Manual for Professionals." The THSteps program has changed dramatically and rapidly since this program manual  was written and distributed. The manual is undergoing a total revision. The new manual will incorporate all of the changes resulting from the implementation of managed care and provide a greater level of program detail. As of July 1998, a draft of the new manual has been completed and is being reviewed by THSteps central office staff.<br><br>For several years Defendants have routinely provided THSteps policy updates (as needed) to the DPRS and the TDHS for their handbook material.  An update on Medical Transportation Program policy (for inclusion in the TDHS Income Assistance Handbook) was sent to TDHS on June 21, 1998.<br><br>Exhibit G |
| **#70**<br>Provide handbook inserts to agencies and programs on an ongoing basis. (See page 23 for list of agencies). | A new program manual  (as opposed to inserts) has been drafted by EPSDT/THSteps central office staff.<br><br>See response to Paragraph # 68 (page 9). |
| **#72**<br>Encourage other agencies to use EPSDT brochures and provide adequate supplies of brochures to requesting agencies. | Regional EPSDT/THSteps staff  coordinate with other agencies at the  local level and provide and/or distribute THSteps brochures.<br><br>On April 22, 1998, the Department's managed care enrollment  broker (Maximus) was given a supply of the *Texas Health Steps Resource Catalog* for distribution to each of its area managers.  Maximus staff may now order THSteps marketing materials directly from the TDH warehouse.<br><br>See responses to Paragraphs #17 (page 1) &  #65 (page 8). |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#73**<br>Arrange for and implement a marketing plan that encourages providers and recipients to participate in the EPSDT program. | In 1995,  the Department negotiated a contract with the marketing firm, TateAustin.  A multi-media campaign focusing on the importance of preventive check-ups was launched on May 6, 1996.  The campaign introduced a new program name "THSteps".  An ad campaign presented THSteps as a way for parents in Texas to build a healthy successful future for their children.  A TV campaign combined  animation and music to convey the message of preventive health care to families.  Radio and outdoor advertising emphasized the need for regular medical and dental check-ups.  The overall campaign was designed to increase awareness and participation in the THSteps program.  Marketing materials such as  banners, client  brochures and refrigerator magnets  were sent to the regions, department's health insuring agent, and other agencies for distribution to clients and providers. (Plaintiffs were sent samples of the marketing materials). A special 1-800 number manned by 10 operators handled responses to public inquiries from clients and non-clients about the campaign and how and where to obtain preventive medical and dental check up services. The TateAustin contract has expired.<br><br>A new THSteps marketing plan has been developed for the 1998-1999 biennium (See attached July 1998 status report) .<br><br>Exhibit H |
| **#91**<br>Immunization tracking system to be in place by 1/96 permitting providers to promptly request up to date information about patients' immunization status. | The hardware and software necessary to run ImmTrac, the state's immunization registry and tracking system are in place and are operating.  Immunization Registry legislation was passed in the last session.  Based in part on written comments sent to the Department and testimony received at a public hearing, the Department is modifying the proposed rules to implement the law. These proposed  rules were presented to and approved by  the TDH Board of Health at its July 17, 1998 meeting. THSteps immunization records contained in the NHIC data base will be downloaded into the ImmTrac system with parental consent. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#96** Beginning 9/1/95 outreach units will respond to providers' requests for assistance re: clients missed appointments/overdue check ups; and, will explain how to contact outreach units. | With the regional implementation of the CARES system in 1995 (See response to Paragraph  # 60 (page 6), outreach units began documenting their responses to providers' requests for assistance. Regions  used various means to contact providers in the area to advise them of  support services and how to contact THSteps outreach units. In a  response to a 1997 request, Plaintiffs were furnished  with samples of materials used by the regions to convey information to providers.

The monthly reports referenced in response to Paragraph # 60 (page 6) identify by region the number of requests for outreach by health care providers. The number ranges from over 500 a month in some regions to zero in other regions.  Since the number of referrals has been minimal in most regions, THSteps central office staff  developed a Provider Referral Protocol (for all provider types) to establish a minimum statewide standard operating procedure (SOP).  Regions with local procedures that exceed the SOP will be encouraged to continue their own processes. The new protocol was implemented in June 1998. Plaintiffs were sent copies of the new THSteps regional staff protocol for handling missed appointment provider referrals and the "THSteps Missed Appointment Referral Form" in July 1998.

Exhibit I |
| **#99** By 9/1/97 implement a method to index the reimbursement rate for medical check ups in non-managed care areas. | On January 30, 1997, Plaintiffs were sent an indexing method which resulted in fee increases beginning in SFY 1998.  On February 20, 1997, Plaintiffs were provided with additional information on the indexing methodology.

On March 10, 1998, Plaintiffs were advised that the maximum allowable "fee for service" reimbursement rate for a THSteps medical check-up (performed in traditional Medicaid) would  increase from $40 to $46.20 effective for dates of service on and after March 1, 1998.

Plans are now being made to increase the medical check-up "fee for service" reimbursement rate from $46.20 to $47.20, effective for dates of service on and after September 1, 1998 (when performed in traditional Medicaid). |

## 1998 LAWSUIT ACTION ITEMS
## Updated JULY 31, 1998

| Action | Status |
| --- | --- |
| **#102**<br>By 5/30/95 list all relevant professional schools in Texas that are not enrolled as EPSDT providers and by 10/31/95 complete efforts to recruit them to become providers. | Plaintiffs were sent an update on May 20, 1998.  Attached is a follow-up report dated July 14, 1998, on Texas Professional Nursing Programs and Texas Advanced Practice Nursing Programs. (There were no changes in the enrollment status of Texas medical schools.)<br><br><br>Exhibit J |
| **#103**<br>NHIC will increase its provider relations staff to 28 to increase recruitment efforts. | As of April 1998, NHIC had  fourteen provider representative positions  filled and one  position in the process of  being filled. Eight Austin-based provider coordinator positions handle provider phone calls for the provider representatives and perform research to assist the provider representatives with problem resolution. There are a total of 23 NHIC staff after the pending vacancy is filled.<br><br>Although the number of provider representatives employed by NHIC is less than 28,  there are now 220 managed care provider representatives and 16 THSteps regional provider relations staff. Attached are listings of provider representatives in each managed care  service area (by health plan) and the THSteps regional  provider relations staff by region.<br><br>See response to Paragraph #106 (page 13).<br><br>Exhibit K |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#106**<br>Regional provider relations staff will:<br>■ Assist providers to receive training relevant to provision of services to clients.<br>■ Assist providers and their administrative staff to receive training about the administration of the program. | Each TDH region has designated THSteps provider liaison staff who supplement the provider relations activities of the Department's health insuring agent, NHIC.  THSteps staff do provider training independently and in coordination with the NHIC provider relations staff. These 16 staff are in addition to the 23 NHIC and 220 managed care provider relations staff referenced in response to paragraph #103 (page 12). Beginning September 1, 1998, THSteps regional provider relations staff will further increase when the  TDH Regional Dental Directors assume responsibility for dental provider relations, recruitment, and education. They will also provide training on the dental program to THSteps outreach and provider relations staff.<br><br>Attached are examples of  regional staff  initiatives to assist providers to receive training.<br><br>Exhibit L |
| **#107**<br>Provide information and facilitate ongoing training about Medicaid and EPSDT at all relevant professional schools in Texas. | The plan for meeting this requirement will be completed by the end of the summer of 1998. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#108** Make staff available to participate in ongoing training in conjunction with appropriate professional training, e.g. how to conduct a medical check up for a teenager or a dental check up for an infant. | See response to Paragraph #107 (page 13). |
| **#111** Facilitate annual NHIC training seminars for medical and dental check up providers.  Trainers will include physicians and dentists. | See response to Paragraph # 107 (page 13). |
| **#112** Facilitate training for professionals about mental health assessments for indigent children and youth.  The training will describe recent expansions in Medicaid coverage of outpatient mental health services. | See response to Paragraph # 107 (page 13). |

14



**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#116**<br>Facilitate training for professionals in the provision of EPSDT services to teenagers. | In conjunction with the Texas Nurses Association, TDH has been sponsoring a THSteps training program for registered nurses and physician assistants on "Basic Concepts in Identifying the Health Needs of Adolescents". The attached brochure gives information on the training objectives and the training modules covered in the two day course. This training is in addition to the regular nurses' training courses (see response to paragraph #131, page 17) and has been presented in five locations: Dallas, Houston, Austin, Harlingen, and El Paso. This training course will be offered again next year.<br><br>Exhibit M |
| **#117**<br>Facilitate training on new clinical issues regarding provision of care to EPSDT clients. | See response to Paragraph # 107 (page 13). |
| **#120**<br>Develop training modules designed to be included in other training programs about the realities of EPSDT clients' lives to attempt to improve providers' attitudes toward recipients and provide to professional schools. | See response to Paragraph # 107 (page 13). |

15

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#130**<br>By 1/31/96 conduct a professional and valid evaluation of pharmacists' knowledge of EPSDT coverage of items commonly found in pharmacies. If pharmacists' understanding is unacceptable, conduct an initiative to orally inform pharmacists about EPSDT's coverage. | A survey was developed in collaboration with the Department's Vendor Drug Program pharmacists to measure pharmacists' knowledge of EPSDT Comprehensive Program (CCP) services.  Surveys were mailed in July 1996 and data collected for the next several months. The survey report produced in November 1996, indicated that surveys coming from 154 counties (out of 213 surveyed) had over 50% errors.<br><br>The parties agreed that the pharmacist's EPSDT/ CCP program knowledge was unacceptable and a 4 part training plan was proposed to Plaintiffs in December 1996.<br><br>Following  Plaintiff's approval, the following pharmacist training plan has been completed as follows:<br><br>Part 1: Distributing informational handouts to all pharmacies enrolled in the Vendor Drug Program.  A supply of the handout was mailed to each regional TDH pharmacist  to be used at the annual visit with each enrolled Vendor Drug Program pharmacy.  Each THSteps regional manager received a supply of the handout to use in responding to general inquiries.<br><br>Part 2: Providing EPSDT-CCP pharmacy information on a TDH web page.  Effective July 1997,  the TDH web site incorporated a Medicaid CCP flyer, listing of CCP procedure codes with prices for pharmacies, and a sample billing form.<br><br>Part 3: Participating in the annual Texas Pharmaceutical Association meeting.  An EPSDT/CCP booth was set up at the meeting and  open during exhibit hours on July 17& July 18, 1997.  The state office program specialist for  EPSDT/CCP services manned the booth and was available to provide both oral and written information to pharmacists about the EPSDT/CCP program. |

16

## 1998 LAWSUIT ACTION ITEMS
### Updated JULY 31, 1998

| Action | Status |
|---|---|
| **#130 (cont.)** | Part 4:  Defendants are still evaluating the possibility of developing and producing a 15-20 minute video for pharmacists.<br><br>The Department's program specialist for THSteps (EPSDT) CCP services attended the 1998 annual Texas Pharmaceutical Association state meeting in Houston on June 25 & 26, 1998, and provided oral and written information to pharmacists on the THSteps/CCP. |
| **#131**<br>Arrange scholarships to enable needy providers to attend TDH sponsored EPSDT training programs. | 15 scholarships for nurses training (how to perform THSteps check-ups) were provided between July 1995 and February 1996.  Funding for provider training scholarships is not an allowable cost under Title XIX, Medicaid. The non-Medicaid dollars originally allocated to pay for nurse training courses are no longer available. Plans are being made to place these costs in a non Medicaid  program operating budget for fiscal year 1999. |
| **#139**<br>Effort to recruit family planning clinics to provide EPSDT medical check ups will be coordinated with TDH's family planning. | A new policy for payment of a combined Family Planning/THSteps checkup visit has been developed to facilitate the recruitment/enrollment of family planning entities in the THSteps medical check-up program. The proposed policy provides for a new THSteps service fee (in addition to the family planning exam fee) when THSteps check-ups are provided in conjunction with an annual family planning visit/exam. THSteps staff is now working through the process for modifying the new rate now that the Medicaid rate setting authority has been moved by statute to the Health and Human Services Commission. |
| **#141**<br>Recruit ISDs to provide EPSDT medical and dental check ups and coordinate other needed services. | Attached are activity reports from each of the TDH regions.<br><br><br>Exhibit N |

17

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#142**<br>TDH will cooperate with HeadStart  programs to ensure that HeadStart students who are EPSDT recipients have access to EPSDT services. | Attached are activity reports from each of the TDH regions.<br><br><br><br>Exhibit O |
| **#148**<br>Conduct outreach to families with EPSDT client infants to help to prevent BBTD. | A "Statewide Dental Health Awareness Plan" was previously  furnished to Plaintiffs and included as an exhibit in the January 1998 Quarterly Monitoring Report.  The plan was implemented according to schedule. On September 9 & October 27, 1997, Plaintiffs were sent copies of information associated with the plan (training video, poster, brochure, trainers' manual, trainees' workbook for outreach workers, and the final report of the Dental Recruitment and Retention Committee). Outreach activities around the State should now be including the dental information from the Statewide Dental Health Awareness Plan training per the information sent to Plaintiffs.<br><br>A flip chart (which is a new addition to the original training materials) is now being printed. Projected completion date is September 1998. A copy of the new flip chart will be sent to Plaintiffs. |
| **#165**<br>No later than 10/31/95, maintain reports of the number and percent of dentists who see 0-29, 30-99 and 100+ EPSDT clients every 3 months. | Plaintiffs have been furnished  with the specified data for all of SFY 1996 and SFY 1997.  Data not required by the Consent Decree continues to be provided to Plaintiffs to allow assessment on the volume of clients served by active enrolled dental providers.<br><br>A report for the first quarter of SFY 1998 was sent to Plaintiffs on June 8, 1998.<br><br>Exhibit P |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#167**<br>Finalize policies or rules for the dental audits by 9/30/95. | The Department's (TDH) existing dental rules remained in place in 1995. Defendants began review and revision of the rules in coordination with the TDH Oral Health Services Advisory Committee in 1997. Revised proposed dental rules were presented to the TDH Board of Health on April 17, 1998. The Board of Health approved the proposed rules for publication in the TEXAS REGISTER after being presented with a revised motion. A copy of these rules were sent to Plaintiffs on April 2, 1998. Plaintiffs were also sent a copy of the proposed rules presented to the Medical Care Advisory Committee (MCAC) on March 12, 1998. Defendants responded to Plaintiffs' questions about the proposed rules on April 9, 1998. At Plaintiffs' request, Defendants sent Plaintiffs' comments on the proposed rules to the TDH Commissioner and the members of the MCAC.<br><br>TDH conducted a hearing on June 4, 1998, to accept public comments on the proposed rules which were published in the TEXAS REGISTER on May 22, 1998. Adoption of rules will be proposed to the TDH Board of Health at its September 10-11, 1998 meeting. |

## 1998 LAWSUIT ACTION ITEMS
### Updated JULY 31, 1998

| Action | Status |
|---|---|
| **#171**<br>By 9/30/96 prepare a report of the number and percent of clients who receive 1 dental check up/year and 2 dental check ups/year.  Prepare similar reports every year. | On February 5, 1997, Plaintiffs rejected Defendants' report response to Paragraph # 171.  Another methodology/ proposal for meeting this report requirement was rejected on July 11, 1997.  On September 17, 1997, Plaintiffs were furnished with an alternate report. A response to Plaintiffs' September 30, 1997, questions received on the report was sent October 20, 1997.<br><br>On April 3, 1998, Plaintiffs requested the report be an agenda item for the negotiation meeting between the parties on April 20, 1998.<br><br>At the April 20, 1998 negotiation meeting,  Plaintiffs alleged that Defendants' report did not meet the Consent Decree requirement since the reporting period was expanded from 12 months to 18 months (to compensate for those THSteps recipients who had eligibility periods overlapping two fiscal years). Although Defendants did not agree with Plaintiffs' methodology for attaining accurate report information, Defendants agreed on April 20, 1998 to produce a report limited to a one year reporting period (even though this report will not allow for the review of a 12 month period appropriate to those overlapping eligibility spans).<br><br>The Department's health insuring agent (NHIC) has completed a revised report which is now being evaluated by THSteps central office staff. |
| **# 172**<br>Parties will agree on expected increase in the number and percent of recipients who receive 1 and 2 dental check ups/year. | There has been no discussion between the parties on this matter. See response to Paragraph #171 (page 20). |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#174**<br>Arrange for a study to assess the dental health of the EPSDT population. | A RFP to do a dental study was developed and published in the June 3, 1997 TEXAS REGISTER.  The contract for the study to assess the dental health of the THSteps/EPSDT population was awarded to UTHSC-San Antonio. Study protocols (including a parent survey instrument and consent forms) to assess 6th grade school children and two year olds in THSteps were submitted to Plaintiffs on January 13, 1998.  The Plaintiffs' questions regarding the protocol for 6th graders (presented in their February 2, 1998 letter) were answered on February 20, 1998.  The Plaintiffs' issues regarding the protocol for THSteps two year olds (presented in their March 25, 1998 letter) were answered on an April 7, 1998.  The study protocols were reviewed and approved by both the TDH and the UTHSC-San Antonio Institutional Review Boards.  A contract is in place with UTHSC-San Antonio to organize and conduct the studies over the next year.<br><br>Dental assessments are projected to begin with the 1998 Fall school semester.  The consensus panel report on the "need for hospitalization " among two year old children with dental disease was sent to Plaintiffs on May 15, 1998 for review and comment.  Feedback was received from Plaintiffs on June 29, 1998.  Defendants will respond to Plaintiffs after they meet with Dr. John Brown, the principal investigator of this project.<br><br>Exhibit Q |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#180**<br>Begin this program in the Lower Rio Grande Valley in 1995 and later expand to other areas of the state as needed. | During the summer of 1995, TDH Region 11 obtained a listing of children from the TDHS data base whose families were identified as migrant farm workers.  Using this list, targeted outreach was accomplished.  Initially it was thought this method could be used state-wide. Later it was learned that the TDHS migrant farm worker information was not consistently available outside of Region 11. An alternate plan was developed to use data available from Education Service Centers (ESCs) and school districts. Region 11 continues to use the TDHS generated migrant listing complemented with the information available through ESCs and school districts.<br><br>A formalized plan for meeting the requirements in paragraphs #180, #181, and #183 was furnished to Plaintiffs. A state office THSteps program integrator was hired July 1, 1997 and is working to assure full coordination and implementation of the plan. The plan is as follows:<br><br>TDH will use an existing nationwide program operated by the Federal Migrant Education Program known as the "Bolsa Roja" or "Red Bag" program.  Whenever migrant worker children are identified by the school they are provided  with a red bag.  This bag is used to transport all of the children's records (health and education).  When the child moves, the school places the child's documents in this bag.  The "Red Bag" program also provides parenting skills/health education.  A worker from the school district is requested to conduct a home visit annually. Records of their home visits are maintained.  TDH has been working on a MOU with the Texas Education Agency (TEA) that will institutionalize this process with ESCs to deliver THSteps information.  Further, TDH will actively solicit cooperation from the related professional organization generally involved with migrant issues.<br><br>A meeting to discuss migrant farm workers was held with TEA on December 15, 1997.  Another  interagency meeting was held on March 12, 1998. On March 27, 1998, THSteps central office staff sent a listing of ESC's to the THSteps regional staff  for informational purposes. |



**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **# 180 cont.** | There are ESC's located in each of the TDH regions. The ESC's maintain a regular contact with migrant families. Central office THSteps staffs have (1) drafted an MOU between TEA and TDH (which is now being reviewed by TEA management staff) and (2) distributed to appropriate regions a database of all licensed migrant labor camps in Texas. <br><br> A presentation by THSteps central office staff was made to the ESC Coordinators on April 13, 1998. The presentation focused on THSteps efforts to reach the migrant family population. A presentation on THSteps was made to TEA staff on April 15, 1998. Plaintiffs were sent the summary and slides presented at the meeting. THSteps staff made another presentation to members of the School Health Network (located in the 20 various TEA -ESC centers) on April 22, 1998. <br><br> A THSteps presentation will be made to the TEA Migrant Education Division on July 30, 1998. Emphasis will be made on targeting the migrant population through improved communication and coordination between TDH and staff. Handouts listing contacts (for TDH,TDHS, DPRS, and TEA regional locations across the state) will be distributed. <br><br> See response to Paragraph #181 (page 23) for examples of migrant outreach efforts by THSteps regional staff. |
| **# 181** <br> Defendants will make efforts to help farm worker families to utilize EPSDT benefits promptly upon return to Texas. Efforts will include door to door outreach in communities where farm workers live. | Attached are activity reports from each of the TDH regions. <br><br><br><br><br> Exhibit R |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#182**<br>When farm workers apply for Medicaid benefits on behalf of EPSDT eligible children, determine if the applicant would like further information about EPSDT or help to schedule appointments. | See response to  Paragraph # 23 (page 4). |
| **# 183**<br>When outreach units receive information about the identity of migrant farm worker recipients who request outreach services, outreach units will give priority status to those recipients.  They will provide outreach as quickly as possible. Outreach information will encourage this group of recipients to receive as many needed services as possible before they move on again. | Regions have been advised of the importance of expediting services for migrant farm worker recipients. See the response to Paragraph # 180 (pages 22-23)  about efforts to identify and outreach the migrant  population so that they may  receive services on a timely basis. |

24



**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#191**<br>Assure that the number and percent of EPSDT patients in each MCO who receive all medical and dental check ups when due and information for outcomes research as needed is accurately collected. | On January 28, 1998 and April 15, 1998, Defendants responded to Plaintiffs' inquiries about check-ups for class members receiving services through managed care organizations (MCOs). Plaintiffs were furnished with an early report on THSteps check-ups (MCO self reported data) and the initiatives in progress to increase the number of THSteps done and reported to TDH.<br><br>On July 27,1998, Defendants responded to Plaintiffs' April 28, 1998 letter about check-up rates in managed care.<br><br>Exhibit S |
| **#192**<br>Assure that MCOs provided medical and dental check ups to newly enrolled clients no later than 90 days enrollment except when clients knowingly and voluntarily decline or refuse services. | This provision is in the TDH–HMO contracts.  MCOs will be sent on a monthly basis the names of clients who are periodically "Due" and "Overdue" for their THSteps check-ups. See response to Paragraph #40 (page 5). |



**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#193**<br>Assure that MCOs cooperate with outreach units so that clients who miss medical and/or dental check ups receive prompt services. | THSteps staff continues collaboration efforts with their managed care partners. During June 1998, they met with the management team for Birch and Davis (contract administrator for the PCCM model). The meeting centered on preliminary discussions about strategies the parties could employ in collaboration efforts and establishment of ground rules:<br>--Any collaboration must be documented and available to the general public as well as other MCOs.<br>--No collaboration efforts could be considered proprietary.<br><br>Specific areas for collaboration discussed were:<br>--Sharing provider participation data with Birch and Davis in order to target providers to increase client participation rates.<br>--Developing a comprehensive pilot with other MCOs in Region 6.<br>--Electronic distribution of program marketing materials.<br>--Coordination of client informing materials .<br><br>Attached is a chart of "THSteps Public Health Regional Managed Care Organization Coalition Activities" in Regions 2/3, 6/5South, 7 and 8.<br><br>See responses  to Paragraph # 192 (page 25) and Paragraph # 40 (page 5).<br><br>Exhibit T |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#194**<br>Assure that MCOs arrange training for all health care providers and their staff who serve EPSDT clients as authorized by SB601. | 1.  This provision is in the Medicaid managed care contracts.<br><br>2.  The contract provision  referenced in response to Paragraph # 192 will assist in monitoring compliance with this requirement.<br><br>3.  MCOs are required to submit training participant sign-in sheets on request to the Bureau of Managed Care.<br><br>4.  TDH central office will continue to do written training utilizing the provider NHIC Medicaid Bulletins and other written information.<br><br>5. Plaintiffs were furnished with a new "Education Plan for All Texas Health Steps Providers and Their Staff in Medicaid Managed Care Services Areas" at the June 12, 1997,  negotiation meeting.<br><br>6. On August 4-5, 1997, TDH central office staff conducted a comprehensive "train the trainer" session on the THSteps program for MCOs with the expectation that the training modules developed for this session would be used by MCOs to train providers.  Attendance included MCO staff from the Harris Service Delivery Area (SDA) as well as other SDAs in the state. A follow-up training session was held October 1-2,1997. Plaintiffs comments on the training were  incorporated into the final training modules to be presented at the October 1997 training session referenced above.<br><br>7.  Provider training will occur with the roll-out of each new SDA. Following initial roll-out, MCO staff will be provided training materials.<br><br>8.  The THSteps Modules for MCO training have been expanded to reach a wider audience by covering 17 topics associated with the THSteps program. The modules were also designed to be used together as one |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#194 (cont.)** | comprehensive document or individually for specific areas of interest. The modules will be reviewed and updated on a yearly basis. |
| **#199** MCOs will be subject to independent evaluation of their patients health outcomes, satisfaction and process measures, including the number and percent of EPSDT clients who receive all medical and dental check ups when due. | The Texas Health Quality Alliance, TDH's external quality review organization, became operational in December 1997. The first MCO(s) evaluation (for FY 1997 contract year) is due to TDH during September 1998. |
| **#205** Use innovative means to provide EPSDT services to teenagers. | Attached are activity reports from each of the TDH regions and a June progress report on the adolescent newsletter series now under development.<br><br>Also see responses to Paragraphs #73 (page 10) and # 139 (page17) about the new policy for a combined Family Planning exam /THSteps check-up.<br><br>Exhibit U |
| **#207** Efforts to inform teens and their parents about EPSDT will address the complex privacy and consent issues involved. | Pending distribution are 3 letters (to providers, parents, and youth) addressing teen privacy and consent issues. These were furnished to the Plaintiffs on March 6, 1998. The letters to parents and providers are scheduled for mailing in September 1998. The letter to teens is scheduled for mailing in October 1998. The target population are THSteps clients ages 11-17 years. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#212**<br>TDH and DPRS will present a MOU for Plaintiffs' approval and to the Court by 10/1/95 which will: | Completed |
| Provide training about EPSDT for parents. | In the Memorandum of Understanding (MOU) between the DPRS and the Department (TDH), DPRS agrees to provide appropriate training to parents(s) or subsequent conservators before children leave DPRS conservatorship. (This includes the explanation of THSteps in the parenting classes for the families). DPRS is ordering THSteps materials from the TDH warehouse for use in its training sessions. |
| Report the number and percent of EPSDT recipients under the supervision of TDPRS who receive all of their medical and dental check ups when due. Assure that all clients under supervision of DPRS receive all medical/dental checkups when due. | On April 7, 1998,  Defendants sent Plaintiffs a letter from DPRS stating  it was necessary to rely on manual case readings to obtain this information due to unforseen problems with documentation methods in the newly-implemented DPRS computer system. DPRS requested that TDH discuss other methods for obtaining accurate data by interfacing DPRS and TDH databases.  As of July 1998, DPRS is piloting a new data exchange process with TDH in order to document class members receipt of check-ups. The details  of the plan are being furnished Plaintiffs under separate cover. |
| Establish procedures to refer clients to appropriate  case management managers when needed upon  clients' release from DPRS supervision. | DPRS sends client referrals (via form letter from local DPRS offices to Regional THSteps offices) to the THSteps outreach and informing staffs. These staffs  provide information to the families about the importance of preventive health care and give THSteps families help with finding providers. They give lists of local health resources to families of children who are no longer THSteps recipients. They refer qualifying THSteps recipients for medical case management services. |

29

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#223**<br>Conduct annual assessments of the effectiveness of the transportation program. | On August 15, 1997,  Plaintiffs confirmed that the RFP proposal selected by the Department  (Texas A&M) to evaluate the Medical Transportation Program was professional, valid and the best choice.<br><br>On November 14, 1997,  Plaintiffs were sent a copy of the survey instrument to be used to ask providers their perceptions of the Medical Transportation Program.  On December 5, 1997, Plaintiffs sent comments on the survey and concurred that the survey instrument was professional and valid. The final draft of the provider instrument  (incorporating all but two of Plaintiffs' comments) was sent to Plaintiffs on January 6, 1998, along with the User/Non-User Survey instrument. On April 6, 1998, Defendants responded to Plaintiffs' February 26, 1998 comments on the User/Non-User Survey and sent Plaintiffs a revised draft survey for review.<br><br>The provider survey has been implemented.  Data collection for the provider survey was completed on June 30, 1998, with a final count of 909 completed surveys. A final report and diskette will be submitted to TDH by the performing agency no later than August 31, 1998.  Analysis will begin once all information is collected.<br><br>The User/Non-User survey interviews were started the first week of July 1998. |
| **#228**<br>Take corrective action wherever the assessment indicates that transportation services are inadequate. | Pending completion of the Medical Transportation Program evaluation.  See response to  Paragraph #223 (page 30). |
| **#243**<br>The toll free numbers to request transportation and scheduling assistance will either be combined or linked. | THSteps locations have the capability to transfer callers to the Medical Transportation staff.<br>Exception: Region 11 (Harlingen/Edinburg) will be able to switch callers effective September 1, 1998. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#244**<br> Upon request TDH staff will help clients find a provider by giving the name, location and telephone number of least 1 provider of the appropriate speciality in a convenient location (or more than one if requested and available).<br><br>Notify managed care clients of their freedom to choose a PCP of their choice at enrollment. | EPSDT/THSteps outreach and client 1-800 staff have been instructed and trained to provide these services to clients. Each region maintains a listing of providers for this purpose.<br><br>As of April 1998, telephone customer service training is being provided to regional 1-800 telephone staff. THSteps central office staff  received the following response to the training from the Region 04 THSteps Regional Manager: " I want to thank you for the excellent, effective training on customer service for our 1-800 staff.  I think each participant came away from the training feeling it was totally worthwhile.  I can't think of another training that has received such uniform high praise."  Similar comments on the training  have been received from other staff. Plaintiffs were sent copies of the training evaluations from staff in Regions 1, 2/3, 4/5, and 8 on June 14, 1998.  Region 9/10 (El Paso), and Region 6/5South (Houston & Beaumont) staff evaluations are attached.<br><br>Exhibit V |



**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#247**<br>Toll free numbers for EPSDT recipients will be staff sufficiently by well trained personnel. No calls may be answered by a tape recording during working hours except in unusual circumstances. | A monitoring plan to assure compliance with Paragraph #247 was implemented in January 1997 and shared with the Plaintiffs.  The results of client 1-800 number(s) Quality Assurance Surveys and Automatic Call Distribution data for the months of June through December 1997, were sent to Plaintiffs during this quarter.  There continues to an improvement in services.  Defendants have conducted an analysis of the reports. The analysis resulted in the "Texas Health Steps and Medical Transportation Program, Client Support Toll-Free Lines, Performance Analysis and Corrective Action Plan" (furnished to Plaintiffs with the April 1998 Quarterly Monitoring Report).<br><br>In April 1998, regional staff were requested to conduct an annual traffic study to learn the number of attempted calls that receive a busy signal.<br><br>On May 20, 1998, Plaintiffs were sent a document outlining improvements in regional MTP 1-800 number(s) staffing levels and telephone equipment. Plaintiffs were advised that quarterly Automatic Call Distribution (ACD) reports would be used as the basis for trend analysis and corrective action plans. Attached is the first ACD quarterly report for the months of March, April, and May 1998.<br><br>Exhibit W |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **# 270**<br>Defendants will finalize medical case management regulations and implement the program. | The medical case management rules were published in the TEXAS REGISTER as adopted rules on December 26, 1997.<br><br>A conference call  between the parties was held February 2, 1998, to discuss the draft of the program manual and other issues.<br><br>On March 20, 1998, Plaintiffs were sent information about the developing case management program.<br><br>On April 6 and April 17, 1998, additional information was sent to Plaintiffs.<br><br>A "Summary of Implementation Status on THSteps Medical Case Management" as of April 1998 was sent Plaintiffs with the April 1998 Quarterly Monitoring Report.<br><br>Defendants are meeting the demand for medical case management services in each county or cluster of counties in the State. THSteps staff are involved in a variety of activities designed to expand provider coverage in the program. A  total of 29 private and public providers have been program approved and trained to provide services in seven of the eight TDH regions.  In the remaining region, the TDH Public Health Region is expected to become an approved program provider by August  31, 1998. 22  potential providers have submitted applications and TDH staff are providing technical assistance to them on completion of their applications.  Another 96 providers have indicated they are working on completing a program application. THSteps case management staff continue aggressive provider recruitment efforts. An update on provider enrollment, recruitment, and educational activities is  being sent to Plaintiffs under separate cover. |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#277**<br>Beginning in 1996, measure the percent of EPSDT clients who receive medical check ups.<br><br>Beginning in 1997 measure the percent of EPSDT clients who receive medical check ups and 2 dental check ups/year in each county or county cluster. | This information appeared on both a 1996 statewideness report  (FY 1995 data) and on the HCFA 416 federal report shared with the Plaintiffs.<br><br>This information will appear in the 1997 statewideness report.  See Response to  Paragraph # 280 (page 34). |
| **#280**<br>Complete a statewideness analysis every year by March 30. Identify the counties or county clusters that lag behind the state average for medical and /or dental check ups. | The 1996 (SFY 1995 data) analysis was completed and previously furnished to Plaintiffs.  In accordance with Consent Decree paragraph #279,  Defendants wanted to improve the 1997 (SFY 1996 data)  statewide analysis report and submitted the proposed change in methodology to  Plaintiffs  for approval.  Plaintiffs rejected the proposal July 11, 1997. To avoid further delay Defendants completed the medical portion of the 1997 report and submitted the information to Plaintiffs on November 24, 1997. Plaintiffs rejected the report on January 14, 1998, and Defendants responded with further clarification on the merits of the report on March 23, 1998.<br><br>The medical statewideness report for 1998 and the dental portion of the report for 1997 and 1998  will be completed by mid-summer of 1998. |
| **#281**<br>Each year Defendants will develop a corrective action plan for those counties that lag behind so that  participation in those counties improves. | A corrective action plan was completed in SFY 1995.<br><br>Corrective action plans will be completed by October 1998 (based on the data in both the 1997 and 1998 statewideness reports). |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#283**<br>Report EPSDT participation statistics to the federal government every year on the HCFA Form 416. | The FFY 1996 HCFA  416 report was provided to the Plaintiffs.<br><br>Plaintiffs were sent a draft HCFA 416  FFY 1997 report with the April 1998 Quarterly Monitoring Report.  This report had not been officially transmitted to the HCFA by the State Medicaid Director. On June 29, 1998, Plaintiffs were sent a copy of the State Medicaid Director's letter to HCFA transmitting the HCFA 416 Annual EPSDT Participation Report for FFY 1997.  The report lacked complete statistical information about the medical check-ups performed in managed care capitated arrangements. The Department plans to submit an amended 1997 HCFA 416 report when this information becomes available.<br><br>Exhibit X |
| **#284**<br>Also report to Plaintiffs the number and percent of clients who receive all of their scheduled medical and dental check ups by December 31 of each year. | Defendants' proposal for meeting paragraph #284 was rejected by Plaintiffs on January 28, 1997.<br><br>Defendants' second proposal for meeting Paragraph #284 was rejected by  Plaintiffs on July 11, 1997.<br><br>A letter of clarification on the proposal was sent to Plaintiffs on November 25, 1997 in an effort to resolve the issue and produce a data report  that  is feasible and reasonable with a THSteps population of  well over a million recipients.<br><br>On January 9, 1998,  Defendants provided  Plaintiffs with further clarification by responding to specific concerns and suggestions on the methodology. |
| **# 294**<br>The parties will further agree on a target goal for each health outcome indicator. | Pending. See response to Paragraph #295  (pages 36-37). |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#295** Defendants will report the best available information on each health indicator annually, beginning 9/1/96 and continuing through 1999.<br><br><br>Proposed study methodology will be presented for Plaintiffs approval by April 1, 1996. | The parties have agreed on five outcome measures for which there are data that are routinely collected: pregnant teens prenatal care in the first trimester, low birth weight infants, (including percent born in neonatal tertiary care centers), age when hearing loss is diagnosed, blood lead levels, and immunizations.  Data on these measures for 1994-1997 (years vary according to the measure) have been provided to Plaintiffs.<br><br>A third immunization survey of 3-24 month old children in Texas has been completed and validation of parents' immunization records for their children are almost complete.  Immunization rates for 1998 for THSteps children 3-24 months of age should be available in the next few months.<br><br>At the April 20, 1998 meeting between the parties, Defendants apprised Plaintiffs of the statewide databases with various health outcome measures that were available at TDH or other state agencies.  Defendants noted that previously proposed chart reviews would not provide Plaintiffs' desired results to measure relatively rare disabilities within the THSteps population.  Plaintiffs were given copies of summaries for proposed data sources for mental disabilities, vision, developmental milestones, asthma,  and growth/nutrition. Laboratory data on the prevalence of anemia by age and race/ethnicity are being evaluated.  Defendants continue to reassess the completeness and representativeness of the data collected within the Women, Infants and Children (WIC) program and by the TDH laboratory.  Data collection and quality assessment are underway for asthma hospitalizations and the percent of  THSteps children (ages 12-35 months and 48-59 months) with elevated blood lead levels who have a subsequent elevated blood lead level 1 year later.<br><br>Defendants sent  an interim reply on May 19, 1998, to  Plaintiffs' May 4, 1998 letter about the proposed data sources discussed at the April 20, 1998 negotiation meeting.  Plaintiffs agreed to the proposed data sources for asthma and growth/nutrition.  Agreement has not been reached on data sources for mental disabilities, vision or developmental milestones.   Data collection and analysis are underway for growth/nutrition and asthma hospitalizations. The lead registry which tracks blood levels in individual children is being improved and data will be available for analysis in the Fall. On July 13, 1998, Defendants  responded to Plaintiffs' May 4, 1998 |

**1998 LAWSUIT ACTION ITEMS**
**Updated JULY 31, 1998**

| Action | Status |
|---|---|
| **#295 continued** | remaining concerns on the lack of agreement on three of the outcome measures.  Defendants suggested a meeting between the parties and Plaintiffs' epidemiologist consultants.<br><br>Exhibit Y |
| **#296**<br>Defendants will develop corrective action plans to address all matters within Defendants' control to improve results for each health outcome indicator.<br>The corrective action plan will be presented to the Plaintiffs for review and comment by January 30 each year. | At the April 20, 1998, negotiation meeting, Defendants discussed with Plaintiffs the importance of having systems available in order to approach correct actions. It was mutually agreed that as a first step Defendants would send the following information to Plaintiffs:<br>•      Agreed health outcomes<br>•      Identification of trends<br>•      Recommended approach for corrective action (within Defendants' control)<br><br>Defendants responded to Plaintiffs' June 24, 1998 letter about the above issue  on July 20, 1998. On reported outcomes, trends to date are showing slight improvements or stable baselines. For the measures with agreed upon outcomes Defendants believe the data are too preliminary for corrective action plans, but anticipate discussing the need for such plans with Plaintiffs in the future, based on the data and trends over time.<br><br>Exhibit Z |