IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR 2 8 2000

DAVID J. MALAND, CLERK
BY
DEPUTY

| | | |
|---|---|---|
| LINDA FREW, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:93CV65 |
| | § | |
| DON GILBERT, ET AL. | § | |
| Defendants. | § | |

## DEFENDANTS' MONITORING REPORT, JANUARY, 2000

TO THE HONORABLE JUDGE JUSTICE:

Pursuant to Paragraph 306 of the Consent Decree, Defendants file their Monitoring Report,

for January 31, 2000 with attached Exhibit A which is incorporated herein by reference.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

LINDA S. EADS
Deputy Attorney General for Litigation

TONI HUNTER
Chief, General Litigation Division

EDWIN N. HORNE
Texas Bar No. 10008000
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512)463-2120/(512)320-0667 (Telefax)
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on this the 26th day

of April, 2000, on the following counsel of record:

Susan F. Zinn                                   **(VIA FIRST CLASS MAIL)**
Attorney at Law
P.O. Box 15126
San Antonio, Texas 78212

Jane Swanson                                    **(VIA FIRST CLASS MAIL)**
Law Offices of A. Rodman Johnson
2202 Timberloch Place, Suite 112
The Woodlands, Texas 77380


EDWIN N. HORNE
Assistant Attorney General

3931

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 9<br>Develop the capacity to conduct epidemiologic studies of the EPSDT population to determine if the program is improving recipients' health by July 1996. | In October 1996, Defendants produced a Texas Department of Health (TDH) organizational chart documenting that TDH has the institutional capacity to conduct epidemiological studies of the EPSDT/THSteps population. |
| ¶ 15<br>Delete or change the program's name by 9/30/95. | A new program name, "Texas Health Steps" (THSteps) was introduced on May 6, 1996. |
| ¶ 16<br>Medical/dental service provided in accordance with periodicity schedules will be called "check up/examen" | The word "check up" has now replaced the word "screen" in client and provider materials. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 17**<br>■ Mail letters to clients due for a medical and/or dental check-up. | In 1995, Defendants begin mailing newly-designed client "Periodic Due" letters for medical and dental check- ups. The mailing of these client letters is ongoing. |
| ■ Mail letters about the 1 year dental check-up 2 months before due by 1/1/96. | In April 1996, Defendants began mailing letters to clients about the one-year-old dental check-up two months prior to the one-year-old due date. The mailing of these client letters is ongoing. |
| ■ Letters to be effective and appropriate (see Consent Decree p.10). | Defendants' client letters include purpose of letter, type of check- up due, information on preventive care, and age appropriate information based on the age of the child named in the letter. Defendants completed a client focused assessment(s) of the client informing letters. Based on the findings, client letters were rewritten/redesigned. The anticipated distribution date for these new letters is early 2000. |
| ■ Provide brochures/flyers to clients, applicants and agencies where the EPSDT population may be found. | The TDH warehouse continues to ship thousands of brochures and wallet cards to various entities throughout the state (e.g. doctors, dentists, local health departments, schools, clinics, Texas Department of Protective and Regulatory Services [TDPRS], TDH, Texas Department of Human Services [TDHS], etc.). |
| ■ Create age appropriate information for use by recipients of specific ages. | Defendants created (and inserted) age appropriate information in client letters and the client oral informing text used by TDHS staff. |
| ■ Field test the new Med ID card by 5/31/95 and if acceptable put in use within 6 months. | A new Med ID form was field tested with 413 clients in 1995, and implemented in early 1996. |

2

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 18**<br>This paragraph does not preclude the development of a new Medicaid card format in the future as contemplated by ¶ 304. | Defendants completed qualitative testing of the new "fee for service" and "managed care" MED ID forms in 1997 (¶ 17, page 2). The programing and printing of the current paper Med ID form is the responsibility of the TDHS; the timing of any additional MED ID changes is subject to negotiations with TDHS.<br><br>In response to SB 910, (75th Legislature), an interagency task force chaired by the State Comptroller's office is evaluating the feasibility of adding the Medicaid program to the state's electronic benefits transfer system. |
| **¶ 20**<br>Eligibility workers will discuss EPSDT with those who apply for benefits on behalf of an EPSDT eligible person. For discussion elements see Consent Decree p. 12-13. | In 1995, an EPSDT client oral informing Desk Reference used by TDHS eligibility workers was updated to include all of the elements required in the Consent Decree. TDHS eligibility workers were instructed to use the information in the Desk Reference to inform all new and/or recertified applicants/clients about EPSDT services. Workers were also supplied with an informing text to use as a training tool for the informing process (¶ 22, page 4).<br><br>TDHS workers continue to inform all new and/or recertified applicants/clients about EPSDT (THSteps) services. |

3

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 21<br>Eligibility workers will provide an EPSDT brochure and a wallet card schedule of medical check ups to each applicant household. | In 1995, TDHS eligibility workers began distributing new EPSDT bilingual client brochures and wallet cards to all new/ recertified clients for AFDC and Medicaid programs. In 1996, TDHS workers were furnished with a new and improved client brochure; this brochure used the new program name (THSteps).<br><br>Distribution of the THSteps/EPSDT brochures and wallet cards by TDHS eligibility workers is a daily, ongoing activity. |
| ¶ 23<br>Provide assistance to help applicants request further oral outreach by an outreach unit. | In August 1995, Defendants provided TDHS workers with an "Extra Effort Referral" form to facilitate referral of clients (in need of oral outreach services) directly to regional TDH EPSDT/THSteps outreach staff. THSteps staff also accept other methods of client referrals, e.g.; telephone and the TDHS Form 1088 (used to validate medical check-ups and immunizations for THSteps recipients to avoid TANF {formally AFDC} sanctions). Additionally, Defendants' client letters and toll free number(s) staff offer assistance to help clients request further oral outreach. All of the aforementioned processes are ongoing. |
| ¶ 22<br>Eligibility workers will receive an outline of the subjects to be covered in each interview to guide the discussion of EPSDT and will receive training about how to discuss EPSDT. | ¶ 20 (page 3). |

4

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 24<br>A MOU between TDH and TDHS concerning the outreach process will be presented for Plaintiff's approval and to the Court by 10/1/95. (For items to be addressed see p. 14). | On September 1, 1995, a Memorandum of Understanding (MOU) was signed between TDH and TDHS concerning the client outreach and informing process terms required in the Consent Decree. Plaintiffs and the Court were presented with the MOU. |
| ¶ 25 Oral outreach units provide outreach services when required. | ¶ 23 (Page 5). |
| ¶ 29<br>Outreach units will begin to provide outreach services by 9/1/95. | Client outreach services were implemented in each TDH region in 1995. |
| ¶ 30<br>Outreach units will work cooperatively with others who serve EPSDT recipients to serve recipients effectively and efficiently. | EPSDT/THSteps regional managers/staffs have established a communication network with other regional entities who serve EPSDT/THSteps recipients. These include ISDs, Head Start grantees, local TDHS offices, WIC agencies,  community agencies, etc. |
| ¶ 31<br>Provide outreach services in all areas of the state. | Each of the eight TDH regions has an EPSDT/THSteps Regional Manager who maintains staff (TDH and/or contract) to provide outreach services to clients throughout their region. |
| ¶ 32<br>Outreach units will have sufficient staff and other reasonably necessary resources to handle their workload promptly and effectively. | Regional outreach units continue to maintain or exceed the 1:3500 THSteps worker/client ratio negotiated with Plaintiffs. |

## 2000 LAWSUIT ACTION ITEMS
### Updated January 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 34<br>Beginning 9/1/95 outreach units will provide oral outreach to all recipients who request information about EPSDT beyond that provided by TDHS eligibility workers. | In October 1995, EPSDT/THSteps staff began receiving and responding to formal client referrals for oral outreach from TDHS workers (¶ 23 Page 4). |
| ¶ 35<br>Beginning 9/1/95 outreach units will provide oral outreach to all clients who miss a medical check up that is due on or after 7/1/95. | In September 1995, EPSDT/THSteps regional outreach staff began providing oral outreach to clients "Overdue" for their periodic medical check-up. |
| ¶ 37 Beginning June 1997, outreach units will provide oral outreach to all recipients who miss a dental check up that is due on or after 4/1/97. | ¶ 39, (Page 6) |
| ¶ 38 Outreach units will use highly visual, age appropriate written materials about dental issues. | ¶ 148, (Page 18), ¶ 152 (Page 19), and ¶ 153 (Page 19). |
| ¶ 39<br>Beginning no later than 6/97 oral outreach for missed dental check ups will continue in tandem with oral outreach upon request and for missed medical check ups. | In December 1996, EPSDT/THSteps regional outreach staff began providing oral outreach to clients "Overdue" for their dental check- ups. |
| ¶ 40<br>Provide a current Outreach List to each outreach unit monthly. | Client outreach lists are downloaded electronically (monthly) to each TDH region/outreach unit. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 41<br>Beginning 8/95 for medical and 5/97 for dental maintain a list of clients for whom no check up bill has been received no more than 60 days after the check up was due. | In September 1995, Defendants began maintaining lists of clients "Overdue" for medical checkups. Beginning 1996, lists were maintained for clients "Overdue" for dental check ups. |
| ¶ 43<br>Identify clients requesting information beyond that provided by TDHS eligibility workers. | ¶ 23(Page 4). |
| ¶ 44<br>Provide a list monthly to outreach units of clients requiring outreach in each outreach geographic area because of missed check ups. | Lists of clients "Overdue" for medical and/or dental check-ups are downloaded electronically (monthly) to each TDH region/outreach units. |
| ¶ 45<br>Outreach files include TDHS referral lists and TDH lists of recipients who miss check ups. | ¶ 23 (Page 4), and ¶ 44 (Page 6). |
| ¶ 46<br>A written offer encouraging clients to request oral outreach will be mailed to each client identified on the lists within 10 working days of receipt of the TDHS referrals. | Beginning September 1995, a written offer of oral outreach was included in Defendants' letters mailed to all new/ recertified clients. The letters advise clients about the benefits of the EPSDT/THSteps program and the importance of preventive health services. |
| ¶ 47<br>Outreach units will provide outreach services as described in the Consent Decree. | ¶¶ 24-73 (Pages 4-11). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
| --- | --- |
| **¶ 48**<br>Written offers of outreach will correspond to the reason that outreach is required. | Defendants mail seven types of outreach letters to THSteps clients.  Each letter specifies the reason for the outreach. |
| **¶ 49**<br>Outreach units will keep current so they can do prompt outreach and properly manage through recipient caseload. | ¶ 60 (Page 8). |
| **¶ 52-56**<br>Oral outreach will inform clients about EPSDT (See Consent Decree p.20 for details). | Oral outreach provided by regional EPSDT/THSteps outreach staff includes the information required in Consent Decree ¶¶ 52-56. |
| **¶ 59**<br>Outreach units will not make child abuse or neglect reports because of failure to respond to an offer of outreach or failure to receive a medical or dental check-up. | As stated in Defendants' rules published in TAC§ 33.61, a recipients's acceptance of EPSDT services must be voluntary. |
| **¶ 60**<br>Each month the outreach unit will report certain numerical information to the EPSDT program (see Consent Decree p.20 for details). | A regional automated system, CARES, was implemented in August 1995, to collect and report the client information specified in ¶¶ 60-61 (Page 8). |
| **¶ 61**<br>Develop and implement a method that reports the number and percent of recipients receiving medical/dental check-ups after oral outreach. | ¶ 60 (Page 8). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 62<br>Standardized training of outreach staff. | In 1994, an EPSDT Training and Orientation Guide was developed to facilitate standardized training of regional EPSDT/THSteps outreach staff. Central office training staff also delivered certain aspects of regional staff training which was standardized statewide.<br><br>In August 1997, a revision to the Training Orientation Guide was completed with distribution to regional EPSDT/THSteps staff.<br><br>A standardized curriculum was used in the fall of 1999 to train MAXIMUS contract staff in the TDH regions. |
| ¶ 64<br>Conduct other appropriate, aggressive outreach efforts to encourage recipients to use EPSDT services. | THSteps staff in each TDH region develop, conduct, and document their own unique outreach efforts on a monthly basis. |
| ¶ 65<br>Work with other agencies to inform clients about EPSDT (see Consent Decree p.22 for list of agencies). | In 1995, the Commissioners of the specified agencies were given a comprehensive EPSDT manual to share with their staff.<br><br>In 1998, a revised and updated manual was distributed to representatives of the above referenced agencies.<br><br>Both central office and regional THSteps staff continue ongoing coordination activities with other agencies. |

9

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 68<br>Provide and update accurate information about EPSDT for inclusion in handbooks of other agencies that serve EPSDT clients. | In 1995, the agencies designated in Consent Decree ¶¶ 65 and 70 were sent a comprehensive EPSDT handbook.<br><br>A totally revised program manual was distributed to representatives of the same agencies in FY 1998.<br><br>In 1999, Defendants expanded the number of training modules in the manual and sent revised manual pages to holders of the original manual.<br><br>Defendants routinely provide THSteps program updates (as needed) to the TDPRS and the TDHS for incorporation in their handbook material. |
| ¶ 69<br>MOUs about handbook information between TDH, TDHS, and DPRS to Court by 10/1/95. | MOUs were negotiated between TDH and TDPRS and TDHS in 1995. |
| ¶ 70<br>Provide handbook inserts to agencies and programs on an ongoing basis (see Decree p.23 for list of agencies). | ¶ 68 (Page 9). |
| ¶ 71<br>By 9/1/95 Commissioner of Health to write to Commissioners of each agency to ask that the other agency include the information in the appropriate handbook. | ¶ 68 (Page 9). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 72<br>Encourage other agencies to use EPSDT brochures and provide adequate supplies of brochures to requesting agencies. | Regional EPSDT/THSteps staff coordinate with other agencies at the local level and provide and/or distribute THSteps brochures.<br><br>Providers and other agencies are supplied with the *Texas Health Steps Resource Catalog* to facilitate direct assess to THSteps brochures/materials from the TDH warehouse.<br><br>Regular shipments of brochures/ materials are sent to the TDH regions and Managed Care Organizations (MCOs) every two to three months.<br><br>Arrangements are in progress for creating an electronic file of THSteps materials on disk for MCOs, thereby increasing availability of brochures/ materials for this new provider group.<br><br>¶65, (Page 9). |
| ¶ 73<br>Arrange for and implement a marketing plan that encourages providers and recipients to participate in the EPSDT program. | In 1995, TDH contracted with the marketing firm "Tate Austin". A multi-media campaign focusing on the importance of preventive check-ups was launched in May 1996. The Tate Austin contract has expired.<br><br>Defendants' new THSteps marketing plan is in progress. The first tier (eight) of the FY 2000 marketing materials have been developed. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 90**<br>Simplified form for EPSDT medical check ups to be used no later than 12/31/95. | The HCFA 1500 universal provider billing form was implemented in the EPSDT/THSteps medical check- up program for dates of service on and after January 1, 1996. |
| **¶ 91**<br>Immunization tracking system to be in place by 1/96 permitting providers to promptly request up to date information about patients' immunization status. | The Immunization Registry and Tracking System, ImmTrac, is in place and operating. |
| **¶ 93**<br>Maintain updated lists of providers who serve EPSDT clients. | In 1995, Defendants developed/implemented a provider "Look-Up" system (software allowing regions to input their provider base and identify provider limitations). Staff in each region assume responsibility for keeping THSteps/Medicaid provider information updated with regard to: office hours, if the provider is taking new patients, practice limitations etc.<br><br>Hard copy reports of all enrolled medical and dental check-up providers are distributed to each region on a quarterly basis with weekly updates. |
| Provide NHIC staff information about provider practice limitations and encourage NHIC to use the information. | THSteps regional provider liaison staff work cooperatively with the NHIC provider relations staff assigned to their geographic area. This includes information sharing, joint planning for public and private provider recruitment, troubleshooting for provider problems etc. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 94**<br>Senior management staff in each of the 8 TDH regions will be responsible for provider relations. Work with providers who serve EPSDT recipients to reduce or eliminate problems that discourage providers from participating in the program. | ¶ 93 (Page 12), ¶ 103 (Page 13), and ¶ 106 (Page 14). |
| **¶ 96**<br>Outreach units will respond to providers' requests for assistance to encourage recipients to receive services when recipients a) miss appointments or b) are overdue for check ups, and will explain how to contact outreach units. | With the TDH Regional implementation of the CARES system in 1995 (See  ¶ 60, Page 8), outreach units began responding/documenting their responses to providers' requests for assistance.  Each region used various means to contact the provider base in the area to advise them of this support service and how to contact THSteps outreach units.<br><br>In June 1998, Defendants implemented a new standardized statewide Provider Referral Protocol (for all provider types). |
| **¶ 99**<br>By 9/1/97 implement a method to index the reimbursement rate for medical check ups in non-managed care areas. | In 1997, Defendants completed an indexing method which  resulted in yearly "fee for service" medical check-up provider reimbursement increases beginning in SFY 1998. |
| **¶ 102**<br> By 5/30/95 list all relevant professional schools in Texas that are not enrolled as EPSDT providers and by 10/31/95 complete efforts to to recruit them to become providers. | Completed. The list of non-enrolled schools (medical, dental, and nursing) was re-contacted in June 1998, to again determine their level of interest in becoming a provider and/or their objection (s) or barriers to participation in the THSteps program. A follow-up status report was completed in July 1998. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 103<br>National Heritage Insurance Company (NHIC) will increase its provider relations staff to 28 to increase recruitment efforts. | NHIC maintains a provider relations staff in excess of 28;  there are also 220 managed care provider representatives  and 16 THSteps regional provider relations staff. |
| ¶ 106<br>Regional provider relations staff will:<br>■   Assist providers to receive training relevant to provision  of services to clients.<br>■   Assist providers and their administrative staff to receive training about the administration of the program. | Each TDH region has designated THSteps provider liaison staff who supplement the provider relations activities of National Heritage Insurance Company (NHIC), the Department's health insuring agent  (¶103, Page 13). This includes assisting  providers and their staff on an ongoing basis to receive training, provider recruitment, and other types of provider relations activities. |
| ¶ 107<br>Provide information and facilitate ongoing training about Medicaid and EPSDT at all relevant professional schools in Texas. | Defendants continue to work toward the publication of an RFP to contract for the required services; plaintiffs were sent a final draft of the "Scope of Work" for review and comment on December 9, 1999. Defendants responded to Plaintiffs' questions/comments on January 7, 2000.  The "Scope of Work" continues to be enhanced based on feedback from the stakeholders and Plaintiffs' attorney."<br><br>Exhibit A |
| ¶ 108<br>Make staff available to participate in ongoing training in conjunction with appropriate professional training, e.g. how to conduct a medical check up for a teenager or a dental check up for an infant. | TDH professional staff and TDH contracted professional staff (eg: M.D. and R.N.) participate in ongoing professional and office staff training regarding the THSteps program. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 109<br>Staff will be made available to professional organizations for training about EPSDT to include EPSDT administrative aspects and clinical issues. | Since September of 1998, TDH and NHIC professional staff have been meeting on quarterly basis with *seven professional organizations.  The purpose of the meetings is to provide  educational information on the THSteps Program and  exchange information on clinical policy.<br><br>* Texas Medical Association, Texas Pediatric Association, Texas Osteopathic Medical Association, Texas Dental Association, Texas Hospital Association, Texas Association of Obstetrics and Gynecology, and Texas Association of Family Practitioners. |
| ¶ 111<br>Facilitate annual NHIC training seminars for medical and dental check up providers. Trainers will include physicians and dentists. | ¶ 107 (page 14). |
| ¶ 112<br>Facilitate training for professionals about mental health assessments for indigent children and youth. The training will describe recent expansions in Medicaid coverage of outpatient mental health services. | ¶ 107 (page 14). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 115**<br>By 1/15/96, convene a panel of experts in child and adolescent mental health to evaluate the mental health screening tool for validity and appropriateness for use in Texas EPSDT. Complete by 4/15/96 with changes implemented by 9/1/96. | A panel of experts in mental health, family advocacy, and pediatricians actively involved in the provisions of care to children and adolescents, convened January 11, 1996, to evaluate the EPSDT mental health screening tool (used in the medical check-up).<br><br>A revised age appropriate mental health screening tool and provider guidelines were implemented via the September/October 1996 *Texas Medicaid Bulletin*. |
| **¶ 116**<br>Facilitate training for professionals in the provision of EPSDT services to teenagers. | Defendants continue to sponsor a THSteps training program for professionals (nurses, physician assistants, social workers, nutritionists) on "Basic Concepts in Identifying the Health Needs of Adolescents". This training is in addition to the regular THSteps medical check-up training courses (¶ 131, Page 17). |
| **¶ 117**<br>Facilitate training on new clinical issues regarding provision of care to EPSDT clients. | ¶ 107 (page 14). |
| **¶ 120**<br>Develop training modules designed to be included in other training programs about the realities of EPSDT clients' lives to attempt to improve providers' attitudes toward recipients and provide to professional schools. | ¶ 107 (page 14). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 122**<br>Incorporate specified information into the nurse training modules on conducting EPSDT check ups (See p.35 of the Decree). | The information specified in the Decree is included in the nurse training modules. |
| **¶ 123**<br>Make the above training available for non-TDH nurses. | Training is available to the staff of private providers. |
| **¶ 129**<br>By 1/31/96 implement an initiative to inform pharmacists about EPSDT and EPSDT's coverage of items found in pharmacies. | Articles informing pharmacists about EPSDT coverage were published in the September 1995 issue of the *Texas Pharmacy Journal* and in the December 1994/January 1995 issue of the NHIC *Texas Medicaid Bulletin*. |

17

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 130**<br>By 1/31/96 conduct a professional and valid evaluation of pharmacists' knowledge of EPSDT coverage of items commonly found in pharmacies. If pharmacists' understanding is unacceptable, conduct an initiative to orally inform pharmacists about EPSDT's coverage. | In 1996, a survey was conducted to measure provider pharmacists' knowledge of EPSDT Comprehensive Program (CCP) services. The parties agreed that the pharmacists' THSteps/CCP program knowledge was unacceptable.<br><br>Defendants completed a four-part training plan which included 1) distributing informational handouts to all pharmacies enrolled in the Vendor Drug Program, 2) providing THSteps-CCP pharmacy information on a TDH Web page, and 3) Defendants' participation in the annual Texas Pharmacy Association meetings. Exception: Development of a program video for pharmacists is included in a Request for Proposal (RFP) currently under development.<br><br>Defendants continue to conduct Vendor Drug Program provider informing/educational activities. |
| **¶ 131**<br>Arrange scholarships to enable needy providers to attend TDH sponsored EPSDT training programs. | Scholarships were arranged/funded for nurses training (how to perform a THSteps check-up) between July 1995, and February 1996. Additional scholarship awards will be available in early 2000.<br><br>Note: Provider training scholarships are not a federally allowable cost under Title XIX, Medicaid. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 136**<br>■ Resolve problems preventing clients from receiving services from public providers, i.e., Bexar County Hospital District.<br><br>■ Develop strong links between TDH's provider relations staff and family planning clinics to facilitate referrals.<br>■ Resolve issues for providers who receive cost based reimbursement for check ups. | In 1996, THSteps staff resolved the problem with Bexar County Hospital District (laboratory services).<br><br>Regional THSteps and NHIC provider relations staff continue to work with family planning providers and cost based reimbursement providers in the same manner as other potential or actively enrolled EPSDT/THSteps providers. |
| **¶ 137**<br>Regional provider staff will assess each public provider's need for training and will facilitate the receipt of training when appropriate. | ¶106, (Page 14). |
| **¶ 138**<br>Facilitate training for all relevant public provider staff. | ¶ 137 (Page 17). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 139<br>By 5/95 determine which Medicaid family planning agencies are not enrolled to provide EPSDT check ups. By 1/96 conduct an enrollment initiative. Coordinate the efforts to recruit family planning clinics to provide EPSDT medical check ups with TDH's family planning staff | An article was published in the June/July 1995 issue of the *Texas Medicaid Bulletin* encouraging agencies to enroll as EPSDT/THSteps medical check -up providers.<br><br>In November 1995, a letter was mailed to all Family Planning providers (over the Family Planning Director's [physician] signature) encouraging EPSDT provider enrollment.<br><br>The above enrollment initiatives were coordinated by central office EPSDT/THSteps staff with TDH's Family Planning staff. |
| ¶ 140<br>Make efforts to enroll non-participating public providers. | ¶ 96 (Page 13),  ¶103, (Page 13), and ¶106 (Page 14). |
| ¶ 141<br>Recruit ISDs to provide EPSDT medical and dental check ups and coordinate other needed services. | These activities are performed and documented by Regional THSteps staff on an ongoing basis. |
| ¶ 142<br>Cooperate with Head Start programs to ensure that Head Start EPSDT recipients have access to EPSDT services. | Regional THSteps staff document coordination with Head Start Program staff on an ongoing basis. |
| ¶ 148<br>Conduct outreach to families with EPSDT client infants to help to prevent BBTD. | In 1997, Defendants developed and implemented a comprehensive statewide plan (Dental Health Awareness Implementation Plan) for meeting the Decree requirements in ¶148. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 153 Age appropriate outreach will also address the prevention of BBTD. | Regional staff continue to perform targeted client dental outreach services on an ongoing basis. |
| ¶ 160 By 9/30/95 cover all necessary sealants regardless of clients age. | Coverage for all necessary sealants regardless of the patient's age was implemented effective for services provided on and after November 1, 1995 (applicable to Medicaid clients under age 21). |
| ¶ 161 By 4/30/95 identify all dentists who provide services to EPSDT clients but provide few or no sealants. | Completed. |
| By 5/31/95 write to dentists whose practices could include sealants (about sealants). Letters will be sent to dentists who regularly provide sealants and dentists who do not. | In the spring of 1995, a letter was mailed to all enrolled dentists over the TDH Dental Director's signature. |
| By May 31, 1996, review billing records to determine if the number of dentists who regularly provided sealants has increased. | Completed. Between FY 1994 and FY 1995, there was a 14.1% increase in the total number of dentists applying sealants and a 17.0 % increase in the number applied per provider. |
| Dentists who do not provide sealants will receive further targeted outreach information about sealants. | In November 1996, all THSteps dentists who had not billed for sealants received a letter from the TDH Dental Director encouraging sealant placement and reiterating that the research finds it acceptable to place sealants over enamel caries. The letter included an article on sealants from the *Journal of Public Health Dentistry*. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 165<br>No later than 10/31/95, maintain reports of the number and percent of dentists who see 0-29, 30-99 and 100+ EPSDT clients every 3 months. | Reports are available (with the specified data) for SFY 1996, SFY 1997, and the first, second, and third quarters of 1998. |
| ¶ 167<br>Finalize policies or rules for the dental audits by 9/30/95. | TDH's existing rules for dental audits remained in place in 1995. Revised rules were adopted effective December 8, 1998. |
| ¶ 169<br>Develop standards (dental) based on consultation with appropriate experts including the chairs of the Departments of Pediatric Dentistry in Texas. | The TDH's Director, Oral Health Services Division, his professional staff, and the Dental Director for the Department's health insuring agent all periodically consult with experts about dental standards eg:<br>1) Chairs of the Departments of Pediatric Dentistry at UT-Houston, UTHSC- San Antonio, and the Houston Academy of Pediatric Dentistry about such things as:<br>   • "Standards of practice" for pediatric dental care, especially pertaining to use of IV sedation, general anesthesia, and chart documentation of "medical necessity" via use of intraoral photographs or radiographs.<br>   • Categorization of children for the need for general or I.V. sedation.<br>2) Department of Community Dentistry at U.T.M.B about:<br>   • Problem-based learning approach curriculum scheduled for January and February 2000 for dental students.<br>3) Professional members of the Department's Oral Health Services Advisory Committee about:<br>   • A variety of topics. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 171<br>By 9/30/96 prepare a report of the number and percent of clients who receive 1 dental check up/year and 2 dental check ups/year.  Prepare similar reports every year. | On February 5, 1997, Plaintiffs rejected Defendants' report in response to ¶171. Defendants' alternative methodology proposals were rejected by Plaintiffs on July 11, 1997. |
| ¶ 172<br>By 12/1/96 agree on expected increases in the number and percent of clients who receive 1 and 2 dental check ups/year. | ¶ 171(Page 21). |
| ¶ 174<br>Arrange for a study to assess the dental health of the EPSDT population. | In 1997, Defendants awarded a  contract to UTHSC-San Antonio for a study to assess the dental health of the THSteps/EPSDT population.<br><br>Note: Defendants' first and earlier RFP  for contracting for this service was rejected by Plaintiffs. |
| ¶ 179<br>Identify the counties where client children of migrant farm workers live during part of the year and approximately when farm workers families return to those counties. | ¶180 (Page 22). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 180<br>Begin this program in the Lower Rio Grande Valley in 1995 and later expand to other areas of the state as needed. | In 1995, TDH Region 11 obtained a listing of children whose families were identified as migrant farm workers from the TDHS data base; targeted outreach was accomplished. Note: TDHS migrant farm worker information is not consistently available in other areas of the state.<br><br>In 1999, TDH signed an MOU with the Texas Education Agency (TEA) to institutionalize a process (with Education Service Centers and school districts) for migrant information sharing between TEA and TDH. |
| ¶ 181<br>Make efforts to help farm workers utilize EPSDT benefits promptly upon return to Texas. | THSteps regional staff continue to report (on a regular basis) about their efforts to help farm families utilize EPSDT/THSteps services. |
| ¶ 182<br>When farm workers apply for Medicaid benefits on behalf of EPSDT eligible children, determine if the applicant would like further information about EPSDT or help to schedule appointments. | Refer to ¶ 23 regarding the "Extra Effort Referral" form. TDH also mails a THSteps letter to all newly certified/recertified clients offering assistance with scheduling appointments and more information on the program. The letter includes a client toll free 1-800 assistance number. |
| ¶ 183<br>When outreach units receive information about the identity of migrant farmworker recipients who request outreach services, outreach units will give priority status to those recipients. | Regions have been advised of the importance of expediting services for migrant farm worker recipients. See the response to ¶ 180 (Page 22), and ¶181 (Page 22) about efforts to identify and outreach the migrant population. |

24

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 191**<br>Assure by various means that the number and percent of EPSDT patients in each MCO who receive all medical and dental check ups when due and information for outcomes research as needed is accurately collected. | Many valid and important data sources are being used by TDH staff to assess the Medicaid Managed Care Program. These sources include utilization management reports, focused studies, *satisfaction surveys, on-site reviews, and encounter data. TDH took steps to upgrade the Encounter Data System on December 1, 1998. Encounters have been submitted by the HMOs utilizing the upgraded system since April 1, 1999. Defendants are working closely with NHIC and HMO staff to evaluate the new system and to assess and continuously improve the quality and volume of encounters being submitted by the HMOs.<br><br>*Available on the Bureau of Managed Care Web page: www.tdh.state.tx.us/hcf/mcannrpt.htm |
| **¶ 192**<br>Assure by various means that MCOs provide medical and dental check ups to newly enrolled recipients no later than 90 days after enrollment except when recipients knowingly and voluntarily decline or refuse services.<br><br>MCOs will have the capacity to accelerate services to the children of migrant farm workers. | This provision is in the Medicaid Managed Care contracts.<br><br><br><br>An on-site review conducted by the Texas Health Quality Alliance(THQA) reflects that MCOs have made appropriate efforts to assure that the process is in place and providers are trained so that when a child of a migrant worker is identified, services to that child or those children can be accelerated. |

25

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 193**<br>Assure that MCOs cooperate with outreach units so that clients who miss medical and/or dental check ups receive prompt services. | THSteps staff continue collaboration efforts with their managed care partners eg: working with Birch and Davis (B&D), contract administrator for the PCCM model, on an outreach project.  In turn, B&D plans to coordinate regional client outreach activities with staff from MAXIMUS, the new contractor for THSteps outreach services in selected regions/areas of the State. |
| **¶ 194**<br>Assure that MCOs arrange training for all health care providers and their staff who serve EPSDT clients as authorized by SB601. | This provision is in the Medicaid Managed Care contracts.<br><br>Comprehensive "train the trainer" sessions on the THSteps program were conducted by THSteps staff for MCO staff in 1997 and 1999. This included the development/ distribution of new/revised program manuals/training modules to be used by MCOs to train their providers.<br><br>TDH staff continue  written provider training utilizing the *Texas Medicaid Bulletin(s)*. |
| **¶ 197**<br>Assure that MCOs have an adequate supply of appropriate providers who can serve EPSDT clients located conveniently. | Every MCO contract requires assurance of a Primary Care Physician (PCP) capacity (within each MCO network) of a least 45% of the eligible clients in the service area. MCOs are further required to assure TDH that they have an adequate number of specialists for the population within their network or for payment of out of network providers. TDH continues to require this information from all contracting MCOs.  This requirement is part of the prospective Readiness Review conducted on each MCO. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 198<br>Assure a system that allows clients to enroll promptly with a new MCO when clients move from one area to another in Texas. | To improve assurances of this requirement, TDH contracted in 1997 with "MAXIMUS", a company which serves as the exclusive entity for the client enrollment process. |
| ¶ 199<br>MCOs will be subject to independent evaluation of their patients health outcomes, satisfaction and process measures, including the number and percent of EPSDT clients who receive all medical and dental check ups when due. | During the first year of Medicaid Managed Care, TDH contracted with an outside organization (Texas Medical Foundation) to perform an independent and objective evaluation of Managed Care projects from 1993 through 1995. In subsequent years, TDH has contracted with THQA to perform this function (¶ 192, page 25). |

27

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 205**<br>Use innovative means to provide EPSDT services to teenagers. | • Each Region continues to report monthly on its activities related to providing services to teens.<br><br>• A THSteps Regional Adolescent Outreach Plan developed in 1999, includes performance goals.<br><br>• A series of six magazines was developed for adolescents/teens. The younger and older versions of the magazine (About Us) are being distributed and receiving an overwhelming response!<br><br>• An Adolescent Health Coordinator at TDH initiates and participates in a variety of activities and projects related to services for teens.<br><br>• TDH formed the Texas Adolescent Health Advisory Committee (which meets on a regular basis) to act as consultants and aid the Adolescent Health Coordinator in developing systems to increase access to preventive and primary health care services and integrate health promotion with adolescent health care. |
| **¶ 207**<br>Efforts to inform teens and their parents about EPSDT will address the complex privacy and consent issues involved. | In 1998, Defendants distributed three different letters ( to providers, parents, and teens) addressing teen privacy and consent issues. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 208**<br>Each family strikes the balance between parental knowledge/ consent and teen privacy differently. Defendants' role is only to bring the issue to clients' attention so they can resolve it together with teens health care providers. | ¶ 207 (Page 27). |
| **¶ 212**<br>TDH and TDPRS will present a MOU for Plaintiffs' approval and to the Court by 10/1/95 which will:<br><br>■   provide training about EPSDT for parents<br><br>■   report the number and percent of EPSDT recipients under the supervision of TDPRS who receive all of their medical and dental check ups when due.<br><br>■   assure that all clients under supervision of TDPRS receive all medical/dental checkups when due.<br><br>■   establish procedures to refer clients to appropriate case management managers when needed upon clients' release from TDPRS supervision | On September 1, 1995, a Memorandum of Understanding (MOU) was signed between TDH and TDPRS incorporating the Consent Decree Requirements. Plaintiffs and the Court were presented with the MOU. |

## 2000 LAWSUIT ACTION ITEMS
### Updated January 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 222**<br>TDHS eligibility workers will describe the transportation program, including the mileage reimbursement option during each initial eligibility interview. | This information is included in the client informing Desk Reference used by TDHS eligibility workers at the time of oral client informing about the EPSDT/THSteps program.  ¶ 20 (Page 3). |
| **¶ 223**<br>Conduct annual assessments of the effectiveness of the transportation program. | The  MTP evaluation completed by the Department in 1996 was  rejected by Plaintiffs.<br><br>In September 1997, a contract for an MTP evaluation was  awarded to Texas A&M University; their assessment was completed in late November 1999. |
| **¶ 224**<br>The assessments (MTP) will be specific and comprehensive, validly evaluate the transportation program in each Standard Metropolitan Statistical Area and the rural area in each of the 8 TDH regions, determine where services are needed, the amount of services that are needed, and if existing services meet the need for transportation assistance. | ¶ 227 (Page31). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 225**<br>Transportation assessments to evaluate unmet need, recipient/provider satisfaction, reasons for recipient/provider dissatisfaction, reasonableness of transportation times and whether recipients missed or did not schedule services because of MPT problems. | ¶ 227 (Page 31). |
| **¶ 227**<br>Method for evaluating transportation system subject to Plaintiffs' approval (whether the method is professionally accepted and valid). | In March 1997, Plaintiffs reviewed/ approved Defendants' contract/ RFPs (to evaluate the MTP) for publication in the *TEXAS REGISTER* (¶ 223 page 30).<br><br>Plaintiffs approved Defendants' MTP Provider Survey Instrument in December 1997.<br><br>Plaintiffs approved Defendants' MTP Client Survey Instrument in May 1998. |
| **¶ 228**<br>Take corrective action wherever the assessment indicates that transportation services are inadequate. | A corrective action plan has been developed in response to the 1999 assessment; portions of the plan are already in progress. |

## 2000 LAWSUIT ACTION ITEMS
### Updated January 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 229**<br>Upon completion of each annual assessment, determine a method to decide where and how quickly corrective action is needed and what actions will be taken. | Corrective action plans were developed by THSteps staff in coordination with TDH staff in Health Care Financing, Health and Human Services Commission staff, and senior leadership at TDH.<br><br>In order to increase utilization of MTP services by class members, a comprehensive, targeted, outreach and informing process for MTP services is being implemented.<br><br>Cost projections based on increased client utilization are being prepared and will serve as the basis for briefing the Legislative Budget Board on expected increases in the MTP budget and for preparing the next MTP legislative appropriation request. |
| **¶ 230**<br>Train transportation staff to respond appropriately to urgent requests or rescheduling requests by July 1995. | By June 30, 1995, each regional Medical Transportation Program ( MTP ) Manager provided/ confirmed that training had been provided to their staff on the appropriate response to a client's request for urgent non-ambulance transportation needs. This training is now provided in conjunction with other program training for new staff and as a part of an ongoing training plan for tenured staff. |
| **¶ 232**<br>Beginning 9/1/95 the mileage reimbursement rate will be the same as that for state employees. | In July 1995, the Board of Health approved increasing the MTP mileage reimbursement rate to the official state mileage reimbursement rate (28 cents per mile effective September 1, 1995). Final adoption of the rule change was published in the November 24,1995 TEXAS REGISTER. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 234<br>Take steps to determine the mileage reimbursement process by 9/1/95. | Completed.<br>Determinations were made on the following:<br>● What regions do not have advance payments and why.<br>● Can advance payments be made available throughout the state.<br>● What methods can be used to speed up the reimbursement process when requested after trips occur. |
| ¶ 235<br> By 10/31/95 attempt to agree on a method to implement improvements to the administration of the mileage reimbursement program. | MTP managers incorporated a reimbursement review component into their office reviews; the first regional office review was completed in June 1995 in Lubbock--with two office reviews occurring per month over the following five month period.<br><br>All TDH/MTP regions now provide advance funds for meals, lodging, and mileage for those clients who cannot wait for the normal state fiscal/State comptroller payment processing. Clients may choose to pick up their money directly from the contractor, have the money mailed, or have the money sent overnight by priority mail.<br><br>A new MTP computer software program ("Transportation's Electronic Journal for Authorized Services" [TEJAS]) has been implemented to facilitate the authorization/ reimbursement processing procedures. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 236**<br>Inform health care providers about the mileage reimbursement option so that they can refer patients when appropriate. | All MTP providers were notified of the mileage rate increase. The MTP signed a MOU with the Kidney Health Care Program allowing all Medicaid kidney dialysis patients to use that program's individual transportation providers and reimburse them at the MTP higher mileage reimbursement rate.<br><br>The availability of MTP including MTP client 1-800 numbers was published in the *Texas Medicaid Bulletin* and included in MTP brochures distributed to providers. |
| **¶ 238**<br>Establish new transportation regulations that cover reasonable transportation to establish or maintain an ongoing relationship with a health care provider by 9/30/95. | On November 24, 1995, TDH adopted amendments to the MTP rules in the TEXAS REGISTER. The definition of "reasonable transportation" authorized transportation of a client to and from a provider of services that meets the client's medical need and who is located reasonably close to the client, whether the provider is located in the client's county of residence or elsewhere. The amendments also clarified that Medicaid clients (under age 21) and their attendants may be eligible for meals and lodging under the MTP. |
| **¶ 240**<br>Defendants must help clients schedule appointments. | ¶ 245 (Page 35). |
| **¶ 242**<br>By 9/1/95 reevaluate the use and operation of the toll free numbers to improve scheduling assistance for clients. | Completed. Defendants subsequently increased the number of toll free lines and staff, extended the customer service hours, and added new/upgraded technical capability/ equipment. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 243**<br>The toll free numbers to request transportation and scheduling assistance will either be combined or linked. | All THSteps regional locations' toll free numbers have the capability to transfer callers to the MTP staff. All MTP toll free numbers can transfer calls to THSteps. |
| **¶ 244**<br>Upon request TDH staff will help clients find a provider by giving the name, location and telephone number of least 1 provider of the appropriate speciality in a convenient location (or more than one if requested and available).<br><br>Notify managed care clients of their freedom to choose a PCP of their choice at enrollment. | EPSDT/THSteps client outreach staff and client toll-free telephone staff have been instructed and *trained to provide the client services in ¶ 244. Each region maintains a listing of providers.  See ¶ 93 (Page 12) about the Provider "LOOKUP" system.<br><br>* Customer service and program training. |
| **¶ 245**<br>TDH staff will determine if recipients need help with scheduling appointments and/or transportation and will provide needed assistance. | Offers of assistance are made by THSteps client outreach staff, client 1-800 telephone staff, and in the client outreach letters referred to in ¶ 17 (Page 2). |
| **¶ 246**<br>Regional staff will notify central office provider relations staff about inadequate supplies of providers. | The"THSteps Regional Monthly Report(s)" include a section titled "Inadequate Provider Base". |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 247<br>Toll free numbers for EPSDT recipients will be staffed sufficiently by well trained personnel. No calls may be answered by a tape recording during working hours except in unusual circumstances. | A monitoring plan to assure compliance with ¶ 247 was implemented in January 1997. Defendants continue to gather information (eg: Quality Assurance Surveys, Automatic Call Distribution data, and Telephone Traffic Studies) about the toll free client telephone numbers. There continues to be an improvement in services as a result of analyzing the data, taking corrective action, and making system upgrades/ enhancements (eg: statewide implementation of two new software packages).<br><br>MTP staff continue to work with a statewide CQI team to further improve client toll-free telephone performance. |
| ¶ 264<br>By 1/31/96 complete a case management plan for the EPSDT program. | Defendants "last" case management plan was sent to Plaintiffs on September 17, 1997. The parties negotiated the very complex and difficult issue of case management over an extended period of time. |
| ¶ 265<br>The plan will address methods to encourage the acceptance of case management by clients and providers. | The purpose of the plan referenced in ¶ 264 (Page 36) was to establish policy and/or procedures for the administration of case management services preliminary to the development of proposed rules in the TEXAS REGISTER. With the implementation of the program, methods to encourage the acceptance of case management by clients and providers were addressed. |
| ¶ 266<br>The plan will address the relationship between case management and MCOs. | The parties failed to reach an agreement on this issue. |
| ¶ 267<br>The plan will address the proper role of case managers. | The plan referenced in ¶ 264 (Page 36) addressed 13 primary functions of the case manager. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
| --- | --- |
| **¶ 268**<br>The plan will address case management for the children of migrant farm workers. | The internal plan did not specifically address case management for children of migrant farm workers. Defendants chose to include this information in the published policy and operational materials. |
| **¶ 269**<br>The plan will address the coordination of case management services provided by the various agencies that serve EPSDT clients. | The plan referenced in ¶ 264 (Page 36) addressed the coordination with other targeted/contracted case management programs. |
| **¶ 270**<br>By 9/1/96 finalize medical case management regulations and implement the program. | The Medical Case Management Program rules were published in the TEXAS REGISTER as adopted rules on December 26, 1997.  The program was officially implemented on January 2, 1998. |
| **¶ 273**<br>Implement a process to meet the statewideness requirement which will:<br>• annually monitor the percent of clients who receive EPSDT check ups throughout Texas and locally;<br>• increase the percent of clients who receive check ups in areas where that percent is low. | A process to meet the statewideness requirement was implemented in 1996. |

## 2000 LAWSUIT ACTION ITEMS
### Updated January 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 276**<br>The unit of measurement generally is the County. Counties may be clustered when necessary to achieve statistically valid results. (Statewideness process). | This information appears in Defendants' Statewideness reports. |
| **¶ 277**<br>Beginning in 1996, measure the percent of EPSDT clients who receive medical check ups.<br><br>Beginning in 1997 measure the percent of EPSDT clients who receive medical check ups and 2 dental check ups/year in each county or county cluster. | This information appears in Defendants' Statewideness reports and HCFA 416 reports. Exception: Check-ups performed in Managed Care capitated arrangements.<br><br>This information appears in the Statewideness reports. ¶ 280 (Page 39) and ¶ 171 (Page 23). |
| **¶ 278**<br>Develop a statistically valid method to determine which counties or county cluster lag behind in the percent of clients who receive medical or dental check ups. | A method was developed/ implemented in 1996. A statewide check-up average was calculated. Any county below the average was required to develop/implement a corrective action plan. |
| **¶ 279**<br>Defendants may improve the method for the statewide analysis. | Plaintiffs rejected Defendants' proposals  to improve the method for statewide analysis in July 1997,  and again in January 1998. |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 280<br> Complete a statewideness analysis every year by March 30. Identify the counties or county clusters that lag behind the state average for medical and /or dental check ups. | Defendants have completed medical and dental statewideness reports for 1996, 1997, and 1998. Exception: ¶ 277 (Page 38). |
| ¶ 281<br>Each year Defendants will develop a corrective action plan for those counties that lag behind so that participation in those counties improves. | Corrective action plans for the 1996 and 1997 Statewideness Reports have been completed. Corrective action plans for the medical and dental portions of the 1998 Statewideness Reports are near completion. |
| ¶ 284<br>Also report to Plaintiffs the number and percent of clients who receive all of their scheduled medical and dental  check ups by December 31 of each year. | Plaintiffs rejected Defendants' report methodology (s) for meeting ¶ 284 requirements on January 28, 1997, and again on July 11, 1997. |
| ¶ 285<br>Develop a method that records all recipients who receive the full number of scheduled check-ups within a year. | ¶ 284 ( Page 39). |
| ¶ 289<br>The parties will together choose health outcomes indicators. | The parties notified the Court of  11 health outcome measures on August 30, 1995 (*Joint Notice Concerning Outcomes Measures*). |

**2000 LAWSUIT ACTION ITEMS**
**Updated January 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 293**<br>The parties will develop a list of health outcome indicators by 9/1/95 including about 12 indicators. | ¶ 289 (Page 39). |
| **¶ 294**<br>The parties will further agree on a target goal for each health outcome indicator . | Proposed target goals were provided to Plaintiffs as part of the strategic action plan (s) developed to improve each reported health outcome. ¶ 296 ( Page40). |
| **¶ 295**<br>Defendants will report the best available information on each health indicator annually, beginning 9/1/96 and continuing through 1999.<br><br>Proposed study methodology will be presented for Plaintiffs approval by April 1, 1996. | Defendants reported on ten of 11 outcome measures: they have reported results over multiple years for most of the measures—and continue to investigate methods for reporting on behavioral health.<br><br>Since 1996, TDH epidemiologists have engaged in written and verbal discussions with Plaintiffs about the content and methodology of "wisely chosen health indicators" for the THSteps population .The Parties continue to have differences in judgement over research methods and what are reasonable outcome measures. |
| **¶ 296**<br>Defendants will develop corrective action plans to address all matters within Defendants' control to improve results for each health outcome indicator. The corrective action plan will be presented to the plaintiffs for review and comment by January 30 each year. | "Corrective action plans" have been renamed "strategic action plans" (per agreement between the parties).<br><br>In late 1999, a "THSteps Outcome Intervention Strategic Action Plan" was presented to Plaintiffs for review/comment., |

## 2000 LAWSUIT ACTION ITEMS
### Updated January 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 305**<br>The parties will meet twice a year to consider revisions of deadlines and substance.  Will report any agreed changes to the Court by May 15 and October 15 each year. | The parties have met more frequently: in FY 1997 eg; in October, November, December, March and June in accordance with the Consent Decree requirements. |
| **¶ 306**<br>Make monitoring reports to the Court and to the Plaintiffs every January, April, July and October. | Quarterly monitoring reports (including Exhibits) have been furnished to the Court and Plaintiffs on a regular basis. |
| **¶ 307**<br>The chart will 1) identify each paragraph in this Decree that obliges the Defendants to act and each required action and 2) state the status of each activity. | Defendants' Quarterly Monitoring Reports include the information specified in ¶ 307. The format is the same as this report. |

# Exhibit A

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

December 9, 1999

Susan F. Zinn
Attorney at Law
P.O. Box 15126
San Antonio, Texas 78212

RE:   *Linda Frew, et al., v. Don Gilbert, et al.*, Civil Action No. 3:93CV65 in the
United States District Court for the Eastern District of Texas, Paris Division

Dear Susan:

As you know, THSteps staff have begun preparation of an RFP to contract for the
services required to meet Consent Decree ¶¶ 107,111,112,117, and 120. As agreed at our
September 23, 1999 negotiation meeting, my clients are providing you with a draft of the "Scope
of Work" for the potential contractor (enclosed).  Although my clients have already met the
requirements in ¶108, they have taken this contract opportunity to expand on their activities (see
page one, Part II).

Sincerely,

Edwin N. Horne
Assistant Attorney General
General Litigation Division
(512) 463-2120

ENH/lpl

Enclosure

cc:   Tom Godard
Marina Henderson
Bridget Cook

3374

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

January 7, 2000

Susan F. Zinn
Attorney at Law
P.O. Box 15126
San Antonio, Texas 78212

RE: *Linda Frew, et al., v. Don Gilbert. et al.,* Civil Action No. 3:93CV65 in the
United States District Court for the Eastern District of Texas, Paris Division

Dear Susan:

I am responding to your December 16, 1999 comments on my clients' RFP for services
required to meet ¶¶ 107, 111, 112, 117, and 120.

Comment:

Is Section 1.A limited to providers who can do check-ups or does this section apply more
broadly?

**Response:**

**Section 1.A is limited to the identification of professional schools in Texas which
train health care providers who could perform check-ups for THSteps eligible recipients.**

Comment :

Please explain what Section III. A means by "conduct sufficient research to substantially
increase provider participation."

**Response:**

**The type research described in Part A is intended to identify all problems associated
with barriers to provider participation.**

Comment:

Could you please send us a copy of the survey (re: coverage of mental health
services) when it is complete?

POST OFFICE BOX 12548, AUSTIN, TEXAS 78711-2548 TEL: (512)463-2100 WEB: WWW.OAG.STATE.TX.US
*An Equal Employment Opportunity Employer · Printed on Recycled Paper*

3375