**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 169**<br>Develop standards (dental) based on consultation with appropriate experts including the chairs of the Departments of Pediatric Dentistry in Texas. | The TDH Dental Director, Oral Health Services Division, his professional staff, and the Dental Director for the Department's health insuring agent, NHIC, all periodically consult with experts about dental standards eg:<br>1) Chairs of the Departments of Pediatric Dentistry at UT-Houston, UTHSC- San Antonio, and the Houston Academy of Pediatric Dentistry about such things as:<br>• "Standards of practice" for pediatric dental care, especially pertaining to use of IV sedation, general anesthesia, and chart documentation of "medical necessity" via use of intraoral photographs or radiographs.<br>• Categorization of children for the need for general or I.V. sedation.<br>2) Department of Community Dentistry at U.T.M.B about:<br>• Problem-based learning approach (curriculum scheduled for January and February 2000 for dental students).<br>3) Professional members of the Department's Oral Health Services Advisory Committee about a variety of topics.<br><br>Most recently, the TDH and NHIC Dental Directors met with theChair, Department of Pediatric Dentistry, University of Texas Dental Branch-Houston and the Chair, Department of Pediatric Dentistry, University of Texas School of Dentisry-San Antonio. The following was discussed:<br>A. The protocol for placement of stainless steel crowns (SSC) on primary teeth. At both schools, restorative procedures (SSCs) are utilized only when pathology is present. SSC's are not placed for preventive measures. This philosophy is |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶169(cont.) | consistent with the current Medicaid/THSteps requirement of medical necessity.<br><br>B. Taking radiographs as standard operating procedure for discovery of pathology.<br><br>C. The difference of opinion within the profession as to what constitutes behavior management and what the charge should be ( if at all).   Some clinicians believe that behavior management is part of all procedures  performed in the dental operatory.<br><br>**Note:** policy was proposed and then  rescinded (due to major provider objections) to eliminate payment for behavior  management and require radiographs for discovery and payment of therapeutic  procedures. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 171**<br>By 9/30/96 prepare a report of the number and percent of clients who receive 1 dental check up/year and 2 dental check ups/year. Prepare similar reports every year. | On February 5, 1997, Plaintiffs rejected Defendants' report in response to ¶ 171. Defendants' alternative methodology proposals were subsequently rejected by Plaintiffs on July 11, 1997.<br><br>Defendants anticipate having the annual reports for 1997, 1998, and 1999, completed in January 2001; this assumes the faulty data problems identified in recent dental check-up reports generated by the TDH health insuring agent can be resolved. These data problems were discussed with Plaintiffs at the October 10, 2000 negotiation meeting. |
| **¶ 172**<br>By 12/1/96 agree on expected increases in the number and percent of clients who receive 1 and 2 dental check ups/year. | See "status" for ¶ 171(Page 34). |
| **¶ 174**<br>Arrange for a study to assess the dental health of the EPSDT population. | In 1997, Defendants awarded a contract to UTHSC-San Antonio for a study to assess the dental health of the THSteps/EPSDT population. A copy of the study report ("Make Your Smile Count") was sent to Plaintiffs on January 27, 2000.<br><br>Note: Defendants' first and earlier RFP for contracting for this service was rejected by Plaintiffs. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 179**<br>Identify the counties where client children of migrant farm workers live during part of the year and approximately when farm workers families return to those counties. | See "status" for ¶180 (Page 35). |
| **¶ 180**<br>Begin this program in the Lower Rio Grande Valley in 1995 and later expand to other areas of the state as needed. | In 1995, TDH Region 11 obtained a listing of children whose families were identified as migrant farm workers from the TDHS data base; targeted outreach was accomplished. Note: TDHS migrant farm worker information is not consistently available in other areas of the state.<br><br>In 1999, TDH signed an MOU with the Texas Education Agency (TEA) to institutionalize a process (with Education Service Centers and school districts) for migrant information sharing between TEA and TDH. Each of the THSteps Regional offices were sent copies of the MOU along with a list of contacts for each of the TEA Educational Service Centers across the state. TEA Education Service Center staff is dedicated to assisting migrant families. THSteps regional staff coordinate regular meetings and procedures for sharing client information with the TEA staff in order to increase outreach to children of migrant workers. THSteps staff also make marketing materials available to TEA staff/offices. |
| **¶ 181**<br>Make efforts to help farm workers utilize EPSDT benefits promptly upon return to Texas. | THSteps regional staff continue to report about their efforts to help farm families utilize EPSDT/THSteps services (EXHIBIT R). |

35

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 182**<br>When farm workers apply for Medicaid benefits on behalf of EPSDT eligible children, determine if the applicant would like further information about EPSDT or help to schedule appointments. | See "status" for ¶ 23 (Page 6)  regarding the "Extra Effort Referral" form (EXHIBIT E). Defendants  also mail a THSteps letter (EXHIBIT B ) to all newly certified/recertified clients offering assistance with scheduling appointments and more information on the program.  The letter includes a client toll-free 1-800 assistance number. |
| **¶ 183**<br>When outreach units receive information about the identity of migrant farmworker recipients who request outreach services, outreach units will give priority status to those recipients. | Regions have been advised of the importance of expediting services for migrant farm worker recipients. See "status" for  ¶ 180 (Page 35), and ¶181 (Page 35) about efforts to identify and outreach the migrant  population. |
| **¶ 191**<br>Assure by various means that the number and percent of EPSDT patients in each MCO who receive all medical and dental check ups when due and information for outcomes research as needed is accurately collected. | TDH staff continue to work with the TDH health insuring agent, NHIC, to identify ways to reduce the complexity of the encounter processing system, thereby increasing the completeness of the data set. A new encounter processing system (Compass21) is now scheduled for  implementation  in early fall of 2001. TDH staff have 1)  been working with both NHIC and contracted Health Maintenance Organizations (HMOs) to facilitate transfer to this new system ( upon implementation), and 2) are continuing  to investigate ways to improve encounter data completeness/ accuracy through alternative data processing options. |

## 2000 LAWSUIT ACTION ITEMS
### Updated October 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 192**<br>Assure by various means that MCOs provide medical and dental check ups to newly enrolled recipients no later than 90 days after enrollment except when recipients knowingly and voluntarily decline or refuse services. | According to the 1999 renewal contract:<br><br>"HMO must have mechanisms in place to ensure that all newly enrolled members receive a THSteps check-up within 90 days from enrollment, if one is due according to the American Academy of Pediatrics periodicity schedule, or if there is uncertainty regarding whether one is due. HMO should make THSteps check-ups a priority to all newly enrolled members." (Monitoring is conducted by TDH staff through encounter data submitted by Managed Care Organizations [MCOs] and through Utilization Management reports.) |
| MCOs will have the capacity to accelerate services to the children of migrant farm workers. | MCO onsite reviews in 2001 conducted by TDH's External Quality Review Organization (EQRO) will query whether services for Children with Special Health Care Needs populations includes children of migrant workers. The review will also look for improved services in 2001 based on previous reviews. |
| **¶ 193**<br>Assure that MCOs cooperate with outreach units so that clients who miss medical and/or dental check ups receive prompt services. | THSteps staff continue collaboration efforts with their managed care partners e.g.: working with Birch and Davis (B&D), contract administrator for the PCCM model, on an outreach project. B&D coordinates regional client outreach activities with THSteps outreach staff from MAXIMUS. Regional Advisory Committee(s) in each managed care service delivery area have formed subcommittees which are co-chaired by MAXIMUS and THSteps representatives. B &D is a member of these subcommittees, which collaborate and share best practices across health plans and with local stakeholders. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 194**<br>Assure that MCOs arrange training for all health care providers and their staff who serve EPSDT clients as authorized by SB601. | According to the managed care 1999 renewal contract:<br><br>"HMO must provide appropriate training to all network providers and provider staff in the providers' area of practice regarding the scope of benefits available and the THSteps program. Training must include THSteps benefits, the periodicity schedule for THSteps check-ups and immunizations, and Comprehensive Care Program (CCP) services available under the THSteps program to members under age 21 years. Providers must also be educated and trained regarding the requirements imposed upon the department and contracting HMOs under the Consent Decree entered in *Frew. v. McKinney, et al*, Civil Action No. 3:93CV65, in the United States District Court for the Eastern District of Texas, Paris Division. Providers should be educated and trained to treat each THSteps visit as an opportunity for a comprehensive assessment of the member." TDH staff assesses the MCOs' curriculum for appropriateness and reviews records of attendees during Readiness Reviews. The EQRO reviews provider education during their on-site reviews.<br>Following are the findings from all the managed care plans:<br>• **Americaid**: Send monthly newsletters to all providers. Once a year host a dinner/ training and invite all physicians. Distribute a quarterly publication entitled "Ameritips" to providers.<br>• **Amerihealth**: THSteps check-ups are part of company philosophy. Training conducted on an ongoing basis to all providers.<br>• **Community First**: Conduct one-on-one office visits on a quarterly basis and also mail a quarterly newsletter to providers. |

3953

## 2000 LAWSUIT ACTION ITEMS
### Updated October 31, 2000

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 194 (cont. | • **Community Health Choice**: Conduct on-going site visits and mail quarterly newsletters to providers.<br>• **First Care**: Provide on-going training for providers including a special orientation for new providers. Conduct site visits and mail quarterly provider newsletters high-lighting THSteps changes.<br>• **HMO Blue**: Each provider visited once a quarter. Mail updates once a year.<br>• **JPS STAR**: Send a "Provider Alert" every time there is a THSteps change. Conduct quarterly office visits.<br>• **Methodist Care**: Conduct one-on-one training at the time of office visits for all providers.<br>• **MSCH/Access:** Conduct group training on an ongoing basis— available for provider office visits if requested. Quarterly newsletters provide current information.<br>• **Parkland:** Provide one-on-one training with each provider. Conduct follow-up visits with any provider identified as having problems. Completed first round of training at the end of this month. Next round of training will include specialists/ staff. Mailed first quarterly provider newsletter in October 2000.<br>• **PCA**: Distribute a provider manual to each provider at initial training and strongly encourage providers to keep up with THSteps requirements. Members can see any THSteps provider in the service area; therefore, plan does not conduct on-going training. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 194 (cont.) | • **Seton**: Provide initial training to all providers and mail quarterly newsletters. Staff available on an "as needed" basis if provider(s) requests training or an update.<br>• **Superior**: Devote part of quarterly provider newsletter to THSteps and provide training on a quarterly basis-with a major part of curriculum devoted to THSteps. A full-time employee dedicated to provider training. |
| ¶ 197<br>Assure that MCOs have an adequate supply of appropriate providers who can serve EPSDT clients located conveniently. | According to the 1999 renewal contract:<br><br>"HMO must maintain a provider network that includes pediatricians and physicians with pediatric experience in sufficient numbers and geographic distribution to serve eligible children and adolescents in the service area and provide timely access to the full scope of benefits, especially THSteps check-ups and immunizations.<br><br>HMO must have PCPs available throughout the service area to ensure that no member must travel more than 30 miles to access the PCP, unless an exception to this distance requirement is made by TDH."<br><br>TDH staff assesses network adequacy through GeoAccess maps and by reviewing provider termination reports. In addition, Managed Care Regional Coordinators communicate with the THSteps Regional Managers to identify any access problems. Managed care plans are contacted to recruit providers when THSteps providers are not adequate to meet the needs of the member base. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 198**<br>Assure a system that allows clients to enroll promptly with a new MCO when clients move from one area to another in Texas. | To improve assurances for meeting this requirement, TDH contracted in 1997 with "MAXIMUS", a company which serves as the exclusive entity for the client enrollment process ( Enrollment Broker). MAXIMUS receives daily files from TDHS identifying members who have moved from one area of Texas to another; enrollment packets are mailed immediately to each of these clients. |
| **¶ 199**<br>MCOs will be subject to independent evaluation of their patients health outcomes, satisfaction and process measures, including the number and percent of EPSDT clients who receive all medical and dental check ups when due. | TDH continues to contract with Texas Health Quality Alliance (THQA) to serve as the State's EQRO. As part of the EQRO managed care monitoring, THQA conducts annual validation studies of HMO data; e.g.; clinical focused studies, consumer and provider satisfaction surveys; and various MCO contract compliances (EXHIBIT S). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 205**<br>Use innovative means to provide EPSDT services to teenagers. | • Each Region continues to report monthly on its activities related to providing services to teens (EXHIBIT T.1 ).<br><br>• A THSteps Regional Adolescent Outreach Plan developed in 1999, includes performance goals.<br><br>• A series of six magazines was developed for adolescents/teens. The younger and older versions of the magazine ("About Us") are being distributed and receiving an overwhelming response! "About Us" just received national recognition for excellence in public health communication. The National Public Health Information Coalition awarded "About Us", the 2000 Gold Award (EXHIBIT T.2) An Adolescent Health Coordinator at TDH initiates and participates in a variety of activities and projects related to services for teens (EXHIBIT T.3).<br><br>• Defendants formed the Texas Adolescent Health Advisory Committee to act as consultants and aid the Adolescent Health Coordinator in developing systems to increase access to preventive and primary health care services and integrate health promotion with adolescent health care (EXHIBIT T.4). |
| **¶ 207**<br>Efforts to inform teens and their parents about EPSDT will address the complex privacy and consent issues involved. | In 1998, Defendants distributed three different letters ( to providers, parents, and teens) addressing teen privacy and consent issues. Copies of these letters were sent to Plaintiffs. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 208<br>Each family strikes the balance between parental knowledge/ consent and teen privacy differently. Defendants' role is only to bring the issue to clients' attention so they can resolve it together with teens health care providers. | ¶ See "status" for  ¶ 207 (Page 42 ). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 212<br>TDH and TDPRS will present a MOU for Plaintiffs' approval and to the Court by 10/1/95 which will:<br><br>■ provide training about EPSDT for parents<br><br>■ report the number and percent of EPSDT recipients under the supervision of TDPRS who receive all of their medical and dental check ups when due.<br><br>■ assure that all clients under supervision of TDPRS receive all medical/dental checkups when due.<br><br>■ establish procedures to refer clients to appropriate case management managers when needed upon clients' release from TDPRS supervision | On September 1, 1995, a Memorandum of Understanding (MOU) was signed between TDH and TDPRS incorporating the Consent Decree Requirements. Plaintiffs and the Court were presented with the MOU. See EXHIBITS U.1. and U.2. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 222**<br>TDHS eligibility workers will describe the transportation program, including the mileage reimbursement option during each initial eligibility interview. | This information is included in the client informing Desk Reference used by TDHS eligibility workers at the time of oral client informing about the EPSDT/THSteps program. See EXHIBIT D. |
| **¶ 223**<br>Conduct annual assessments of the effectiveness of the transportation program. | The Medical Transportation Program (MTP) evaluation completed by Defendants in 1996 was rejected by Plaintiffs.<br><br>In September 1997, a contract for an MTP evaluation was awarded to Texas A&M University; a copy of the report was sent to Plaintiffs on January 10, 2000.<br><br>A & M will complete an interim study during CY 2000 focusing on the needs of urban dwellers and will complete a second full study during CY 2001. |
| **¶ 224**<br>The assessments (MTP) will be specific and comprehensive, validly evaluate the transportation program in each Standard Metropolitan Statistical Area and the rural area in each of the 8 TDH regions, determine where services are needed, the amount of services that are needed, and if existing services meet the need for transportation assistance. | See "status" for ¶ 227 (Page 46). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 225**<br>Transportation assessments to evaluate unmet need, recipient/provider satisfaction, reasons for recipient/provider dissatisfaction, reasonableness of transportation times and whether recipients missed or did not schedule services because of MPT problems. | See "status" for ¶ 227 (Page 46). |
| **¶ 227**<br>Method for evaluating transportation system subject to Plaintiffs' approval (whether the method is professionally accepted and valid). | In March 1997, Plaintiffs reviewed/ approved Defendants' contract/ RFPs (to evaluate the MTP) for publication in the *TEXAS REGISTER*. See "status" for ¶ 223 page 45).<br><br>Plaintiffs approved Defendants' MTP Provider Survey Instrument in December 1997.<br><br>Plaintiffs approved Defendants' MTP Client Survey Instrument in May 1998. |
| **¶ 228**<br>Take corrective action wherever the assessment indicates that transportation services are inadequate. | In response to the 1999 MTP assessment, a corrective action plan for MTP was developed by THSteps staff in coordination with other TDH staff (Health Care Financing, Health and Human Services Commission, and senior leadership); portions of the plan are already in progress.<br><br>Defendants provided Plaintiffs with a progress report on the corrective action plan at the October 10, 2000 negotiation meeting. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 229<br>Upon completion of each annual assessment, determine a method to decide where and how quickly corrective action is needed and what actions will be taken. | A copy of the corrective action plan was sent to Plaintiffs on June 29, 2000. Defendants responded to Plaintiffs' comments on the plan in late July 2000.<br><br>In order to increase  utilization of MTP services by class members, a comprehensive, targeted, outreach and informing process for MTP services is being implemented.<br><br>Cost projections based on increased client utilization are being prepared and will serve as the basis for briefing the Legislative Budget Board on expected increases in the MTP budget and for preparing the next MTP legislative appropriation request. |
| ¶ 230<br>Train transportation staff to respond appropriately to urgent requests or rescheduling requests  by July 1995. | By June 30, 1995, each regional MTP Manager provided/ confirmed that  training had been provided to their  staff on  the appropriate response to a client's request for  urgent non-ambulance transportation needs.  This training is now  provided in conjunction with other program training for new staff and as a part of an ongoing training plan for tenured staff. |
| ¶ 232<br> Beginning 9/1/95 the mileage reimbursement rate will be the same as that for state employees. | In July 1995, the Board of Health approved increasing the MTP mileage reimbursement rate to the official state mileage reimbursement rate.  Final adoption of the rule change was published in the November 24,1995 TEXAS REGISTER. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 234<br>Take steps to determine the mileage reimbursement process by 9/1/95. | Completed.<br>Determinations were made on the following:<br>● What regions do not have advance payments and why.<br>● Can advance payments be made available throughout the state.<br>● What methods can be used to speed up the reimbursement process when requested after trips occur. |
| ¶ 235<br> By 10/31/95 attempt to agree on a method to implement improvements to the administration of the mileage reimbursement program. | MTP managers incorporated a reimbursement review component into their office reviews; the first regional office review was completed in June 1995 in Lubbock--with two office reviews occurring per month over the following five month period.<br><br>All TDH/MTP regions now provide advance funds for meals, lodging, and mileage for those clients who cannot wait for the normal state fiscal/State comptroller payment processing. Clients may choose to pick up their money directly from the contractor, have the money mailed, or have the money sent overnight by priority mail.<br><br>A new MTP computer software program ("Transportation's Electronic Journal for Authorized Services" [TEJAS]) has been implemented to facilitate the authorization/ reimbursement processing procedures. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 236**<br>Inform health care providers about the mileage reimbursement option so that they can refer patients when appropriate. | All MTP providers were notified of the mileage rate increase. The MTP signed a MOU with the Kidney Health Care Program allowing all Medicaid kidney dialysis patients to use that program's individual transportation providers and reimburse them at the MTP higher mileage reimbursement rate.<br><br>The availability of MTP including MTP client 1-800 numbers has previously been published in the *Texas Medicaid Bulletin* and included in MTP brochures distributed to providers. This information was shared with Plaintiffs.<br><br>Attached are copies of the "Proofs" for two Medical Transportation Program Desk References that will be mailed to providers and social service agencies in late November 2000. (EXHIBIT V). Information about mileage reimbursement is included in these program materials. |
| **¶ 238**<br>Establish new transportation regulations that cover reasonable transportation to establish or maintain an ongoing relationship with a health care provider by 9/30/95. | On November 24, 1995, TDH adopted amendments to the MTP rules in the TEXAS REGISTER. The definition of "reasonable transportation" authorized transportation of a client to and from a provider of services that meets the client's medical need and who is located reasonably close to the client, whether the provider is located in the client's county of residence or elsewhere. The amendments also clarified that Medicaid clients (under age 21) and their attendants may be eligible for meals and lodging under the MTP. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 240<br>Defendants must help clients schedule appointments. | See "status" for ¶ 245 (Page 51). |
| ¶ 242<br>By 9/1/95 reevaluate the use and operation of the toll free numbers to improve scheduling assistance for clients. | Completed. Defendants subsequently increased the number of toll free lines and staff, extended the customer service hours, and added new/upgraded technical capability/ equipment.<br><br>Defendants continue to evaluate the performance of their toll-free numbers (MTP & THSteps) by conducting annual telephone traffic studies (EXHIBIT W) and obtaining Automatic Call Distribution data on a regular basis.  See "status" for ¶ 247 (Page 51). |
| ¶ 244<br>Upon request TDH staff will help clients find a provider by giving the name, location and telephone number of least 1 provider of the appropriate speciality in a convenient location (or more than one if requested and available).<br><br>Notify managed care clients of their freedom to choose a PCP of their choice at enrollment. | EPSDT/THSteps client outreach staff and client toll-free telephone staff have been instructed and *trained to provide the client services in ¶ 244. Each region maintains a listing of providers.  See "status" for ¶ 93 (Page 15) about the Provider "LOOKUP" system.<br><br>* Customer service training information was previously provided to Plaintiffs. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 245<br>TDH staff will determine if recipients need help with scheduling appointments and/or transportation and will provide needed assistance. | Offers of assistance (scheduling/transportation) are made by THSteps client outreach staff, client 1-800 telephone staff, and in the client outreach letters referred to in the "status" for ¶ 17 (Page 2 ). |
| ¶ 246<br>Regional staff will notify central office provider relations staff about inadequate supplies of providers. | The "THSteps Regional Monthly Report(s)" include a section titled "Inadequate Provider Base". |
| ¶ 247<br>Toll free numbers for EPSDT recipients will be staffed  sufficiently by well trained personnel. No calls may be answered by a tape recording during working hours except in unusual circumstances. | A monitoring plan to assure compliance with ¶ 247 was implemented in January 1997. Defendants continue to gather information (e.g.: Automatic Call Distribution data, and Telephone Traffic Studies) about the toll-free client telephone numbers. There continues to be an improvement in services as a result of analyzing the data, taking corrective action, and making system upgrades/ enhancements (e.g.: statewide implementation of two new software packages). Each TDH region completed staff training by August 31, 2000 using TDH developed staff training modules. |
| ¶ 264<br>By 1/31/96 complete a case management plan for the EPSDT program. | Defendants' "last" case management plan was sent to Plaintiffs on September 17, 1997. The parties negotiated the very complex and difficult issue of case management over an extended period of time. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 265**<br>The plan will address methods to encourage the acceptance of case management by clients and providers. | The purpose of the plan referenced in ¶ 264 (Page 51) was to establish policy and/or procedures for the administration of case management services preliminary to the development of proposed rules in the TEXAS REGISTER. Methods to encourage acceptance of case management by clients/providers have been shared with Plaintiffs. Proposed rules combining Pregnant Women/Infants Targeted Case Management with Medical Case Management (MCM) were published in the TEXAS REGISTER on October 27, 2000. |
| **¶ 266**<br>The plan will address the relationship between case management and MCOs. | THSteps staff have incorporated statements about the importance of coordinating with the Care Coordinators in Managed Care in their provider training plan. They will continue to enhance the program training manual to emphasize the importance of this coordination.<br><br>Medicaid Managed Care staff participate annually with the THSteps staff in training the Managed Care Organizations about THSteps.<br><br>MCM Program policy requires providers to attend 50% of the coalition meetings in their community. This requirement is intended to enhance the opportunities to network and coordinate services on behalf of THSteps clients. |
| **¶ 267**<br>The plan will address the proper role of case managers. | The plan referenced in ¶ 264 (Page 51 ) addressed 13 primary functions of the case manager. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 268<br>The plan will address case management for the children of migrant farm workers. | The internal plan did not specifically address case management for children of migrant farm workers. Defendants chose to include this information in the published policy and operational materials.<br><br>Defendants have been unable to produce a report showing the number of migrant children who have received MCM services; however they are willing to consider building a migrant field into their client registry—which is now under development.<br><br>In Defendants' provider training, providers are introduced to the importance of identifying migrant children and providing appropriate resource linkages; they are required to perform an additional assessment when a migrant child is identified. Monitoring of this requirement occurs when program staff conduct client chart audits as part of their provider quality assurance and technical assistance visits. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 269<br>The plan will address the coordination of case management services provided by the various agencies that serve EPSDT clients. | MCM Program staff incorporated into their training plan statements about the importance of coordinating with other agencies and programs that serve the THSteps population.<br><br>The "Family Needs Assessment" form (which must be completed by the MCM provider for use in development of the clients' plan of care) includes the identification of other agencies or programs involved with the family/client. Program staff will continue to enhance the training manual to emphasize the importance of such coordination.<br><br>MCM Program policy requires MCM providers to attend 50% of the coalition meetings in their community. This requirement is intended to enhance the opportunities to network and coordinate services on behalf of THSteps recipients. |
| ¶ 270<br>Defendants will finalize medical case management regulations and implement the program. | The MCM Program rules were published in the TEXAS REGISTER as adopted rules on December 26, 1997. The program was implemented on January 2, 1998.<br><br>As requested by Plaintiffs, Defendants are attaching a "MCM Provider Service Summary" report ( EXHIBIT X). |

54

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 273**<br>Implement a process to meet the statewideness requirement which will:<br>● annually monitor the percent of clients who receive EPSDT check ups throughout Texas and locally;<br>● increase the percent of clients who receive check ups in areas where that percent is low. | A process to meet the statewideness requirement was implemented in 1996. |
| **¶ 276**<br>The unit of measurement generally is the County. Counties may be clustered when necessary to achieve statistically valid results. (Statewideness process). | This information appears in Defendants' Statewideness reports. |
| **¶ 277**<br>Beginning in 1996, measure the percent of EPSDT clients who receive medical check ups.<br><br>Beginning in 1997 measure the percent of EPSDT clients who receive medical check ups and 2 dental check ups/year in each county or county cluster. | This information appears in Defendants' Statewideness reports and HCFA 416 reports. Exception: Check-ups performed in Managed Care capitated arrangements.<br><br>This information appears in the Statewideness reports. See "status" for ¶ 280 (Page 56) and ¶ 171 (Page 34). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 278**<br>Develop a statistically valid method to determine which counties or county cluster lag behind in the percent of clients who receive medical or dental check ups. | Completed in 1996. A statewide check-up average was calculated. Any county below the average was required to develop/implement a corrective action plan. |
| **¶ 279**<br>Defendants may improve the method for the statewide analysis. | Plaintiffs rejected Defendants' proposals  to improve the method for statewide analysis in July 1997,  and again in January 1998. |
| **¶ 280**<br> Complete a statewideness analysis every year by March 30. Identify the counties or county clusters that lag behind the state average for medical and /or dental check ups. | Defendants have completed medical and dental statewideness reports for 1996, 1997, and 1998. Exception: See "status" for ¶ 277 (Page 55 ). The 1999 medical statewideness report was sent to Plaintiffs on September 28, 2000. Due to coding/reporting errors, amended dental statewideness reports are being prepared for FY 1997, FY 1998, and FY 1999. These are scheduled for completion at the end of November 2000. |
| **¶ 281**<br>Each year Defendants will develop a corrective action plan for those counties that lag behind so that participation in those counties improves. | Corrective action plans for the 1996, 1997, and 1998 Statewideness Reports have been completed.<br><br>The 1999 medical corrective action plan will be completed in December 2000.<br><br>The 1999 dental corrective action plan is pending.  See "status" for ¶ 280 (Page 56). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 283<br>Defendants report EPSDT participation statistics to the federal government every year on the HCFA Form 416. The HCFA Form 416 uses calculations to approximate the number of recipients who receive EPSDT medical. check-ups | The FFY 1999 HCFA 416 Annual EPSDT Participation Report will be submitted to the Health Care Financing Administration in late November or December 2000. |
| ¶ 284<br>Also report to Plaintiffs the number and percent of clients who receive all of their scheduled medical and dental  check ups by December 31 of each year. | Plaintiffs rejected Defendants' report methodology (s) for meeting ¶ 284 requirements on January 28, 1997, and again on July 11, 1997. |
| ¶ 285<br>Develop a method that records all recipients who receive the full number of scheduled check-ups within a year. | See "status" for ¶ 284 ( Page 57). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 289<br>The parties will together choose health outcomes indicators. | The parties notified the Court of  11 health outcome measures on August 30, 1995 *(Joint Notice Concerning Outcomes Measures)*.  Defendants have been unable to obtain data on three of the agreed upon measures (developmental milestones, vision, and mental health). The original data source for these three measures  was the EPSDT medical check-up billing form; this form was replaced by the HCFA 1500 billing form in 1996, in order to meet the requirements for a simplified form in  ¶ 90 of the Consent Decree. |
| ¶ 293<br>The parties will develop a list of health outcome indicators by 9/1/95 including about 12 indicators. | See "status" for ¶ 289 (Page 58). |
| ¶ 294<br> The parties will further agree on a target goal for each health outcome indicator . | Proposed target goals were provided to Plaintiffs as part of the strategic action plan (s) developed to improve each reported health outcome. See "status" for  ¶ 296 ( Page 60). |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| ¶ 295<br>Defendants will report the best available information on each health indicator annually, beginning 9/1/96 and continuing through 1999.<br><br>Proposed study methodology will be presented for Plaintiffs approval by April 1, 1996. | Since 1996, TDH  epidemiologists have engaged in written and verbal discussions with Plaintiffs about the content and methodology of "wisely chosen health indicators" for the THSteps population. The Parties continue to have differences in judgement over research methods and what are reasonable outcome measures. Defendants have reviewed Plaintiffs' concerns and  attempted to address them when possible and appropriate.<br><br>Plaintiffs rejected the  three new outcome measures (newborn screening, teenage parity, and smoking pregnant teens) proposed by Defendants as  substitutes for the three measures no longer having a data base (see "status"for ¶ 289{page 58}). Also, Plaintiffs are not in agreement with Defendants' research methodology on "Immunizations" and the follow-up portion of the "Blood Lead" outcome measure. Further, Defendants have not yet gained access to managed care data for use in the "Asthma" measure.<br><br>Based on the above circumstances,  Defendants will be providing Plaintiffs with updated results for five of the 11 outcome measures in the January 2001 Quarterly Monitoring Report. |

**2000 LAWSUIT ACTION ITEMS**
**Updated October 31, 2000**

| Consent Decree Paragraph Requirement | Status |
|---|---|
| **¶ 296**<br>Defendants will develop corrective action plans to address all matters within Defendants' control to improve results for each health outcome indicator. The corrective action plan will be presented to the plaintiffs for review and comment by January 30 each year. | "Corrective action plans" have been renamed "strategic action plans" (per agreement between the parties).<br><br>In late 1999, a "THSteps Outcome Intervention Strategic Action Plan" was presented to Plaintiffs for review/comment., |
| **¶ 305**<br>The parties will meet twice a year to consider revisions of deadlines and substance.  Will report any agreed changes to the Court by May 15 and October 15 each year. | The parties continue to meet at least twice a year in accordance with Consent Decree requirements. |
| **¶ 306**<br>Make monitoring reports to the Court and to the Plaintiffs every January, April, July and October. | Quarterly monitoring reports have been furnished to the Court and Plaintiffs on a regular basis. |
| **¶ 307**<br>The chart will 1) identify each paragraph in this Decree that obliges the Defendants to act and each required action and 2) state the status of each activity. | Defendants' Quarterly Monitoring Reports include the information specified in ¶ 307. The chart format is the same as this report. |