IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PARIS DIVISION

| | | |
|---|---|---|
| LINDA FREW, et al., | § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 3:93-CA-065 WWJ |
| ALBERT HAWKINS, et al., | § § | |
| Defendants. | § § | |

## ORDER

On May 24, 2005, Defendants filed their Notification of Defendant's Withdrawal of Defendants' Rule 60(b) Motion for Relief from Judgment (Docket No. 513). The Court will treat this filing as a motion to withdraw Defendants' Rule 60(b) motion.[1] Defendants assert that they "must" withdraw their Rule 60(b) motion because the Court has not made a Rule 54(b) declaration regarding Plaintiffs' claims in the Third Amended Complaint.[2] Defendants argue that the Court must declare, pursuant to FED. R. CIV. P. 54(b), that final judgment has been reached on at least some of Plaintiffs' claims in the Third Amended Complaint in order to permit a Rule 60(b) motion. Defendants' assertions are patently incorrect as a matter of law, and the Court will hold Defendants' instant motion under advisement until after the June 6, 2005, evidentiary hearing, as explained below.

---

[1] *See generally* Local Rule CV-7. Defendants are requesting that the Court order the withdrawal of their Rule 60(b) motion from the Docket; as such, they are requesting action from the Court, which must be made in the form of a motion.

[2] Defendants also misstate the Court's May 9, 2005, Order. Defendants say that Docket No. 504 "stat[es] the Court would not enter final judgment on even a portion of the Plaintiffs' claims in the Third Amended Complaint . . . ." The Order, however, simply states, "[T]here are just reasons for delaying entering a final judgment in the case."

## I. RELEVANT PROCEDURAL HISTORY

The Court denied Defendants' Motion for Entry of Rule 54(b) Findings on May 9, 2005, declining to exercise its discretion to direct entry of final judgment at this time. *See* Docket No. 504. In addition to considering Rule 54(b) findings unnecessary and ill-advised at this time, the Court notes the status of Plaintiffs' Amended Motion to Enforce Consent Decree (Docket No. 227), filed May 10, 1999, over six years ago. The Court has not yet entered relief for Plaintiffs' motion, although the Court found that Defendants violated the Consent Decree in its August 14, 2000, Memorandum Opinion ("2000 Order") (Docket No. 315) and ordered all parties to submit proposed corrective action plans (Docket No. 316). The Court desired to allow all parties to have input in the remedial determination, thus ordered the parties to submit what they believed would reasonably remedy Defendants' violations of the Consent Decree. Defendants immediately appealed the ruling to the Fifth Circuit, and the Fifth Circuit granted Defendants' motion for stay of the Court's 2000 Order during the pendency of the appeal (Docket No. 333), so the Court was temporarily stripped of jurisdiction for all claims under review.[3] The Court was thus unable to order relief for Plaintiffs, based on Defendants' violations of the Consent Decree, for nearly four years. The Court regained jurisdiction over these claims on August 5, 2004. *See* Docket No. 390.

The Court, in the interest of judicial economy, has decided to postpone ordering relief (corrective action plans) until after the June 6, 2005, hearing in order to better understand the current factual circumstances surrounding the claims in the Third Amended Complaint and the Consent Decree and order the most current, informed remedy. Plaintiffs and Defendants have,

---

[3] Defendants disapprovingly refer to the longevity of what they erroneously believe to be a "twelve-year-old preliminary injunction," although the Court notes that much of the delay was caused by their unmeritorious appeal on 11th Amendment grounds. Defendant's Notice at 1-2.

since the Court regained jurisdiction of these issues, submitted proposed corrective action plans (Docket Nos. 469 & 473), although the Court believes it would be a waste of judicial resources to enter remedial relief without being informed as to factual changes over the past five years.

The claims covered by the Consent Decree were, by nature, the subject matter of Plaintiffs' Motion to Enforce and are correspondingly under consideration with respect to the Court's ordering corrective action plans. Defendants' assertion that the Court should have made Rule 54(b) findings with respect to all claims covered by the Consent Decree is thus additionally erroneous since remedial relief for Defendants' violation of the Consent Decree has yet to be ordered. Evidence presented to the Court at the June 6, 2005, hearing will help inform the Court as to a just and equitable remedy for the liability found in 2000, in addition to informing the Court of any changed circumstances warranting modification of the Consent Decree. The nature of the Consent Decree as a judgment for purposes of Rule 60(b) is not affected by Plaintiffs' later motion to enforce–the Court was simply exercising its power to enforce the Consent Decree and did not subject the underlying claims to further litigation.[4]

## II. RULE 60(B) IS A VALID PROCEDURAL VEHICLE BY WHICH TO MODIFY A CONSENT DECREE

The Court entered the Consent Decree on February 20, 1996 (Doc. No. 135), addressing the claims in Plaintiffs' Third Amended Complaint. The rights and responsibilities of the parties, in addition to the equitable powers of the Court, followed the entry of this Consent Decree just as they would follow the entry of any other consent decree in the Fifth Circuit. A consent decree is a judgment from which Rule 60(b) is designed to grant equitable relief. The United States Supreme Court and the Fifth Circuit have repeatedly, throughout their history, affirmed the propriety of district courts' modifying consent decrees under Rule 60(b) and sanctioned the use of Rule 60(b) motions by parties seeking to alter or amend a consent decree. *See Frew v.*

---

[4] *See* Consent Decree ¶ 303 (Docket No. 135); *Frew v. Hawkins*, 540 U.S. 431.

*Hawkins*, 540 U.S. 431 (2004) ("Rule 60 . . . encompasses the traditional power of a court of equity to modify a consent decree under Ex Parte Young in light of changed circumstances.")[5]; *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992); *System Federation No. 91 Railway Employees' Dep't v. Wright*, 364 U.S. 642 (1961); *Alberti v. Klevenhagen*, 46 F.3d 1347 (5th Cir. 1995) ("[M]odification of a consent decree is governed by the same standards that govern modifications of judgments as set forth in Federal Rule of Civil Procedure 60(b).") (citing *Rufo*, 502 U.S. at 367); *Cooper v. Noble*, 33 F.3d 540 (5th Cir. 1994); *Midland West Corp. v. Federal Deposit Ins. Corp.*, 911 F.2d 1141 (5th Cir. 1990).

### III. A RULE 54(B) DECLARATION IS UNNECESSARY TO PERMIT A RULE 60(B) MOTION

Notably, not a single one of the cases cited above, sanctioning a district court's use of Rule 60(b) to modify a consent decree in light of changed circumstances, addresses a requirement that a party obtain a Rule 54(b) certification before proceeding with a Rule 60(b) motion. The Court is unaware as to how Defendants came to the bizarre conclusion that Rule 54(b) findings are legally required to permit a Rule 60(b) motion; their Notification of Defendants' Withdrawal of Defendants' Rule 60(b) Motion for Relief from Judgment does not cite any case law supporting such a conclusion. Defendants apparently rely on the plain language of Rule 60(b) to craft their argument,[6] although, as cited *infra*, the Supreme Court and the Fifth Circuit have necessarily found, repeatedly, that consent decrees fall within the confines of Rule 60(b)'s "final

---

[5] The Court notes that the Supreme Court, in the *instant action*, directed the Court and the parties that Rule 60(b) is the proper method for Defendants to attempt to have the Consent Decree modified; importantly, the Supreme Court did not mention Rule 54(b) anywhere in the opinion.

[6] The only support Defendants provide for their conclusion that Rule 54(b) findings are necessary to proceed with their Rule 60(b) motion is that "[t]he plain terms of Rule 60(b) do not allow the State to attack anything other than a final judgment." Defendant's Notice at 1.

judgment, order, or proceeding" language.[7]

In the instant action, the claims in Plaintiffs' First Supplemental Complaint were not addressed by the Consent Decree—thus a trial on the merits regarding said claims is still forthcoming. However, the Court has made clear its intention to hear only evidence regarding the subject matter of the Consent Decree at the June 6, 2005, hearing. Although the Court has denied Defendants' Rule 54(b) motion, the Consent Decree is a consent decree, and both the Supreme Court and the Fifth Circuit have sanctioned the use of Rule 60(b) as an equitable remedy to modify consent decrees without mentioning any additional Rule 54(b) declaration as to their nature as judgments. Accordingly, the Court is of the opinion that Defendants seek to withdraw a valid motion.

Defendants apparently hold the naive belief that, due to the Court's denial of their Motion for Entry of Rule 54(b) Findings (Docket No. 504), they are somehow relieved of all obligations under the Consent Decree.[8] Defendants fail to recognize that it has *already* consented to entry of judgment in the form of the Consent Decree, and the Supreme Court has unanimously confirmed its validity. Defendants' attempt to withdraw consent nine years after the fact is, thus, ineffective. The Court's denial of Defendants' Rule 54(b) motion does not change the nature of the Consent Decree or affect the State's voluntary decision to enter into this enforceable judicial decree. The Plaintiffs no longer have the burden of proof with respect to their claims in the Third Amended Complaint; rather, the defendants have the burden of complying with the Consent Decree.

---

[7] FED. R. CIV. P. 60(b), in relevant part, states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application ."

[8] *See* Defendant's Notice at 2 ("[T]he State wishes to give notice that it will not be giving its consent, and will not agree to have, any portion of the Consent Decree entered as a final judgment in this case with respect to any of the claims raised in the Plaintiffs' Third Amended Complaint. Instead, at the first opportunity, the State intends to hold the Plaintiffs to their burden of proof with respect to all of the claims raised in that complaint.")

The Court views Defendant's Notification as a filing probably being presented for an improper purpose, such as to cause unnecessary delay and hinder Plaintiffs' attempts to bring Defendants into compliance with the Consent Decree. The Court has difficulty believing that, to the best of Defendants' knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, Defendants have a good faith belief that their Notification is meritorious or justified by applicable law. *See* FED. R. CIV. P. 11. Nevertheless, the Court will withhold sanctions for Defendants' filing, since it is *possible* that the attorneys for the defendants believed that their ill-conceived "Notification" correctly stated the law.

### IV. THE COURT WILL *SUA SPONTE* HOLD AN EVIDENTIARY HEARING TO DETERMINE WHETHER TO EXERCISE ITS EQUITABLE POWERS TO MODIFY THE CONSENT DECREE

The Court believes that, in the interests of equity and judicial economy, an evidentiary hearing is necessary to understand the factual circumstances surrounding the claims covered by the Consent Decree. "There is little question that the district court has wide discretion to interpret and modify a forward-looking consent decree." *Alberti*, 46 F.3d at 1365. As the Supreme Court has noted, "sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Rufo*, 502 U.S. at 380 (quotations omitted). Importantly, the Court has the discretion to modify the Consent Decree when the Court is made aware that the factual circumstances or the law underlying the Consent Decree has changed–regardless of whether the parties have moved to modify the decree. *See Alberti*, 46 F.3d at 1365-66 ("Concomitant with that discretion is the ability for a court, regardless of the parties' silence or inertia, to modify a decree when the court sees that the factual circumstances or the law underlying that decree has changed."). Indeed, this Court has erred in the past by failing to recognize that it has the discretion to modify a consent decree *sua sponte*. *See United States v. Texas*, 158 F.3d 299 (5th Cir. 1998). The Fifth Circuit "has clearly held that a district court has the authority to modify or terminate a consent decree *sua sponte* when it becomes

manifest that there has been a change in the facts or the underlying law that gave rise to the decree." *Id.* at 312.

In order to determine whether the Court should exercise its equitable power to modify the Consent Decree in the instant case, the June 6, 2005, hearing, formerly scheduled to hear Defendants' Rule 60(b) motion, will instead be used by the Court to hear evidence from all parties regarding the current factual and/or legal circumstances that might warrant, *sua sponte*, changes in the Consent Decree. The evidence presented at this evidentiary hearing will be virtually identical to the evidence which Plaintiffs and Defendants would have presented at the previously scheduled Rule 60(b) hearing; thus, the parties do not need additional discovery or preparation time for this hearing. To clarify, the Court intends the scope of the June 6, 2005, hearing to be identical to the scope of the hearing that was scheduled for Defendants' Rule 60(b) motion—a hearing for which both sides have conducted thorough discovery, and a hearing that has been set down since February 10, 2005. *See* Docket Nos. 457 & 458. Because the scope of the hearing is the same, and all parties have prepared for a June 6, 2005, hearing, no party to the instant action will suffer prejudice. The Court simply expects the parties to inform the Court, to the best of their respective abilities given any perceived time constraints, of any changed factual circumstances warranting changes in the Consent Decree.

As was planned for Defendants' Rule 60(b) hearing, each side will have a total of 20 hours to present evidence, and Defendants will be given the opportunity to present their evidence first. The Court is not inclined to grant any continuances in this matter, as the Court's docket is extraordinarily busy in the near future. Both parties should proceed as they would have for Defendants' Rule 60(b) hearing.

SIGNED this 26th day of May, 2005.

William Wayne Justice
Senior United States District Judge