FOR PRINT PUBICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LINDA FREW, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 3:93-cv-00065 |
| | § | |
| THOMAS SUEHS, et al., | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' RULE 60(b)(5) MOTION AND MOTION TO STRIKE

Before the court are (1) the "Defendants' Rule 60(B)(5) Motion to Modify the Health Outcomes Measures and Dental Assessment Corrective Action Order to Eliminate the Requirements that Defendants Implement a Corrective Action Plan and Conduct a Second Dental Assessment" (Dkt. 766) and (2) the "Defendants Motion to Strike Portions of the Testimony of Drs. Seale, Kennedy, and Nabulsi" (Dkt. 789). For the reasons set forth below, the Defendants' motions are **DENIED**.

**I. BACKGROUND**

A detailed background of this case can be found in previously issued opinions. *See Frew v. Gilbert*, 109 F.Supp. 2d 579 (E.D. Tex. 2000); *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002); *Frew v. Hawkins*, 540 U.S. 431 (2004); *Frew v. Hawkins*, 401 F.Supp. 2d 619 (E.D. Tex. 2005). A brief summary of events, however, is appropriate.

On September 1, 1993, the Plaintiffs filed this lawsuit alleging that the Defendants (the successive commissioners of the Texas Health and Human Services Commission and the Texas Department of Health) did not adequately provide Early, Periodic, Screening, Diagnosis, and

Treatment (EPSDT) services to Medicaid recipients under the age of 21 as required by the Medicaid Act under Title 42, United States Code, Sections 1396a(a)(43); 1396d(r). In Texas, the EPSDT program is referred to as "Texas Health Steps" and is administered jointly by the federal government and the Texas Health and Human Services Commission. The Plaintiffs structured this case as a class action and defined the class broadly to include all Texas youth eligible to receive Medicaid. The Plaintiffs sought injunctive relief to ensure that the state complied with the Medicaid Act. The primary governing documents in this case are the "Consent Decree" (Dkt. 135) and the "Corrective Action Order" (Dkt. 637).

**A. The Consent Decree**

In July 1995, after extensive settlement negotiations, the parties proposed a Consent Decree (Decree) that was subsequently approved by the court on February 16, 1996 (Dkt. 135). The Decree, in effect, is a court-enforced settlement agreement that sets forth a compliance plan for the State's EPDST program. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'") (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992)). The Decree was not intended to resolve all contested issues between the parties. Rather, it was designed to reduce the nature and scope of the litigation. The Decree discusses in detail the areas where the State's current EPSDT program is deficient, sets goals and requirements for improvements, and establishes deadlines for the State's implementation of the improvements.

In 1998, the Plaintiffs moved to enforce the Decree, arguing that the Defendants were not

complying with several of the Decree's provisions (Dkt. 208). Defendants opposed this motion, arguing that their efforts had been sufficient and that, regardless of their efforts, the Eleventh Amendment barred the court from enforcing the Decree. In 2000, this court found that the State had failed to comply with several of the Decree's provisions and that the Eleventh Amendment did not bar enforcement of the Decree. *Frew v. Gilbert*, 109 F.Supp. 2d 579 (E.D. Tex. 2000). On appeal the Fifth Circuit disagreed with the court and held that the Eleventh Amendment barred enforcement of elements of the Decree that were not specifically mandated by the Medicaid Act. *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002). The U.S. Supreme Court reversed the Fifth Circuit, holding that the Decree was enforceable under the principals of *Ex Parte Young*, 209 U.S. 123 (1908) in that the Decree addressed federal interests. *Frew v. Hawkins*, 540 U.S. 431 (2003). The case was remanded to this court for continued oversight.

**B. Corrective Action Order**

In November 2004, the Defendants moved to terminate or alternatively to modify the Decree under Federal Rule of Civil Procedure 60(b)(5) (Dkt. 406). The basis for the Defendants' motion was that even though they had not yet fulfilled the Decree their efforts had brought them into compliance with the Medicaid Act. The court denied the Defendants' motion, holding that compliance with the federal law was not the sole object of the Decree. *Frew v. Hawkins*, 401 F.Supp. 2d 619 (E.D. Tex. 2005). The Defendants' appeals to the Fifth Circuit and the U.S. Supreme Court were unsuccessful. *See Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006), *cert. denied*, 549 U.S. 1118 (2007).

The Plaintiffs eventually filed three other motions relating to enforcement of the Decree (Dkts. 607, 429, 428). In 2007, the parties reached an agreement on the pending motions that set

forth corrective action plans for eleven areas of the EPSDT program that had been addressed in the Decree. The parties filed their proposed agreement with the court on April 27, 2007 (Dkt. 637). The court orally approved the agreement at a July 9, 2007 hearing and subsequently entered the agreement as the Corrective Action Order (CAO) on September 5, 2007 (Dkt. 663).

On April 17, 2009, the case was transferred by the Honorable William Wayne Justice to the undersigned judge (Dkt. 716).

## II. THE INSTANT MOTIONS

The CAO's provisions on "Health Outcomes Measures and Dental Assessment" (Dkt. 637-4) required that Defendants propose within four months after entry of the CAO a plan for a valid and professional study to assess class members' dental health. The CAO also required Defendants to present a dental corrective action plan to Plaintiffs within four months after the completion of the first dental study. Then, within thirty-six months after the parties agree to a corrective action plan, the Defendants are to conduct a second dental study.

These provisions in the CAO are tied to Paragraphs 173 and 174 of the Decree. *See* Dkt. 637-4, pg. 3 ("Decree References"). Paragraph 173 states that "Defendants will report on dental health outcomes in the EPSDT population," and Paragraph 174 states that "Defendants will arrange for a study to assess the dental health of the EPSDT population." Decree (Dkt. 135), pg. 47. These paragraphs from the Decree are noteworthy because the CAO was intended to bring the Defendants into compliance with the Decree. *See* CAO (Dkt. 663), pg. 1 n.1 ("One purpose of the Corrective Action Order is to bring Defendants into compliance with the Consent Decree . . ., which remains in effect. The Court hopes and expects that by complying with the Order, Defendants will also comply with the Decree.").

In July 2008, the parties agreed upon protocols for the first dental study. After completion of the study the Defendants filed the results with the court on December 31, 2009 (Dkt. 747). The study was entitled "Assessment of Child Dental Health Status" (Dental Assessment). During a January 25, 2010 conference call between the parties, the Defendants notified the Plaintiffs that the Dental Assessment results showed that a dental corrective action plan, as required by the CAO, was no longer necessary. The Plaintiffs refused to agree that the study supported eliminating the corrective action plan. On March 30, 2010, the Defendants sent the Plaintiffs a letter stating that if the parties could not agree by April 16, 2010, that a dental corrective action plan was no longer necessary then the Defendants would seek resolution from the court. After the parties were unable to agree on the matter, the Defendants filed this motion on May 27, 2010 (Dkt. 766).[1]

The Defendants' motion seeks to modify the CAO by eliminating the requirements for a dental corrective action plan and a second dental assessment. The Defendants first argue that the Dental Assessment and other statistical evidence show that the objectives of the Decree—increasing participation in the Texas EPSDT program and improving class members'

---

[1]The Decree provides that if the parties cannot come to an agreement about an issue involving the Decree the parties may request relief from the court after giving the opposing party one month's written notice. *See* Paragraph 303 of the Decree (Dkt. 135). The court finds that the Defendants have complied with this provision.

This is not the first time the Defendants have sought relief from provisions in the court's orders that pertain to the state's EPSDT dental program. *See Frew v. Hawkins*, 401 F.Supp. 2d 619, 654-57(E.D. Tex. 2005). Previously, however, the Defendants sought relief not because they had achieved the objectives of the Decree, as they argue in this motion, but because increased participation ratios in the State's EPSDT dental program and Texas' high dental service ranking relative to other states rendered the Decree unnecessary. *Id*. at 654. The court rejected the Defendants' request, finding that their evidence of improvement lacked merit. *Id*. at 657.

dental health—have been achieved and, therefore, corrective action is unnecessary. Specifically, the Defendants argue that the Dental Assessment shows that children enrolled in the Texas EPSDT program experienced dental outcomes that were equal to or better than children not enrolled in the program. They also assert that Texas ranks third in a 2008 state-by-state comparison of EPSDT dental participation rates and that the dental participation rate in the Texas EPSDT program has improved from fourteen percent in 1993 to fifty-eight percent in 2009. Thus, the Defendants argue that with the objectives of the Decree having been achieved, the circumstances have changed for purposes of Rule 60(b)(5) and a dental corrective action plan is no longer necessary.

Next, the Defendants argue that, in addition to there being no need for corrective action, requiring them to implement a dental corrective action plan may "confound" their ability to evaluate the impact of their current efforts to improve the dental health of class members. Finally, the Defendants argue that a second dental assessment is unnecessary because they plan to conduct a second study on their own initiative that will utilize data from the 2012-2013 school year and file the results with the Court.

In response (Dkt. 782), the Plaintiffs make several arguments as to why the court should not relieve the Defendants from the CAO's requirements for a dental corrective action plan and a second dental assessment. The Plaintiffs argue the following: the Dental Assessment was implemented and reported in a flawed manner; the Defendants' other statistical evidence actually supports requiring the Defendants to comply with the CAO's provisions for a dental corrective action and second dental assessment rather than relieving them of those requirements; the results of the Dental Assessment are contrary to other studies and the views of Texas dentists; a one-

time assessment is not enough to establish that the objectives of the Decree have been attained or that they have been attained in a durable manner; and the corrective action will not "confound" the Defendants' own efforts to evaluate their dental efforts under the EPSDT program.

In support of their opposition to the Defendants' motion, the Plaintiffs submitted declarations from Dr. Nancy Sue Seale, Dr. Paul Kennedy III, and Dr. Sari Nabulsi. On April 21, 2010, the Defendants filed a motion to strike portions of these declaration as inadmissible on several grounds (Dkt. 789). The Defendants argue the following: many of Dr. Seale's opinions are conclusory and are not based upon sufficient, relevant facts and or reliable scientific reasoning; Dr. Seale offered impermissible legal conclusions; Dr. Seale offered unreliable, "anecdotal" evidence; both Dr. Seale and Dr. Kennedy offer opinions based on inaccurate factual data; Dr. Kennedy's testimony was based largely on his own limited practice experience; and Dr. Nabulsi's testimony is without sufficient factual and evidentiary support. The Plaintiffs oppose the Defendants' motion to strike, disputing each of the Defendants' assertions.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable." "Rule 60(b)(5) serves a particularly important function in . . . 'institutional reform litigation'" because "injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances . . . ." *Horne v. Flores*, 129 S.Ct. 2579, 2593 (2009). Additionally, "institutional reform injunctions often raise sensitive federalism concerns" because they typically "involve[] areas of core state responsibility" and can have "the effect of dictating state or local budget priorities." *Id*. at 2593-94. Further, consent

decrees can pose risks in that they often "go well beyond what is required" by law and may "'improperly deprive future officials of their designated legislative and executive powers.'" *Id*. at 2594 (quoting *Frew*, 540 U.S. at 441). Thus, "[t]he federal court must exercise its equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the State's obligations is returned promptly to the State and its officials." *Frew*, 540 U.S. at 442.

For these reasons, when considering a request to modify a decree or an order in an institutional reform case, such as the instant case, a district court must take a "flexible approach." *Horne*, 129 S.Ct. at 2594. A flexible approach allows a party seeking modification under Rule 60(b)(5) to prove less than would be required under a strict reading of Rule 60(b). *Frew v. Hawkins*, 401 F.Supp. 2d 619, 685 n.113 (E.D. Tex. 2005). Under the flexible standard, a party seeking modification bears the burden of establishing that a significant change in fact or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 365, 383 (1992).

The Supreme Court has provided a non-exhaustive list of three changes in factual conditions that may warrant modification of a decree: (1) when "changed factual conditions make compliance with the decree substantially more onerous," (2) when "a decree proves to be unworkable because of unforeseen obstacles," or (3) when "enforcement would be detrimental to the public interest." *Rufo*, 502 U.S. at 384-85. Changed factual circumstances may also include when the objects of the decree have been attained and a durable remedy has been implemented. *Evans v. Fenty*, 701 F.Supp. 2d 126, 148 (D.D.C. 2010) (citing *Horne*, 129 S.Ct. at 2595-96). Once the objects of the decree have been attained and a durable remedy has been implemented,

"continued enforcement of the order is not only unnecessary, but improper." *Horne*, 129 S.Ct. at 2595.² Thus, for the court to grant their motion to modify, the Defendants must prove that (1) the circumstances have changed since the CAO was implemented, namely, that the Decree's objectives have been attained and a durable remedy is in place, and (2) the requested relief is suitably tailored to the changed circumstances.

**IV. ANALYSIS**

Mindful of the flexible standard used for modifying consent decrees in institutional reform cases and of the compelling reasons for such a standard as described by the U.S. Supreme Court in *Horne*, the court is nevertheless unable to conclude that the modification sought by the Defendants is warranted under the present circumstances. Therefore, for the reasons set forth below, the Defendants motion to modify the CAO is denied.

As stated by the Defendants, "the critical question in the Rule 60(b)(5) inquiry in the present case is whether the objectives of Paragraphs 173 and 174 of the Consent Decree—increasing participation in the Texas Health Steps dental health care program and improving class members' dental health—have been achieved." Dkt. 766, pg. 10. The Defendants' primary contention is that the results of the dental assessment and other statistical evidence show that the objectives of the Decree have already been attained and therefore, the circumstances having

---

²*Horne* did not address what constitutes a "durable remedy." One federal court recently described a durable remedy under *Horne* as a "remedy that gives the Court confidence that defendants will not resume their violations of plaintiff's constitutional rights once judicial oversight ends." *Evans v. Fenty*, 701 F.Supp. 2d 126, 171 (D.D.C. 2010). *See also LaShawn A. Ex. Rel. Moore v. Fenty*, 701 F.Supp. 2d 84, 111 (D.D.C. 2010) (a remedy is durable if it is "unlikely that the prohibited conditions or actions will recur."); *Consumer Advisory Bd. v. Harvey*, No. 2:91-CV-00321, 2009 WL 5792159, at *11 (D. Me. Oct. 9, 2009) (a "durable remedy" is the equivalent of having in place "a mechanism for future compliance.").

changed, the CAO's requirements for a dental corrective action plan and a second dental study are now unnecessary. However, because the court finds that the Defendants have failed to show changes in the dental health of class members over a period of time, the court is unable to conclude that the objectives of the Decree have been attained and, consequently, that the Defendants' requested relief is warranted.

As noted earlier, the provisions in the CAO from which the Defendants seek relief are tied to Paragraphs 173 and 174 of the Decree. *See supra* Part II. Paragraph 173 states that "Defendants will report on dental health outcomes in the EPSDT population. If the EPSDT dental program works, the incidence of dental disease in the EPSDT population should decrease *over time* . . . ." Decree (Dkt. 135), pg. 47 (emphasis added). Paragraph 174 states that "Defendants will arrange for a study to assess the dental health of the EPSDT population. The study will assess changes *over time*." *Id*. (emphasis added). Thus, the Decree requires the Defendants to assess changes in the dental health of class members "over time."[3] The Defendants have not yet fulfilled this requirement. The first dental assessment does not measure changes in the dental health of class members "over time." As one of the Defendants' own experts explained, "the survey only provides a snapshot of the situation at one point in time . . . ." Dkt. 787-2 (Declaration of Dr. Gita Mirchandani), pg. 9.

Not only did the parties agree upon language requiring assessment over time, the court finds that assessment over time is the most reliable way in which to judge whether the Decree's

---

[3] In addition to the Decree's requirement for assessment "over time," the CAO includes language suggesting that the appropriate time for judging whether the Decree's objectives have been met is after the second dental study has been conducted: "[w]hen the two dental studies are complete, counsel will confer to determine what further action, *if any*, is required." Dkt. 637-4, pg. 5 (emphasis added).

objectives have been achieved. Without such an assessment, the court cannot determine with assurance whether the first assessment represents a steadfast trend or an aberration. Acknowledging this as a limitation of the study, the Defendants' expert stated that "[i]t is very possible that had the survey been undertaken at another point in time, say towards the end of the school year, these children would have been shown to have [different dental health outcomes]." *Id*. (suggesting that dental health outcomes could have improved if measured at a later date).

Because the Defendants ask the court to eliminate substantive provisions from the parties' carefully negotiated agreement, even under a flexible standard the court must be assured that the Decree's objectives have been attained. Unfortunately, because the dental assessment, by itself, provides only a snapshot view of the dental health of class members, the court is unable to draw this conclusion. Accordingly, the court finds that the Defendants' requested relief is not warranted.

As evidence of changed circumstances, namely, that the objectives of the Decree have been achieved, the Defendants also cite a 2008 state-by-state comparison of EPSDT dental participation rates that ranks Texas third in the nation. Additionally, they claim that dental participation rates in the Texas Health Steps Program have improved from fourteen percent in 1993 to fifty-eight percent in 2009. The Defendants made similar arguments in 2005 that the court rejected, finding the evidence unconvincing. *See Frew v. Hawkins*, 401 F.Supp. 2d 619, 654-57 (E.D. Tex. 2005). Nevertheless, because the court finds that the Defendants have not proved changed circumstances in the dental health of class members, the court need not decide whether the circumstances have changed with regards to participation rates. In order for the court to grant the Defendants' requested relief, the court would have to be satisfied that the Defendants

had attained both objectives of the Decree.

In addition to changed circumstances in the dental health of class members and participation rates, the court must also be convinced that the Defendants have in place a remedy that is durable. *See supra* Part III. The first dental assessment by itself is not evidence of a durable remedy because it reveals nothing about the sustainability of any progress the Defendants have made. The Defendants must provide evidence that gives the court confidence that the dental health conditions of class members for which the Decree and CAO were meant to remedy will not recur. A single snapshot view of the circumstances combined with statements about the durability of the remedy that are merely conclusory do not suffice. Consequently, the court is unable to conclude that under the present circumstances the Defendants have in place a remedy that is durable.

The Defendants also argue that having to conduct a dental corrective action plan as required by the CAO will "confound" their ability to evaluate their current efforts to improve the dental health of class members. The Defendants do not explain how this argument fits within the standard recognized by the Supreme Court for determining whether to modify an order via Rule 60(b)(5). *See supra* Part III. Specifically, the Defendants do not explain how their argument constitutes a change of circumstances that would justify modifying the CAO as the Defendants have requested.

Instead, the Defendants argue that they should not have to take corrective action because "[i]t is too soon to evaluate the impact of Defendants' recent efforts to improve class members' dental health," and that "changing direction prematurely could have the unintended consequences of thwarting the benefit of these current and ongoing activities." Dkt. 766, pg. 16. The court is

perplexed by this assertion as it seemingly contradicts the Defendants' primary contention for their requested relief, namely, that the Defendants' efforts have conclusively achieved the objectives of the Decree. Moreover, in addition to showing that changed circumstances warrant the requested relief, the Defendants must also establish that the proposed relief is suitably tailored or proportionate to the changed circumstances. *See supra* Part III. The court finds that the Defendants' requested relief, eliminating the requirement for corrective action altogether, is not suitably tailored to what is essentially a concern about timing.

The Defendants also argue that they are already planning to conduct a second study of the dental health of class members from data collected during the 2012-2013 school year and therefore, a second dental assessment as required by the CAO is unnecessary. Again, the Defendants do not explain how this argument fits within the standard recognized by the U.S. Supreme Court for determining whether to modify an order via Rule 60(b)(5). *See supra* Part III. Nevertheless, the court finds that this argument lacks merit. The court will not eliminate a provision in the parties carefully negotiated agreement simply because the Defendants are now planning to conduct a similar study on their own initiative. If the Defendants prefer the attributes of the plan they wish to conduct over the study required by the CAO, they are free to negotiate with the Plaintiffs to modify what is required by the CAO.

Finally, the Defendants argue that the corrective action plan should be eliminated because plaintiffs have not "made particular suggestions about either the need for, or details of, a corrective action plan . . . ." Dkt. 787, pg. 2, 9-11. Defendants' argument is mistaken because the Plaintiffs do not have to prove that the corrective action plan remains necessary. In a Rule 60(b)(5) motion, the burden of establishing that a modification is needed is on the party seeking

the modification. *See supra* Part III. Further, under the CAO, the Plaintiffs are not required to make suggestions about a corrective action plan until the Defendants have presented a corrective action plan, which the Defendants have yet to do. Dkt. 637-4, pg. 5.

As explained earlier, the Defendants have also filed a motion to strike portions of the declarations that the Plaintiffs attached to their responses to the instant motion. The Plaintiffs' declarations contain testimony from experts who, for various reasons, question both the reliability of the first dental assessment and the Defendants' interpretation of it. The Defendants argue on several grounds that these declarations are inadmissable. *See supra* Part II. However, because the court's ruling is based on the snapshot nature of the assessment, rather than the reliability of its findings or how it should be interpreted, the court did not rely on the Plaintiffs' declarations in making its ruling. Consequently, the court finds that the Defendants' motion to strike is moot and therefore denied.

## V. CONCLUSION

Undoubtedly the Defendants have made strides toward improving the dental health of class members, as the Plaintiffs themselves acknowledge. However, even under a flexible standard, the court is unable to conclude under the present circumstances that the objectives of the Decree have been attained and that a corrective action plan and second dental study are no longer necessary. The court finds that the Defendants have not met their burden to prove that their requested relief is warranted. Accordingly, their Rule 60(b)(5) motion to modify (Dkt. 766) is **DENIED**. In addition, for the reasons set forth above, the Defendants' motion to strike (Dkt. 789) is also **DENIED**.

The Defendants are ordered to present a dental corrective action plan to the Plaintiffs

within 120 days of this order. For the second dental assessment the court urges the parties to agree on all aspects of the study before it is conducted, including the specifics of its implementation.

**IT IS SO ORDERED**.

**SIGNED this the 30th day of March, 2011.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE