FOR PRINT PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| LINDA FREW, et al. | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 3:93-CV-65 |
| | § | |
| KYLE L. JANEK, M.D., | § | |
| *Defendants.* | § | |

**ORDER ON PLAINTIFFS' MOTION FOR FURTHER ACTION FOLLOWING
CORRECTIVE ACTION ORDER: CHECKUP REPORTS & LAGGING COUNTIES &
DEFENDANTS' MOTION TO MODIFY**

Pending before the court is Plaintiffs' Motion for Further Action Following Corrective Action Order: Checkup Reports and Plans for Lagging Counties (Dkt. 922), Defendants' Response (Dkt. 923), and Plaintiffs' Reply (Dkt. 956); Defendants' Motion to Modify the Consent Decree (Dkt. 932), Plaintiffs' Response (Dkt. 940), Defendants' Reply (Dkt. 955), and Plaintiffs' Sur-reply (Dkt. 959); as well as Defendants' Motion for Stay of Statewideness Portion of Consent Decree (Dkt. 953), Plaintiffs' Response (Dkt. 962), Defendants' Reply (Dkt. 965), and Plaintiffs' Sur-Reply (Dkt. 968). The court held a hearing on January 8, 2013 and heard argument from the parties on these pending motions. The parties supplemented their briefing with short letter briefs to address issues that arose during the hearing (Dkts. 994, 999). After considering the briefing and the arguments of both parties, the court is of the opinion that Plaintiffs' Motion for Further Action (Dkt. 922) should be **DENIED**, Defendants' Motion to Modify the Consent Decree (Dkt. 932) should be **GRANTED**, and Defendants' Motion to Stay (Dkt. 953) is **DENIED** as moot.

## I.   BACKGROUND

A detailed background of this case can be found in previously issued opinions.[1] On September 1, 1993, Plaintiffs filed this lawsuit alleging that Defendants (the successive commissioners of the Texas Health and Human Services Commission and the Texas Department of Health) did not adequately provide Early Periodic Screening, Diagnosis and Treatment (EPSDT) services to Medicaid recipients under the age of twenty-one as required by the Medicaid Act, Title 42, United States Code, Sections 1396a(a)(43) and 1396d(r). In Texas, the EPSDT program is referred to as "Texas Health Steps" and is administered jointly by the federal government and the Texas Health and Human Services Commission. The Plaintiffs structured this case as a class action and defined the class broadly to include all Texas youth eligible to receive Medicaid. The Plaintiffs sought injunctive relief to ensure that the state complied with the Medicaid Act. The primary governing documents in this case are the "Consent Decree" (Dkt. 135) and the "Corrective Action Order" (Dkt. 637).

### a.  The Consent Decree

In July 1995, after extensive settlement negotiations, the parties proposed a Consent Decree that was subsequently approved by the court on February 16, 1996 (Dkt. 135). The Decree is a court-enforced settlement agreement that sets forth a compliance plan for the State's EPSDT program.[2] The Decree was not intended to resolve all the contested issues between the parties. Rather, it was designed to reduce the nature and scope of the litigation. The Decree

---

[1] *See Frew v. Gilbert*, 109 F. Supp. 2d 579 (E.D. Tex. 2000); *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002); *Frew v. Hawkins*, 540 U.S. 431 (2004); *Frew v. Hawkins*, 401 F. Supp. 2d 619 (E.D. Tex. 2005); *Frew v. Suehs*, 775 F. Supp. 2d 930 (E.D. Tex. 2011).

[2] *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("A consent decree 'embodies an  agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'") (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992)).

discusses in detail the areas in which the State's EPSDT program was deficient, sets goals and requirements for improvements, and establishes deadlines for the State's implementation of the improvements.

In 1998, Plaintiffs moved to enforce the Decree, arguing that Defendants were not complying with several of the Decree's provisions (Dkt. 208). Defendants opposed the motion, arguing that their efforts had been sufficient and that, regardless of their efforts, the Eleventh Amendment barred the court from enforcing the Decree. In 2000, this court held that the State had failed to comply with several of the Decree's provisions and that the Eleventh Amendment did not bar enforcement of the Decree.[3] On appeal, the Fifth Circuit disagreed with the court and held that the Eleventh Amendment barred enforcement of elements of the Decree that were not specifically mandated by the Medicaid Act.[4] The U.S. Supreme Court reversed the Fifth Circuit, holding that the Decree was enforceable under the principals of *Ex Parte Young*, 209 U.S. 123 (1908) because the Decree addressed federal interests.[5] The case was remanded to this court for continued oversight.

### b.  The Corrective Action Orders

In November 2004, Defendants moved to terminate or alternatively to modify the Decree under Federal Rule of Civil Procedure 60(b)(5) (Dkt. 406). The basis for Defendants' motion was that even though they had not yet fulfilled the Decree their efforts had brought them into compliance with the Medicaid Act. The court denied the Defendants' motion, holding that

---

[3] *Frew v. Gilbert*, 109 F. Supp. 2d 579 (E.D. Tex. 2000).
[4] *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002).
[5] *Frew v. Hawkins*, 540 U.S. 431 (2003).

compliance with the federal law was not the sole object of the Decree.[6] Defendants' appeals to the Fifth Circuit and the U.S. Supreme Court were unsuccessful.[7]

Plaintiffs eventually filed three other motions relating to enforcement of the Decree (Dkts. 607, 429, 428). In 2007, the parties reached an agreement on the pending motions that set forth corrective action plans for eleven areas of the EPSDT program that had been addressed in the Decree. The parties filed their proposed agreement with the court on April 27, 2007 (Dkt. 637). The court orally approved the agreement at a July 9, 2007 hearing and subsequently entered the agreement as the Corrective Action Order (CAO) on September 5, 2007 (Dkt. 663). On April 17, 2009, the case was transferred by the Honorable William Wayne Justice to the undersigned judge (Dkt. 716).

The Corrective Action Order presently at issue is Dkt. 637-3. It required Defendants to make a series of annual reports regarding the receipt of medical and dental checkups for class members from 2007-2011 and to create and implement corrective action plans for improving service utilization in counties that lagged behind the state average.[8] Defendants now represent that they have complied with the obligations set forth in CAO 637-3 and paragraphs 271-281 of the Decree. Plaintiffs disagree and request the court to order Defendants to take further action.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 60(b)(5) permits a party to obtain relief from a judgment or order if: (1) the judgment has been satisfied, released, or discharged; (2) it is based on an earlier judgment that has been reversed or vacated; or (3) applying it prospectively is no longer equitable. "Rule 60(b)(5) serves a particularly important function in . . . institutional

---

[6] *Frew v. Hawkins*, 401 F. Supp. 2d 619 (E.D. Tex. 2005).
[7] *See Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006), *cert. denied*, 549 U.S. 1118 (2007).
[8] Corrective Action Order: Check Up Reports and Plans for Lagging Counties, Dkt. 637-3 [hereinafter CAO 637-3].

reform litigation" because "injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances."[9] Indeed, "institutional reform injunctions often raise sensitive federalism concerns."[10] "Federalism concerns are heightened when, as in these cases, a federal court decree has the effect of dictating state or local budget priorities."[11] Consent decrees often "go well beyond what is required" by underlying statutes and may "improperly deprive future officials of their designated legislative and executive powers."[12] "Where state and local officials inherit overbroad or outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents, they are constrained in their ability to fulfill their duties as democratically-elected officials."[13] Accordingly, federal courts must "exercise [their] equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the State's obligation is returned promptly to the State and its officials."[14]

Courts take a "flexible approach" when considering a motion to modify a decree on the basis that its prospective application would be inequitable.[15] Under this approach, a party seeking modification of a decree bears the burden of establishing that (1) a significant change in fact or law warrants revision of the decree; and (2) that the proposed modification is suitably tailored to the changed circumstances.[16] For instance, modification of a decree may be justified by a significant change in fact when (1) "changed factual conditions make compliance with the decree substantially more onerous," (2) "a decree proves to be unworkable because of unforeseen

[9] *Horne v. Flores*, 557 U.S. 433, 448 (2009) (internal quotation marks and citations omitted).
[10] *Id.*
[11] *Id.*
[12] *Id.* at 448-49 (internal quotation marks omitted).
[13] *Id.* at 449-50 (internal quotation marks omitted).
[14] *Frew v. Hawkins*, 540 U.S. 431, 442 (2004).
[15] *Horne*, 557 U.S. at 450.
[16] *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 365, 383 (1992).

obstacles," or (3) "enforcement would be detrimental to the public interest."[17] Changed factual circumstances may also include when the objects of the decree have been attained and a durable remedy has been implemented.[18] A durable remedy is one that "gives the [c]ourt confidence that defendants will not resume their violations of a plaintiff's constitutional rights once judicial oversight ends."[19] At that point, "continued enforcement of the order is not only unnecessary, but improper" and the court "abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes."[20]

## III.   ANALYSIS

### a.  Plaintiffs' Motion for Further Action (Dkt. 922)

Plaintiffs' motion seeks an order from this court requiring Defendants to take further action pursuant to CAO 637-3 by developing proposals to increase utilization rates in lagging counties. Plaintiffs do not identify any specific actions they wish Defendants to implement. Defendants oppose the motion and maintain that they have fulfilled the requirements of CAO 637-3 and should not be required to perform any further acts under its terms.

The Medicaid Act provision at issue, 42 U.S.C. § 1396a(a)(1), requires a state plan for medical assistance be "in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them."[21] To fulfill this requirement, the Consent Decree details a process by which Defendants are obligated to monitor the participation of class members in EPSDT checkups throughout the state, measure participation by county, and develop corrective action plans for counties that lag behind the state average so that participation in those counties

---

[17] *Id.* at 384-85.
[18] *Evans v. Fenty*, 701 F. Supp. 2d 126, 148 (D.D.C. 2010).
[19] *Id.* at 171.
[20] *Horne v. Flores*, 557 U.S. 433, 447, 450 (2009).
[21] 42 U.S.C. § 1396a(a)(1).

improves.[22] The Decree gives Defendants discretion to use one or more appropriate means to improve participation in lagging counties.[23] CAO 637-3 was intended to enforce the "Statewideness" provisions of the Decree by establishing a series of annual reports and corrective action plans that Defendants were required to complete from 2008-2011.

Plaintiffs concede that CAO 637-3 has been satisfied on its terms and no further action is required by Defendants to fulfill their obligations under it.[24] Plaintiffs admit that utilization rates in lagging counties have improved but argue that Defendants have not complied with the objectives of the Decree because utilization rates in lagging counties are still low.[25] Neither the Decree nor CAO 637-3 identify a specific percentage point increase in utilization rates that Defendants are required to obtain before the court may deem them in compliance with the order. The Decree and the CAO seek improvement in lagging counties. The Decree lists as its objectives "enhancing recipients' access" and "fostering the improved use of health care services by Texas EPSDT recipients."[26] The Decree further explains that its "Statewideness" provisions (paragraphs 271-281) are "intended to prevent areas of the state from lagging behind even if the percent of recipients who receive services in the state as a whole increases."[27]

Plaintiffs' argument would require the court to create and read into the Decree and the CAO more than what is required by agreed-upon terms. The terms of a consent decree "are arrived at through mutual agreement of the parties" after careful negotiation, and "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at

---

[22] Consent Decree ¶¶ 271-281, Dkt. 135.
[23] Consent Decree ¶ 281, Dkt. 135.
[24] Hr'g Tr. 124:22-25, Jan. 8, 2013.
[25] Hr'g Tr. 40:25, Jan. 8, 2013.
[26] Consent Decree ¶ 6, Dkt. 135.
[27] Consent Decree ¶ 274, Dkt. 135.

all."[28] "Courts should not impose their own terms within a consent decree and should read consent decree terms by their plain meaning."[29] A consent decree embodies agreements reached "after careful negotiation has produced agreement on [its] precise terms."[30] "[W]hen a contract is expressed in unambiguous language, its terms will be given their plain meaning and enforced as written."[31] Plaintiffs agree that Defendants have increased utilization rates, and the court cannot now create additional requirements merely because Plaintiffs are dissatisfied with the results of a process to which they agreed and consented. Neither the Decree nor the CAO indicate how much improvement is required or provide any other basis for the court to order further action by Defendants at this point. Plaintiffs' belief that Defendants' could have done more is also insufficient for the court to order any further action based on the terms of CAO 637-3. The Decree explicitly gives Defendants discretion "to use one or more appropriate means to improve participation in each county."[32] The Decree contains no requirements that Defendants utilize all appropriate means or that Plaintiffs maintain final approval over the appropriate means Defendants employ.Defendants have complied with the terms of CAO 637-3, and Plaintiffs' motion for further action under CAO 637-3 is accordingly **DENIED.**

b.  **Defendants' Rule 60(b)(5) Motion (Dkt. 932)**

i.  ***Defendants' have satisfied the terms of the Statewideness portion of the Consent Decree under Rule 60(b)(5).***

Defendants move the court to modify the Decree by eliminating the "Statewideness" provisions of the Decree in paragraphs 271-281 under Rule 60(b)(5). Defendants first argue that they have complied with all of the requirements of paragraphs 271-281 through their completion

[28] *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519, 522 (1986).
[29] *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008).
[30] *Local No. 93*, 478 U.S. at 522.
[31] *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998).
[32] Consent Decree ¶ 281, Dkt. 135.

of the requirements of CAO 637-3, and therefore the Decree has been satisfied. This court's previous order makes clear that "[o]nce Defendants comply with that part of the Decree and the related section of the Corrective Action Order, then the court may terminate that part of the Decree and the related section of the Corrective Action Order"[33] and that the CAOs were intended to "provide[] a clear potential end point for Defendants' obligations under the Consent Decree."[34] Defendants reason that if they are in compliance with the terms of the CAO, the Decree, and with the underlying statute, there is no reason to continue this court's supervision of the dispute.

The Decree's Statewideness provisions requires Defendants to "annually monitor the percent of recipients who receive EPSDT check ups throughout Texas and locally, and increase the percent of recipients who receive check ups in areas where that percent is low."[35] To do this, Defendants are required to (1) measure the percent of EPSDT recipients who receive medical and dental checkups, (2) develop a statistically valid method to determine which counties lag behind the state average in percentage of recipients who receive the checkups to which they are entitled, (3) complete an annual analysis and identify the counties that lag behind the state average for the duration of the agreement and (4) develop and implement a corrective action plan to increase utilization rates in those lagging counties.[36] CAO 637-3, in effect from 2007-2011, clarified and supplemented the requirements of the Statewideness provisions of the Decree.

---

[33] Mem. Op. 15, Dkt 663.
[34] *Id.*
[35] Consent Decree ¶ 273, Dkt. 135.
[36] Consent Decree ¶¶ 171-281, Dkt. 135.

Defendants now seek removal of paragraphs 271-281 of the Decree based on their compliance with CAO 637-3.[37]

Defendants assert that Exhibits 1-4 and 5-8 attached to their Response to Plaintiffs' Motion for Further Action (Dkt. 923) constitute evidence of their compliance with paragraphs 271-281 of the Decree and CAO 637-3. Exhibits 1-4 are the required annual reports and Exhibits 5-8 are the corrective action plans created and implemented in response to the reports. Plaintiffs respond that while Defendants may have technically complied with all the requirements of the Statewideness provisions, they failed to achieve the objective of the Decree or demonstrate that a durable remedy is in place.[38] Plaintiffs contend that Defendants' allegedly minimal efforts at compliance and miniscule improvements in the percentages of class members receiving timely checkups in lagging counties does not show that they have complied with the Decree and therefore Defendants should not be released from their obligations under the Statewideness provisions.[39]

Generally, the Decree "speaks to the broader goals of enhancing recipients' access to health care and improving the use of health care services by Texas EPSDT recipients."[40] Plaintiffs specifically rely on paragraphs 2, 6, and 192 to support their argument. Paragraph 2 states:

> EPSDT is intended to provide comprehensive, timely and cost effective health services to indigent children and teenagers who qualify for Medicaid benefits. Check ups are the cornerstone of the program. They assess recipients' health, provide preventive care and counseling (anticipatory guidance) and make referrals for other needed diagnosis and treatment. 42 U.S.C. §§ 1396(a)(43); 1396(d). Recipients are entitled to both medical and dental check ups on a regular

---

[37] CAO 637-3 indicates that its corresponding Decree provisions are paragraphs 171-72, 191, 199, 204-12, 271-81, and 283-84; however, Defendants only seek removal of paragraphs 271-281 of the Decree.
[38] Pl.'s Mot. 5, Dkt. 922; Hr'g Tr. 124:22-25, Jan. 8, 2013.
[39] Pl.'s Mot. 5-6, Dkt. 922.
[40] *Frazar v. Ladd*, 457 F.3d 432, 439 (5th Cir. 2006).

schedule. About 48% of recipients received at least one medical check up in fiscal year 1994 (FY94), according to reports Defendants filed with United States Department of Health and Human Services.

Paragraph 6 reads:

> "To address the parties' concerns, to enhance recipients' access to health care, and to foster the improved use of health care services by Texas EPSDT recipients, the parties agree and the Court orders Defendants to implement the following changes and procedures of the Texas EPSDT program:"

Paragraph 192, which is located in the section of the Decree relating to "Recipients in Managed Care," reads:

> "TDH will assure by various means that managed care organizations provide medical and dental check ups to newly enrolled recipients no later than 90 days after enrollment except when recipients knowingly and voluntarily decline or refuse services. Managed care organizations will also have the capacity to accelerate services to the children of migrant farmworkers to accommodate their special circumstances. TDH will also assure medical and dental check ups in a timely manner to all recipients."

This paragraph, located on page 52 of the Decree, is under the subheading "Recipients in Managed Care," which begins on page 50. Paragraphs 184-199 address Defendants' responsibilities with regard to managed-care organizations. The court reads paragraph 192 in this context, because "[g]eneral principles of contract interpretation govern the interpretation of a consent decree."[41] Therefore, TDH's ("Texas Department of Health") responsibility under this paragraph is to assure recipients in managed care timely medical and dental checkups. This paragraph does not add to Defendants' responsibilities under the Statewideness provisions in paragraphs 271-281.

Plaintiffs admit that the lagging county median percentage of class members receiving required medical checkups increased by 5.6 percentage points during the four years of the

---

[41] *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998).

CAO.[42] According to Dkt. 955-4 ("Texas Health Steps Medical Checkup Utilization in Counties that Lagged 2007-2011"), the majority of the sixty-five counties that were classified as lagging sometime between 2007-2011 have seen an increase in utilization rates for medical checkups. Four counties lagged each year, but each also experienced an increase in utilization.[43] Only five counties ended the time period with a lower percent of utilization than the first year in which the county lagged.[44] Only eight of the counties that lagged for the first time in 2011 actually saw a decrease in utilization rates for that year.[45] Plaintiffs admit that during the final year of the CAO, median percentage utilization rates for class members getting the required dental checkups rose by 4.4 percentage points from the first year of the CAO.[46] As shown in Dkt. 955-5 ("Texas Health Steps Dental Checkup Utilization in Counties that Lagged 2007-2011"), only one county experienced a decrease in utilization rates from the first year it was classified as lagging.[47] Of the four counties that were classified as lagging for the first time in 2011, all of them had experienced an increase in utilization rates since 2007.[48] Only four counties lagged each year, but each of them experienced an increase in utilization by 2011.[49] Defendants also pointed out that as of August 2012 "medical checkup participation has improved so that 25 counties that previously lagged no longer do. Of the remaining counties, 19 have shown improvement."[50]

If the purpose of the Decree is to "enhance recipients' access to health care, and to foster the improved use of health care services by Texas EPSDT recipients," it appears that Defendants

---

[42] Pl.'s Mot. 7, Dkt. 922; Hr'g Tr. 40:25, Jan. 8, 2013.
[43] Archer County, Jones County, Sabine County, and Scurry County.
[44] Carson County, Hunt County, Mitchell County, and Sterling County.
[45] Walker County, Stonewall County, San Saba County, Real County, Mason County, Llano County, Haskell County, Gray County, and Concho County.
[46] Pl.'s Mot. 7, Dkt. 922.
[47] Oldham County.
[48] Crockett County, Live Oak County, Sabine County, and Sutton County.
[49] Brewster County, Howard County, Ochiltree County, and Scurry County.
[50] Def.'s Resp. 7-8, Dkt. 923.

have done so. Plaintiffs have not cited to any authority to support their argument that a "minimal" increase, as it is characterized by Plaintiffs, would not satisfy the objectives of the Decree. The Decree does not contain any provisions that would indicate an amount of increase that either would or would not satisfy the goals of the Decree.

Plaintiffs next argue that Defendants have not satisfied the terms of the Decree because of their failure to employ or to maintain their ability to employ all of the appropriate means to increase utilization enumerated in the paragraph 281 of the Decree. But the Decree does not mandate that Defendants retain the ability to use all of the appropriate means listed throughout the duration of the Decree. Further, the Decree does not require the use of any one particular appropriate means or all of the enumerated appropriate means. It merely gives Defendants discretion to choose *one or more* of the listed appropriate means. The Decree also does not indicate that the list of appropriate means is exhaustive or exclusive.

Finally, Plaintiffs contend that Defendants have not complied with the Decree because they failed to acknowledge trends or patterns in their annual reports as required by the CAO.[51] Both parties announced at the start of the January 8, 2013 hearing that they did not intend to call witnesses or present any evidence other than the numerous exhibits attached to the motions and responses. Plaintiffs have not pointed to any expert testimony or reports to support the argument that Defendants have failed to properly analyze trends or patterns in their annual reports. Yet even if the Defendants failed to comply with the Decree by not identifying patterns or trends in the data collected, Defendants have demonstrated sufficient changed factual circumstances to warrant modification of the Decree.

---

[51] Pl.'s Mot 15, Dkt. 922.

### ii. *Prospective application of the Statewideness provisions of the Consent Decree is no longer equitable under Rule 60(b)(5).*

1. A significant change in factual circumstances warrants revision of the Decree.

At the January 8, 2013 hearing on this motion, Defendants explained that "[i]n 1993 when the *Frew* lawsuit was filed, most Medicaid services were delivered through a fee-for-service model," and the state was "piloting managed care in one county at the direction of the state legislature."[52] In 1996 when the Decree was entered, "most Medicaid services were provided through fee-for-service, class members found their own providers, [and] state health services had public health clinics throughout the state."[53] But now, "Medicaid managed care has been expanded throughout Texas," and managed-care organizations "serve as the delivery models for medical care and dental care in all 254 counties in the state."[54]

Plaintiffs respond that this change was anticipated by the parties at the time they agreed to the Decree and cannot justify modification of the Decree. But a change in factual circumstances does not have to be unforeseen to warrant modification to a decree.[55] Although Defendants were piloting a managed-care delivery model in some counties at the time of the Decree, there is no evidence that Defendants entered the Decree knowing that it would ultimately become fruitless and they could then avoid their agreed-to responsibilities. The fact that the state legislature ultimately saw fit to implement managed-care statewide over the seventeen years that this Decree has been in place hardly suggests that is the case. Nevertheless, a "change in factual circumstances, without more, is thus insufficient to warrant modification of a consent decree in the Fifth Circuit; the moving party must additionally show how the change in factual

---

[52] Hr'g Tr. 29:1-9, Jan. 8, 2013.
[53] Hr'g Tr. 110:9-13, Jan. 8, 2013.
[54] Hr'g Tr. 29:1-9, Jan. 8, 2013.
[55] *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992).

circumstances warrants modification of the consent decree by showing that those changes affect

compliance with, or the workability or enforcement of, the final judgment."[56]

Defendants assert that the statistics reported in compliance with the Statewideness

provisions of the Decree have become a "meaningless measurement with little statistical,

predictive, or evaluative value" because of the shift to a managed-care delivery model within the

state.[57] Further, corrective action plans "targeting lagging counties are duplicative of efforts

already underway across the state," and "statewide managed care renders the practice moot, in

light of efforts and contractual requirements imposed on Medicaid managed care

organizations."[58] The managed-care model that has been implemented statewide does not

provide services on a county-by-county basis, making an analysis by county less suitable in

assessing what actions can be taken to improve utilization rates. Instead each managed-care

organization is responsible for a particular service delivery area, which may cover portions of

more than one county. Further, managed-care organizations are required to develop a network of

providers to ensure that enrollees have access to a primary care physician and a dentist within

thirty miles of their homes and access to common medical professionals within seventy-five

miles of their homes and are required to regularly report to the Texas Health and Human

Services Commission on the adequacy of their networks.[59] This major restructuring of the

Medicaid delivery model statewide constitutes sufficiently changed factual circumstances to

warrant modification of Statewideness provisions of the Decree.

---

[56] *Frew v. Hawkins*, 401 F. Supp. 2d 619, 630 (E.D. Tex. 2005) (internal quotation marks omitted).
[57] Def.'s Resp. Ex. 9, Dkt. 923-14.
[58] Def.'s Resp. Ex. 9, Dkt. 923-14.
[59] Hr'g Tr. 110:21-111:4, Jan. 8, 2013.

2. The proposed modification is suitably tailored to the changed circumstances.

Defendants seek removal only of paragraphs 271-281 of the Decree, and this proposed modification is suitably tailored to the changed circumstances. The modification proposed by Defendants is appropriate given their compliance with the terms of the Statewideness provisions and the corresponding CAO 637-3. Defendants are still required to comply with the terms of the agreed-upon Decree regardless of whether their actions put them in compliance with federal law. However, Defendants have complied with the terms of CAO 637-3, which was designed to enforce the Statewideness provisions of the Decree, and the change in factual circumstances in the intervening seventeen years warrants removal of paragraphs 271-281 of the Decree. The court reminds the parties that the remaining provisions of the Decree and CAOs remain in place. Specifically, paragraphs 184-199 and CAOs 637-4 and 637-6 relating to managed-care organizations preserve Defendants' responsibilities for ensuring adequate provision of EPSDT services to class members despite the switch to a managed-care model. Indeed, Plaintiffs admitted during oral argument that had Defendants proposed the transition to a managed-care delivery model as a corrective action plan to comply with the Statewideness provisions of the Decree, that transition would have been adequate to comply with the Decree.[60] Ultimately the proposed modification furthers the primary goals of the decree by removing provisions that have become outdated, but leaving in place those that will enhance recipients' access to health care and improve the use of health care services by Texas EPSDT recipients through utilization of a managed-care model.

---

[60] Hr'g Tr. 60:7-8, Jan. 8, 2013.

## IV.    CONCLUSION

"[T]he longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic process."[61] The changed factual circumstances with respect to Defendants' implementation of a statewide managed-care model warrant modification of the Decree in this instance. Paragraphs 271-281 of the Decree are no longer necessary, and Defendants are no longer obligated to make the reports required by Statewideness provisions. CAO 637-3 has been fully complied with and no further action is required by Defendants pursuant to its terms.

The court declines to address whether an ongoing violation of the underlying Medicaid statute exists at this time and reminds the Defendants that they remain bound by the terms of the Decree regardless of whether they believe they are in compliance with the statute.[62] The remaining provisions of the Decree and the CAOs continue in force and are unmodified by this order.

IT IS SO ORDERED.

**SIGNED this the 28th day of March, 2013.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[61] *Horne v. Flores*, 557 U.S. 433, 453 (2009).

[62] *See Horne*, 557 U.S. at 454 ("To determine the merits of this claim, the Court of Appeals needed to ascertain whether ongoing enforcement of the original order was supported by an ongoing violation of federal law."); *Frew v. Hawkins*, 401 F. Supp. 2d 619, 635 (E.D. Tex. 2005) ("While compliance with federal law may be one factor in assessing changed factual circumstances, it is neither the focus of the Court's inquiry nor dispositive of the merits of Defendants' Rule 60(b) Motion.").