IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LINDA FREW, et al. | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 3:93-CV-65 |
| | § | |
| KYLE L. JANEK, M.D., | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO ENFORCE AND GRANTING DEFENDANTS' MOTION TO DISSOLVE CORRECTIVE ACTION ORDER: PRESCRIPTION AND NON-PRESCRIPTION MEDICATIONS, MEDICAL EQUIPMENT AND SUPPLIES [DE #637-8]**

Pending before the court is Plaintiffs' Motion to Enforce the Corrective Action Order: Prescription and Non-Prescription Medications, Medical Equipment and Supplies, and Related Decree Provisions (Dkt. 971); Defendants' Rule 60(b)(5) Motion to Dissolve the Corrective Action Order on Prescription and Non-Prescription Medications, Medical Equipment and Supplies, and Related Consent Decree Provisions and Response in Opposition to Plaintiffs' Motion to Enforce the Corrective Action Order (Dkt. 998); Plaintiffs' Response (Dkt. 1004); Defendants' Reply (Dkt. 1019); and Plaintiffs' Sur-Reply (Dkt. 1026). Also pending before the court is Defendants' Motion to Strike the Testimony of Drs. Mazur, Whitney, Wood and Rider In Part or In Whole (Dkt. 1023) and Plaintiffs' Response (Dkt. 1027).The court held a hearing on September 9, 2013 and heard argument from the parties on these pending motions. After considering the briefing and the arguments of both parties and for the reasons set forth herein Plaintiffs' Motion for Further Action (Dkt. 971) is **DENIED**, Defendants' Rule 60(b)(5) Motion (Dkt. 998) is **GRANTED**. Defendants' Motion to Strike (Dkt. 1023) is **DENIED**. Also pending before the court is Plaintiffs' Motion to Pay Expert Witnesses (Dkt. 1043), Defendants' Response (Dkt. 1045), and Plaintiffs' Reply (Dkt. 1046), which is **GRANTED**.

**I.     BACKGROUND**

A detailed background of this case can be found in previously issued opinions.[1] On September 1, 1993, Plaintiffs filed this lawsuit alleging that Defendants (the successive commissioners of the Texas Health and Human Services Commission and the Texas Department of Health) did not adequately provide Early Periodic Screening, Diagnosis and Treatment (EPSDT) services to Medicaid recipients under the age of twenty-one as required by the Medicaid Act, Title 42, United States Code, Sections 1396a(a)(43) and 1396d(r). In Texas, the EPSDT program is referred to as "Texas Health Steps" and is administered jointly by the federal government and the Texas Health and Human Services Commission. The Plaintiffs structured this case as a class action and defined the class broadly to include all Texas youth eligible to receive Medicaid. The Plaintiffs sought injunctive relief to ensure that the state complied with the Medicaid Act. The primary governing documents in this case are the "Consent Decree" (Dkt. 135) and the "Corrective Action Orders" (Dkt. 637).

   a. **The Consent Decree**

In July 1995, after extensive settlement negotiations, the parties proposed a Consent Decree that was subsequently approved by the court on February 16, 1996 (Dkt. 135). The Decree is a court-enforced settlement agreement that sets forth a compliance plan for the State's EPSDT program.[2] The Decree was not intended to resolve all the contested issues between the parties. Rather, it was designed to reduce the nature and scope of the litigation. The Decree

---

[1] *See Frew v. Gilbert*, 109 F. Supp. 2d 579 (E.D. Tex. 2000); *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002); *Frew v. Hawkins*, 540 U.S. 431 (2004); *Frew v. Hawkins*, 401 F. Supp. 2d 619 (E.D. Tex. 2005); *Frew v. Suehs*, 775 F. Supp. 2d 930 (E.D. Tex. 2011).
[2] *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'") (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992)).

discusses in detail the areas in which the State's EPSDT program was deficient, sets goals and requirements for improvements, and establishes deadlines for the State's implementation of the improvements.

In 1998, Plaintiffs moved to enforce the Decree, arguing that Defendants were not complying with several of the Decree's provisions (Dkt. 208). Defendants opposed the motion, arguing that their efforts had been sufficient and that, regardless of their efforts, the Eleventh Amendment barred the court from enforcing the Decree. In 2000, this court held that the State had failed to comply with several of the Decree's provisions and that the Eleventh Amendment did not bar enforcement of the Decree.[3] On appeal the Fifth Circuit disagreed with the court and held that the Eleventh Amendment barred enforcement of elements of the Decree that were not specifically mandated by the Medicaid Act.[4] The U.S. Supreme Court reversed the Fifth Circuit, holding that the Decree was enforceable under the principals of *Ex Parte Young*, 209 U.S. 123 (1908) because the Decree addressed federal interests.[5] The case was remanded to this court for continued oversight.

### b. The Corrective Action Orders

In November 2004, Defendants moved to terminate or alternatively to modify the Decree under Federal Rule of Civil Procedure 60(b)(5) (Dkt. 406). The basis for Defendants' motion was that even though they had not yet fulfilled the Decree their efforts had brought them into compliance with the Medicaid Act. The court denied the Defendants' motion, holding that

---

[3] *Frew v. Gilbert*, 109 F. Supp. 2d 579 (E.D. Tex. 2000).
[4] *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002).
[5] *Frew v. Hawkins*, 540 U.S. 431 (2003).

compliance with the federal law was not the sole object of the Decree.[6] Defendants' appeals to the Fifth Circuit and the U.S. Supreme Court were unsuccessful.[7]

Plaintiffs eventually filed three other motions relating to enforcement of the Decree (Dkts. 607, 429, 428). In 2007, the parties reached an agreement on the pending motions that set forth corrective action plans for eleven areas of the EPSDT program that had been addressed in the Decree. The parties filed their proposed agreement with the court on April 27, 2007 (Dkt. 637). The court orally approved the agreement at a July 9, 2007 hearing and subsequently entered the agreement as the Corrective Action Order (CAO) on September 5, 2007 (Dkt. 663). On April 17, 2009, the case was transferred by the Honorable William Wayne Justice to the undersigned judge (Dkt. 716).

The Corrective Action Order presently at issue is Dkt. 637-8.[8] Defendants represent that they have complied with the obligations set forth in CAO 637-8 and paragraphs 124-130 of the Decree. The provisions in dispute relate to training for pharmacists that provide prescription and non-prescription medication and other medical supplies to class members. Plaintiffs request that the court order Defendants to take further action. Defendants request that they be relieved from their obligations under CAO 637-8 and Decree paragraphs 124-130 because they have satisfied the judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure Rule 60(b)(5) permits a party to obtain relief from a judgment or order if: (1) the judgment has been satisfied, released, or discharged; (2) it is based on an earlier judgment that has been reversed or vacated; or (3) applying it prospectively is no

---

[6] *Frew v. Hawkins*, 401 F. Supp. 2d 619 (E.D. Tex. 2005).
[7] *See Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006), *cert. denied*, 549 U.S. 1118 (2007).
[8] Corrective Action Order: Prescription and Non-Prescription Medications; Medical Equipment and Supplies, Dkt. 637-8 [hereinafter CAO 637-8].

longer equitable. "General principles of contract interpretation govern the interpretation of a consent decree."[9] "[C]onsent decrees are to be construed only by reference to the 'four corners' of the order itself."[10]

"Rule 60(b)(5) serves a particularly important function in . . . institutional reform litigation" because "injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances."[11] Indeed, "institutional reform injunctions often raise sensitive federalism concerns."[12] "Federalism concerns are heightened when, as in these cases, a federal court decree has the effect of dictating state or local budget priorities."[13] Consent decrees "sometimes go well beyond what is required" by underlying statutes and may "improperly deprive future officials of their designated legislative and executive powers."[14] "Where state and local officials inherit overbroad or outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents, they are constrained in their ability to fulfill their duties as democratically-elected officials."[15] Accordingly, federal courts must "exercise [their] equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the State's obligations is returned promptly to the State and its officials."[16]

---

[9] *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998).
[10] *Id.*
[11] *Horne v. Flores*, 557 U.S. 433, 447-48 (2009) (internal quotation marks and citations omitted).
[12] *Id.* at 448.
[13] *Id.*
[14] *Id.* at 448-49 (internal quotation marks omitted).
[15] *Id.* at 449 (internal quotation marks omitted).
[16] *Frew v. Hawkins*, 540 U.S. 431, 442 (2004).

## III. ANALYSIS

### a. Defendants' Motion to Strike Testimony (Dkt. 1023)

Defendants move to strike the testimony of Drs. Mazur, Whitney, Wood and Rider submitted by Plaintiffs in connection with their Motion for Further Action (Dkt. 971). Defendants object to the designation of these doctors as experts. Defendants do not question the qualifications or credentials of these witnesses to offer expert testimony as medical doctors. However, Defendants argue that these witnesses are not qualified to offer an opinion as experts with respect to Defendants' satisfaction of Decree paragraphs 124-130 and CAO 637-8.

Federal Rule of Evidence 702 states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The witnesses' opinions in this instance are not based on any specialized knowledge. Instead, the witnesses offer largely anecdotal evidence about problems that either they or their colleagues have experienced with patients attempting to get prescriptions filled through Medicaid-enrolled pharmacies. This testimony does not rely on the doctors' scientific, technical, or specialized knowledge. Therefore, the doctors have not offered "expert" opinions regarding whether Defendants are in compliance with the terms of the Decree and the CAO. However, portions of the doctors' testimony are relevant, although unpersuasive, in determining the effectiveness of the Defendants' efforts to comply with the Consent Decree and CAO 637-8. The court has considered only those portions of the doctors' testimony that are relevant to the court's analysis of the instant motions. The Motion to Strike (Dkt. 1023) is **DENIED**.

### b. Plaintiffs' Motion to Enforce Order Requiring Defendants to Pay a Fair and Reasonable Compensation for Plaintiffs' Experts' Time (Dkt. 1043)

Plaintiffs' motion for payment of their witness fees (Dkt. 1043) is **GRANTED**. Federal Rule of Civil Procedure 26(b)(4)(E) instructs that "[u]nless manifest injustice would result, the court *must* require that the party *seeking* discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." (emphasis added). There is nothing in the Rule or this court's order (Dkt. 898) that conditions the requirement of payment on a determination of the ultimate admissibility of the witness's testimony.

### c. Plaintiffs' Motion for Further Action (Dkt. 971)

Plaintiffs seek an order from this court requiring Defendants to take further action pursuant to CAO 637-8. Defendants oppose the motion and maintain that they have satisfied the terms of CAO 637-8 and the corresponding provisions of the Decree, paragraphs 124-130.

At the court's hearing on these motions, Plaintiffs acknowledged that Defendants substantially complied with all but two of the paragraphs of CAO 637-8.[17] Therefore, the court addresses only those two provisions with which Plaintiffs maintain Defendants have not substantially complied. First, Plaintiffs argue that Defendants have not "provide[d] intensive, targeted educational efforts to those pharmacies for which the data suggest a lack of knowledge of the 72-hour emergency prescriptions policy."[18] The CAO explains that pharmacies are allowed to dispense a 72-hour "emergency" allotment of a prescription when a class member arrives at the pharmacy with a prescription that requires a prior authorization from Medicaid or the patient's managed-care organization and the pharmacist is unable to obtain a prior authorization. An example of this is when a class member is treated at an emergency room over a

---

[17] While acknowledging that Defendants have substantially complied with the specific actions required of them, Plaintiffs do not acknowledge that Defendants' actions have been effective and maintain that Defendants could do more.

[18] CAO 637-8 at 4; Dkt. 971 at 11-13.

weekend and given a prescription that requires a prior authorization, and the pharmacist is unable to reach the prescribing physician. The pharmacist can dispense a 72-hour allotment of the medication so that the patient has time to follow-up with a physician to either get a prescription for a preferred medication or obtain a prior authorization. Defendants conducted studies to evaluate which pharmacies were dispensing a lower-than-expected number of 72-hour emergency prescriptions. Defendants were then required to provide intensive, targeted educational efforts to those pharmacies.

The majority of the evidence submitted by Plaintiffs is not relevant to determining whether Defendants are in compliance with this requirement of CAO 637-8. For instance, Plaintiffs put forth declaration testimony from doctors about the complexity of Defendants' "Preferred Drug List," frustration with obtaining prior authorizations, and problems encountered when the state moved to a managed-care system. However, this evidence does not assist the court in determining whether Defendants failed to comply with their obligations under the CAO to provide intensive, targeted education to pharmacists. Defendants have put forth evidence, described below in relation to Defendants' Rule 60(b)(5) motion, which demonstrates that Defendants have complied with the requirements of the CAO.[19] Plaintiffs' belief that Defendants could do more is insufficient for the court to order any further action.

Next, Plaintiffs argue that Defendants have not "train[ed] staff at their ombudsman's office about the emergency prescription standards, what steps to take to immediately address class members' problems when pharmacies do not provide emergency medicines, and DME ["durable medical equipment"] standards and common problems."[20] Plaintiffs cite to call logs provided by Defendants to support their argument that staff at the Ombudsman's Office has not

---

[19] *See infra* Part III.d.
[20] CAO 637-8 at 5.

been trained as required by the CAO. Plaintiffs admit that some inquiries to the Ombudsman's Office have been handled appropriately. Plaintiffs take issue with those instances where Ombudsman's Office staff has referred class members to their managed-care organizations or instructed them to follow up with their primary-care providers to obtain a prior authorization. These instances do not necessarily show a lack of training of the Ombudsman's Office staff. Defendants rely on declarations of Maribel Castoreno (Dkt. 998-2), Laura Bagheri (Dkt. 998-4), and Dawn Rehbein (Dkt. 998-10) to explain how the actions taken by the Ombudsman's Office staff conform to their training and are designed and intended to immediately address class members' problems. The court can only require Defendants to comply with the requirements of the Consent Decree and the CAO, and Defendants have put forth evidence to show that they have provided training to the staff at their Ombudsman's Office as required by this court's order.[21]

Two paragraphs of the portion of the Consent Decree at issue require Defendants to take specific actions. Paragraph 129 requires Defendants to "implement an initiative to effectively inform pharmacists about EPSDT, and in particular EPSDT's coverage of items found in pharmacies" by making presentations at meetings of the Texas Pharmacy Association, publishing articles in the newsletter of the Texas Pharmacy Association, and sending at least one mailer that is (1) designed to attract attention, (2) explain EPSDT coverage, and (3) encourage pharmacists to provide all covered products, to all pharmacists that participate in Medicaid by January 31, 1996. Paragraph 130 requires Defendants to "conduct a professional and valid evaluation of pharmacists' knowledge of EPSDT coverage" and report their findings to Plaintiffs by January 31, 1996. If the evaluation demonstrated that pharmacists' knowledge was insufficient, Defendants were required to orally inform pharmacists about EPSDT coverage. Defendants

---
[21] *See infra* Part III.d.

contend that they have complied with this obligation as demonstrated by their Quarterly Monitoring Reports,[22] and that no further action should be required. Plaintiffs contend that while Defendants have taken these discrete actions, Defendants have not *effectively* educated pharmacists about EPDST and therefore further action should be required under the Decree.

Plaintiffs' argument would require the court to create and read into the Decree and the CAO more than what is required by the agreed-upon terms. The terms of a consent decree "are arrived at through mutual agreement of the parties" after careful negotiation, and "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all."[23] "Courts should not impose their own terms within a consent decree and should read consent decree terms by their plain meaning."[24] A consent decree embodies agreements reached "after careful negotiation has produced agreement on [its] precise terms."[25] "[W]hen a contract is expressed in unambiguous language, its terms will be given their plain meaning and enforced as written."[26] Indeed, "the scope of a consent decree must be discerned within its four corners, not by reference to what either party hoped to achieve by the decree, or to what they might have achieved through the litigation."[27]

Plaintiffs argue that "the entire Medicaid prescription program is now so dysfunctional that education alone cannot possibly solve all the problems thwarting class members' timely

---

[22] *See* Dkt. 651 at 35; Dkt. 670 at 30-32; Dkt. 676 at 29-31; Dkt. 681 at 36-38; Dkt. 689 at 42-43; Dkt. 701 at 38-40; Dkt. 710 at 30-31; Dkt. 723 at 38-39; Dkt. 726 at 2-3, 47-50; Dkt. 740 at 1-2, 45-47; Dkt. 751 at 55-57; Dkt. 758 at 59-62; Dkt. 775 at 61-63; Dkt. 800 at 58-62; Dkt. 813 at 48-50; Dkt. 825 at 46-48; Dkt. 828 at 47-50; Dkt. 836 at 54-58; Dkt. 868 at 53-57; Dkt. 903 at 57-61; Dkt. 919 at 41-45; Dkt. 961 at 45-46; Dkt. 998-1.
[23] *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519, 522 (1986).
[24] *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008).
[25] *Local No.* 93, 478 U.S. at 522.
[26] *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998).
[27] *Frew v. Gilbert*, 109 F. Supp. 2d 579, 594 (E.D. Tex. 2000) (internal quotation marks omitted).

access to needed medicines."[28] But the only issue pending before the court is a determination of whether Defendants have complied with paragraphs 124-130 of the Decree and CAO 637-8. Plaintiffs concede that Defendants have complied with most of those terms, and the court cannot require further action from Defendants because Plaintiffs are dissatisfied with the results. Plaintiffs and Defendants agreed on the measures outlined in the Decree and the CAO to educate pharmacists as one way of furthering the overarching goals of the Decree. Plaintiffs' argument that "no amount of education will cure the pervasive dysfunction in Defendants' deeply flawed system"[29] is beyond the scope of the currently pending motions. Plaintiffs' motion for further action (Dkt. 971) is **DENIED**.

### d. Defendants' Rule 60(b)(5) Motion (Dkt. 998)

Defendants move the court to end their obligations under paragraphs 124-130 of the Decree and CAO 637-8 under Rule 60(b)(5) because the judgment has been satisfied. This court's previous order makes clear that "[o]nce Defendants comply with that part of the Decree and the related section of the Corrective Action Order, then the court may terminate that part of the Decree and the related section of the Corrective Action Order."[30] The CAOs were intended to "provide[] a clear potential end point for Defendants' obligations under the Consent Decree."[31]

As explained above, Plaintiffs acknowledge that Defendants have complied with all but two paragraphs of CAO 637-8. Defendants point to the Declaration of Maribel Castoreno,[32] Texas Health and Human Services Commission's Vendor Drug Program Provider Education and Outreach Specialist in support of their motion related to provision of "intensive, targeted educational efforts" to pharmacies. Ms. Castoreno explains that after conducting the first analysis

---

[28] Dkt. 971 at 22.
[29] Dkt. 971 at 24.
[30] Mem. Op. 15, Dkt. 663.
[31] *Id.*
[32] Dkt. 998-2.

required by the CAO, Defendants identified 822 pharmacies to be targeted for intensive education. Defendants "sent each identified pharmacy a certified letter, return receipt requested, directed to the pharmacist-in-charge of each pharmacy."[33] The letter "encouraged use of dispensing a 72-hour emergency supply, included citations to federal and state rules and regulations, and provided information explaining how to obtain payment for such emergency prescriptions."[34] Those pharmacists that did not sign for the certified letter were contacted by telephone or were "visited by a Medicaid Regional Pharmacist." Because over half of the pharmacies identified by the first analysis were corporate chains, Defendants "scheduled conference calls with the corporate offices and relevant training staff of CVS, HEB, Walgreens, and Walmart" and sent electronic copies of the letters sent to pharmacists to each of the corporate entities.

Defendants assert that these actions satisfy the terms of the CAO. Defendants further assert that they went beyond what was required of them by soliciting "a consultant to assist HHSC by identifying specific factors for pharmacies which the data suggested a pattern or lack of knowledge of the 72-hour policy."[35] Defendants then used the consultant's recommendations to "develop possible remedies and additional targeted education for a specific area, pharmacy, or even prescribing provider." Ms. Castoreno's Declaration also outlines Defendants' ongoing statewide efforts to educate pharmacists.[36] Defendants have provided newsletters,[37] fax notices,[38]

---

[33] Dkt. 998-2 at 8, ¶ 24; *see also* Dkt. 998-1.
[34] Dkt. 998-2 at 8, ¶ 24.
[35] Dkt. 998-2 ¶ 27.
[36] Dkt. 998-2 at 10-14.
[37] Dkt. 998-2 at 10. "VDP creates a newsletter three to four times per year that is mailed to each active VDP enrolled pharmacy" and posted on the VDP website, emailed to a distribution list that includes pharmacy corporate offices and pharmacy associations, and circulated to HHS email subscribers.

computer-based training,[39] information on their public website,[40] e-mail notifications,[41] regional pharmacist visits,[42] one-on-one education via the Pharmacy Resolutions Help Desk,[43] as well as targeted follow-up with pharmacies that are the subject of complaints.[44] Defendants also point to their Exhibit 1,[45] which contains excerpts from Quarterly Monitoring Reports filed with the court, as support for their contention that they have satisfied all of the requirements of the CAO.[46] Finally, Defendants point to the Declaration of Loretta Disney, who is a Regional Pharmacy Manager for the Texas Health and Human Services Commission.[47] Ms. Disney

---

[38] "Defendants use fax notices to circulate relevant news, policy clarifications, and updates, and educational reminders. Defendants fax notices to all active pharmacies that have a fax number on filed with VDP as well as other pharmacy contacts from the VDP-maintained distribution list."

[39] "A free online training module that relates to THSteps pharmacy benefits is available to all Medicaid providers, including pharmacists, pharmacy staff, and prescribers. It includes information regarding the 72-hour emergency supply of medications and Medicaid coverage of items commonly found in pharmacies . . . This module is available on DSHS' website. VDP's website includes links to these online modules. VDP also promotes the free online pharmacy training module in HHS email subscription service, as footer on fax blasts, during regional pharmacist visits, and Texas Pharmacy Association and Texas State Board of Pharmacy's web postings. TMHP, Medicaid's prover enrollment vendor, also offers a pharmacy-specific computer-based training on durable medical equipment and supplies (DME)."

[40] "DSHS' website includes information on the scope of THSteps benefits, online education modules, which are offered free to prescribers, pharmacists, and their respective staff, and links to other provider and client resources, including VDP and relevant excerpts of TMHP's online Medicaid Provider Procedure Manual."

[41] Email notifies are "utilize[d] to circulate relevant news, policy clarifications, and updates, such as changes to the Medicaid Preferred Drug List (PDL), changes of prior authorization and/or claims processing vendor, and implementation of new processes such as coordination of benefits or addition of limited home health supplies to Medicaid formulary."

[42] Regional pharmacists employed by Medicaid "make regular visits to each Medicaid-enrolled pharmacy and are available by phone for questions or concerns as they arise."

[43] "VDP's Pharmacy Resolution Help Desk phone line staff provides oral assistance to pharmacy providers with questions or problems relating to claims submission, program policy, and procedures."

[44] "When the state becomes aware of issues and/or complaints about a particular pharmacy, regional field staff reaches out to specific pharmacies via phone or in-person visit to orally address any identified issue/complaint or to offer programmatic guidance to Medicaid pharmacies."

[45] Dkt. 998-1.
[46] Dkt. 998-1.
[47] Dkt 998-11.

explains that Regional Pharmacists "target certain pharmacies that are the subject of complaints brought to [them] by pharmacies, prescribers, or members." [48] The court agrees with Defendants that they have satisfied the requirements of this paragraph of CAO 637-8.

The second paragraph of the CAO at issue requires that "Defendants . . . train staff at their ombudsman's office about the emergency prescription standards, what steps to take to immediately address class members' problems when pharmacies do not provide emergency medicines, and DME standards and common problems." In support of their contention that they have complied with the CAO, Defendants point to the Declaration of Laura Bagheri, a Program Specialist V in the Medicaid/CHIP Office of the Medical Director, which explains that Ms. Bagheri "conducted the first training session of the Ombudsman staff required by the CAO in September 2007." She states that the "training included information on the 72-hour emergency prescription standards, what steps to take to immediately address class members' problems when pharmacies do not provide emergency medicines, and DME standards and common problems." Next, Defendants rely on the Declaration of Ms. Castoreno, who describes the actions Defendants have taken in addition to the one time training required to be completed by January 2008. She explains that she provided additional training to the Ombudsman's Office on February 6, 2008, August 19, 2009, and January 11, 2013. Finally, the Defendants put forth the Declaration of Dawn Rehbein.[49] Ms. Rehbein explains that "on at least four occasions since fall of 2007 Vendor Drug Program ("VDP") staff have provided face-to-face training to Ombudsman staff." The court agrees with Defendants that they have satisfied the requirements of this paragraph of CAO 637-8.

---

[48] Dkt. 998-11 ¶¶ 9-11.
[49] Dkt. 998-10.

Plaintiffs contend that even if the court holds that Defendants have taken these specific actions, that Defendants have been ineffective and more must be done to attain the objectives of the Decree. Generally, the Decree "speaks to the broader goals of enhancing recipients' access to health care and improving the use of health care services by Texas EPSDT recipients."[50] Plaintiffs point to paragraphs 2 and 190 to support their argument. Paragraph 2 states "Recipients are also entitled to all needed follow up health care services that are permitted by federal Medicaid law. 42 U.S.C. § 1396d(r)."[51] Paragraph 190, which is located in the section of the Decree relating to "Recipients in Managed Care," reads "EPSDT recipients served by managed care organizations are entitled to timely receipt of the full range of EPSDT services, including but not limited to medical and dental checkups."[52]

Any state program of this size and complexity is not going to operate error-free. Defendants have demonstrated that they have substantially complied with the terms of CAO 637-8 and Decree paragraphs 124-130. The parties engaged in difficult negotiations to arrive at the terms of the CAO, and this court approved the terms as fair, reasonable, and adequate. The court cannot determine satisfaction of the Decree or CAOs "by reference to what either party hoped to achieve by the decree, or to what they might have achieved through the litigation."[53] The terms of the Decree and CAO can only be enforced as written.

## IV. CONCLUSION

Paragraphs 124-130 of the Consent Decree and CAO 637-8 have been satisfied and no further action is required by Defendants. The remaining provisions of the Decree and the CAOs continue in force and are unmodified by this order.

---

[50] *Frazar v. Ladd*, 457 F.3d 432, 439 (5th Cir. 2006).
[51] Dkt. 135.
[52] *Id.*
[53] *Frew v. Gilbert*, 109 F. Supp. 2d 579, 594 (E.D. Tex. 2000) (internal quotation marks omitted).

IT IS SO ORDERED.

**SIGNED this the 18th day of December, 2013.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE