IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

CARLA FREW, *et al.*, §
§
    *Plaintiffs*, §
§
v. § Case No. 3:93-CV-65
§
CHARLES SMITH, *et al.*, §
§
    *Defendants.* §

**MEMORANDUM OPINION AND ORDER REGARDING CORRECTIVE
ACTION ORDER 637-9 AND RELATED CONSENT DECREE
PROVISIONS ON REMAND FROM THE FIFTH CIRCUIT
COURT OF APPEAL'S MARCH 28, 2016 OPINION**

    The following are pending before the court:

1.     Defendants' opposed motion to clarify and reinstate order vacating CAO 637-9 (docket entry #1531);

2.     Plaintiffs' response in opposition to Defendants' opposed motion to clarify and reinstate order vacating CAO 637-9 (docket entry #1538);

3.     Defendants' reply in support of motion to clarify and reinstate order vacating CAO 637-9 (docket entry #1544); and

4.     Plaintiffs' sur-reply in response to Defendants' reply in support of motion to clarify and reinstate order vacating CAO 637-9 (docket entry #1545).

Having considered the Defendants' motion and the responsive briefing thereto, the court finds that the Defendants' motion should be denied.

    On January 20, 2015, the court entered its "Order on Corrective Action Order: Adequate Supply of Health Care Providers (Dkt. 637-9) & Related Consent Decree Provisions" (docket entry #1280). In its order, the court found as follows:

Plaintiffs' Renewed Motion to Enforce the Provider Supply Corrective Action Order and Related Decree Provisions (Opposed) (Dkt. 1033) is **DENIED**, and Defendants' Rule 60(b)(5) Motion to Vacate the Corrective Action Order: Adequate Supply of Health Care Providers and Related Decree Provisions; Defendants' Response in Opposition to Plaintiffs' Renewed Motion to Enforce the Provider Supply Corrective Action Order and Related Decree Provisions (Sealed) (Dkt. 1052) is **GRANTED IN PART**. Defendants have satisfied the requirements of each bullet point of the provider supply CAO (Dkt. 637-9). Defendants have satisfied the requirements of paragraphs 91, 93, 94, 98-99, 100-102, 103, and 197 of the Decree. The court declines to modify paragraphs 90 or 143 at this time. Defendants have shown that they have satisfied the objectives of the Decree paragraph 88 by taking realistic and viable measures to enhance recipients' access to care through ensuring an adequate supply of health care providers within the CAO's enumerated timeliness and distance standards through targeted recruitment efforts, increases and monitoring of reimbursement rates, and using their best efforts to maintain updated lists of providers to both recipients and other providers. A durable remedy is in place through Defendants' laws, regulations, policies, and contractual commitments from MCOs to assure future compliance. Defendants are no longer obligated to report on their compliance with paragraphs 91, 93, 98-99, 100-102, 103, and 197 of the Decree or CAO 637-9. No modification is warranted with regard to paragraphs 75-87, 89, 82 and 97 of the Decree because those paragraphs mainly contain background information and do not require any action by Defendants. The remaining provisions of the Decree and the CAOs continue in force and are unmodified by this order. Defendants must continue to comply with the remaining terms regardless of whether they believe they are in compliance with underlying federal law.

ORD. ON CORRECTIVE ACTION ORDER: ADEQUATE SUPPLY OF HEALTH CARE PROVIDERS (DKT. 637-9) & RELATED CONSENT DECREE PROVISIONS, Dkt. #1280, pp. 45-46 (footnotes omitted).

The Plaintiffs appealed the court's order to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit summarized the appeal as follows:

> CAO 637–9 is entitled "Corrective Action Order: Adequate Supply of Health Care Providers." It is organized into thirteen bullet points, most of which direct Defendants to take some action to ensure class members have access to an "adequate supply of health care providers." In May 2013, Plaintiffs filed a renewed motion to enforce CAO 637–9. Defendants responded with a joint motion to terminate CAO 637–9 under Rule 60(b)(5) and opposition to Plaintiffs' motion to enforce. Rule 60(b)(5) provides that "the court may relieve a party ... from a final judgment, order, or proceeding" if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." This list of reasons is "disjunctive," that is "each of the

provision's three grounds for relief is independently sufficient." Defendants argued
that they were entitled to relief under both prong 1—because they had "satisfied" the
provisions of CAO 637–9—and prong 3—because "applying [CAO 637–9]
prospectively is no longer equitable." In January 2015, the district court issued a
detailed order terminating CAO 637–9. The court found that relief was appropriate
under both prongs 1 and 3. Plaintiffs timely appealed.

*Frew v. Janek*, 820 F.3d 715, 718–19 (5th Cir. 2016) (footnotes omitted).

> CAO 637–9 consists of thirteen bullet points. The district court's order terminated all
> thirteen of these bullet points, in addition to several related paragraphs of the consent
> decree. Plaintiffs, however, only offer argument with respect to six of CAO 637–9's
> bullet points and one of the consent decree's paragraphs. They have, therefore, waived
> any challenge to the district court's decision to terminate the other seven bullet points
> and related paragraphs of the consent decree. The six bullet points and one consent
> decree paragraph at issue create three sets of obligations: (1) bullet points 8–10 order
> Defendants to perform assessments of the Medicaid provider base and develop plans
> to address any shortages identified by these assessments; (2) bullet points 6–7 and
> consent decree paragraph 93 order Defendants to maintain accurate lists of Medicaid
> providers[1]; and (3) bullet point 5 orders Defendants to maintain adequate
> reimbursement rates for Medicaid providers.

*Id*. at 720–21 (footnotes omitted).

Under the prong 1 analysis with respect to bullet points 8-10, the Fifth Circuit analyzed the term "shortage" and ultimately adopted a definition of "shortage" that was not proposed by the parties.

> The district court has twice—in published orders—concluded that the data showed
> a "shortage" of Medicaid providers. In *Frew v. Gilbert*, the court concluded that there
> was a "shortage" of dentists because the ratio of dentists to class members was higher
> than the client "load ... currently being borne by the active dentists." That is, there was
> a "shortage" because the ratio of providers to class members was 1 to 876 while the
> evidence demonstrated that most providers cared for less than 100 class members.
> Given these numbers, all of the class members could not receive the required care.
> Five years later, in *Frew v. Hawkins*, the district court used this same methodology
> in concluding that Defendants had not resolved the "shortage" of dentists. This time,
> the ratio of dentists to class members was 1 to 1,621 while the evidence established

---

[1]The Fifth Circuit affirmed "the portion of the district court's order terminating bullet points 6-7 and consent decree paragraph 93." *Frew*, 820 F.3d at 729.

that less than one-sixth of the active dentists served more than 1,500 class members. Once again, in these circumstances, it was not possible for all of the class members to receive the required care.

      Though we do not owe "deference" to these district court decisions construing the decree, we conclude that they are grounded on and articulate the proper interpretation of "shortage." The point of the consent decree and CAO 637–9 is to "support[ ] EPSDT recipients in obtaining the health care services they are entitled to." If there are not enough providers to deliver these services, then there is a "shortage" of providers. The district court's definition—which compares the provider-to-class-member ratio with the average client load of the relevant class of provider—is an objective way to calculate when there are not enough providers. This methodology also is consistent with the Corrective Action Order's definition of "available." And unlike Defendants' proposed definition, the assessments are well-suited to identify "shortage[s]" using this definition, as both the "major" and the "interim" assessments can be used to calculate the provider-to-class-member ratio that forms one side of the "shortage" comparison. Furthermore, the district court used this definition in two major orders prior to the negotiation of CAO 637–9. Indeed, in the memorandum opinion approving the Corrective Action Order, the district court cited to the relevant passages of these two orders as evidence of a "longstanding, severe shortage of dentists who take care of class members." It is reasonable to assume that the parties intended to use this same definition in the eleven particularized orders.

*Id*. at 725–726 (footnotes omitted).

Based on the Fifth Circuit's adoption of its definition of the term "shortage," the Fifth Circuit concluded that

      . . . the district court erred in terminating the portion of bullet points 8–10 that orders Defendants to develop plans to address "shortage[s]" identified by the assessments. Defendants have put forth no evidence regarding provider-to-class-member ratios or the average client loads of Medicaid providers in Texas. This is understandable given the confusion over the proper definition of "shortage," but Defendants still have the burden to establish that they have satisfied their obligations under Rule 60. We thus vacate the district court's order in part and remand for further proceedings. If the assessments still do not identify any "shortage[s]," Defendants are free to renew their request to terminate bullet points 8–10. If the assessments do identify "shortage[s]," Defendants of course remain obligated to develop plans to address them.

*Id*. at 726 (footnote omitted).

Likewise, under the prong 1 analysis with respect to bullet point 5, the Fifth Circuit concluded that the court erred in its analysis, largely based on its erroneous interpretation of the term "shortage." *Frew*, 820 F.3d at 729. "Bullet point 5 orders Defendants to take a number of different steps to ensure that reimbursement rates for Medicaid providers are 'adequate.'" *Id*. The Plaintiffs challenged this court's finding that the Defendants satisfied this bullet point with respect to one sentence – "'Payment levels will be sufficient to attract enough providers to serve the class, and comply with the Decree and this Order with respect to all class members, whether or not they are enrolled in managed care.'" *Id*. The Plaintiffs argued that

> payment levels are not "sufficient" given the "widespread provider shortages" identified by the assessments. That is, they contend that (1) "adequate rates are whatever is necessary to provide the check ups and follow up care to all of the class members" and (2) rates must be inadequate because many class members are not receiving these services.

*Id*. (footnotes omitted). Given that bullet point 5 must be analyzed under the appropriate definition of shortage, the Fifth Circuit concluded that this court erred in terminating the challenged sentence of bullet point 5 and remanded for further proceedings. *Id*.

With respect to prong 3, the Fifth Circuit specifically found as follows:

Prong 3 provides that "the court may relieve a party ... from a final judgment, order, or proceeding" when "applying it prospectively is no longer equitable." This Court has recognized "a 2–step test for determining whether modification is warranted" under prong 3: "First, the party seeking modification must show that 'a significant change either in factual conditions or in law' that 'make compliance with the decree substantially more onerous [or] ... unworkable because of unforeseen obstacles [,] ... or when enforcement of the decree without modification would be detrimental to the public interest.' Second, the court must then 'consider whether the proposed modification is suitably tailored to the changed circumstance.'" The party seeking modification under prong 3 must meet its burden at both steps of this test.16

Addressing the second step of prong 3, the district court observed that:

> The proposed modification pursued by Defendants is suitably tailored to the changed conditions because it seeks release only from certain parts of the Decree that have been either satisfied or become obsolete, and because the remaining Decree provisions and CAOs will remain in place "thereby preserving Defendants' responsibilities for ensuring adequate provision of EPSDT services to children under age 21 with Medicaid despite the switch to a managed-care model."
>
> There is no challenge to terminating the "obsolete" paragraphs, so the district court's prong 3 analysis—at least with respect to the consent decree paragraphs and CAO bullet points under review—is dependent upon its conclusion that these provisions have been "satisfied" under prong 1. Plaintiffs are thus correct that prong 3 cannot here serve as an independent ground for affirmance—and they have not forfeited their appeal.

*Frew*, 820 F.3d at 720 (footnotes omitted). In the Fifth Circuit's order denying panel rehearing and rehearing en banc, the Fifth Circuit provided the following guidance:

> On remand, the district court may consider the vacated portions of its order under either prong 1 of Rule 60(b)(5) (the judgment has been satisfied, released, or discharged), prong 3 of Rule 60(b)(5) (applying it prospectively is no longer equitable), or both. We were unable to determine whether the able district court's decision under prong 1 or prong 3 of Rule 60(b)(5) would have been the same with the "shortage" metric that this Court found controlled.

*Frew v. Janek*, 845 F.3d 579, 579-580 (5th Cir. 2016) (footnote omitted).

Now before the court is the Defendants' opposed motion to clarify and reinstate order vacating CAO 637-9. Briefly, the Defendants urge the court to reinstate its prior order under prong 3 arguing that this court's prong 3 analysis was legally and factually independent of whether the relevant four CAO provisions were deemed satisfied under the Fifth Circuit's definition of shortage. However, the Defendants' argument is contrary to the instructions from the Fifth Circuit. The Fifth Circuit specifically pointed to the language in this court's order showing that this court's prong 3 analysis of the relevant four CAO provisions was indeed *dependent* on whether the provisions had been satisfied under prong 1. This court, therefore, must analyze the four relevant CAO provisions

under the shortage metric that the Fifth Circuit found controlling.  Once that analysis occurs, the court will be able to determine if relief should be afforded under either prong 1 of Rule 60(b)(5), prong 3 of Rule 60(b)(5), or both.  Based on the foregoing, the court hereby

**ORDERS** that Defendants' opposed motion to clarify and reinstate order vacating CAO 637-9 (docket entry #1531) is **DENIED**.  The parties will need time, perhaps, to conduct discovery and also to brief the arguments referenced herein, including a determination of whether there is a "shortage" of providers using the definition adopted by the Fifth Circuit, which compares the provider-to-class-member ratio with the average client load of the relevant class of provider.  Since this case has been transferred to the Honorable Robert W. Schroeder, III, the court will leave the scheduling of these matters and subsequent ultimate determination of the same to Judge Schroeder.

IT IS SO ORDERED.

**SIGNED this the 7th day of April, 2020.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE