IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

CARLA FREW, *et al.*, §
§
*Plaintiffs*, §
§
v. § Case No. 3:93-CV-65
§
CHARLES SMITH, *et al.*, §
§
*Defendants.* §

## MEMORANDUM OPINION AND ORDER REGARDING INTERIM ATTORNEYS' FEES ON REMAND FROM THE FIFTH CIRCUIT COURT OF APPEAL'S APRIL 27, 2017 OPINION

The following are pending before the court:

1. Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1569);

2. Defendants' response in opposition to Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1576);

3. Plaintiffs' reply to Defendants' response in opposition to Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1581); and

4. Defendants' sur-reply in opposition to Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1583).

_____

1. Plaintiffs' opposed motion for leave to file supplemental authority in support of Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1592);

2. Defendants' response in opposition to Plaintiffs' motion for leave to file supplemental authority in support of Plaintiffs' opposed motion for an award of

-1-

interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1593 & 1594);

3. Plaintiffs' reply to Defendants' response in opposition to Plaintiffs' motion for leave to file supplemental authority (docket entry #1595); and

4. Defendants' sur-reply in opposition to Plaintiffs' motion for leave to file supplemental authority in support of Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1596).

**BACKGROUND**

In 1996, the district court entered a consent decree aimed at "enhance[ing] the availability of health care services, eliminate[ing] barriers that have the effect of preventing access to services, and more effectively inform[ing] recipients that services are available and important to their current and future health." The Decree dictated that the state meet a range of objectives. Some examples include: creating outreach units to spread information about EPSDT[1]; improving provider training on a number of issues, such as coverage of mental health screening and services for teenagers; and implementing accountability measures.

More than a decade later, in 2007, Plaintiffs successfully obtained the agreed Corrective Action Order. The order resulted from Plaintiffs' motions to enforce and to find Defendants in violation of the original decree. Each of the plans in the 2007 Order deals with a specific issue, such as transportation, health care provider training, and outreach efforts.

At the same time it entered the 2007 Corrective Action Order, the district court entered an order addressing attorney's fees (2007 Fee Order). The 2007 Fee Order has three paragraphs. The first starts with "Plaintiffs are entitled to recover attorneys' fees, costs and expenses related to their counsel's work on this case." It goes on to note that such fees "include" those listed in a 2004 order and those incurred through entry of the 2007 Fee Order, but does not have any express limiting language. The last sentence specifies that "[a]lthough Defendants agree not to challenge Plaintiffs' entitlement to fees, Defendants may challenge the amount of fees that are due." The second paragraph applies to "fees, costs and expenses incurred by Plaintiffs' counsel through the date of the Court's ruling on the parties' Joint Motion for Entry of Corrective Order." The third applies to "procedures for attorneys' fees, costs and expenses to be incurred following the date of the Court's ruling on the parties' Joint Motion for Entry of Corrective Action Order." Much of the debate that

---

[1]Early, periodic screening, diagnosis and treatment.

has ensued about the 2007 Fee Order concerns the following: Does the entitlement to fees discussed in Paragraph One apply to all "work on the case" with the other paragraphs then just describing different procedure for obtaining those fees, as Plaintiffs contend? Or, as Defendants contend, does the first paragraph acknowledge a right to fees only through entry of the 2007 Corrective Action Order pursuant to the steps described in the second paragraph?

This question about interpretation of the 2007 Fee Order arose in connection with the provision of the 2007 Corrective Action Order focused on "Check Up Reports and Plans for Lagging Counties." After the plan details the requirements concerning checkups and boosting participation in counties with low levels of compliance, its final provision states:

> Beginning four years from the date of entry of the corrective action orders ("order entry date"), counsel will confer to determine what further action, if any, is required. If the parties agree, they will so report to the Court within 120 days following the fourth anniversary of the order entry date. If the parties cannot agree within 90 days of the fourth anniversary of the order entry date, the dispute will be resolved by the Court. If the parties cannot agree, either party may file a motion within 30 days of the completion of discussion among counsel.

Following this procedure, both sides conferred regarding the need for further action related to the checkup reports and lagging counties. When they did not reach agreement, both submitted motions to the district court. Plaintiffs sought further action regarding checkup reports and the lagging counties; Defendants sought to modify both the Corrective Action Order and Consent Decree under Rule 60(b)(5) to eliminate the provisions in both that related to checkup reports or lagging counties, asserting they had met all requirements. The district court denied the Plaintiffs' motion, and granted the Defendants' motion.[2] Plaintiffs did not appeal that ruling.

Despite coming out on the losing end, Plaintiffs sought attorneys' fees for the time spent briefing both motions. The district court ruled that the Plaintiffs were entitled to attorneys' fees pursuant to the 2007 Fee Order, and emphasized that the Plaintiffs were the prevailing party both in obtaining the original consent decree and the corrective action order. The court ordered that Defendants pay Plaintiffs' their requested $129,140.00 for work on the contested motions. The court rejected Defendants request to analyze the reasonableness of the fees based on the degree of

---

[2]*See Frew v. Janek*, No. 3:93-CV-65, 2013 WL 12177814 (E.D. Tex. Mar. 28, 2013), "Order on Plaintiffs' Motion for Further Action Following Corrective Action Order: Checkup Reports & Lagging Counties & Defendants' Motion to Modify" (docket entry #1020).

> Plaintiffs' success, finding that because the basis of the fees was the agreed-upon Corrective Action Order and 2007 Fee Order, the "success or failure of the work" did not "determine [ ] payment in this instance."³

*Frew v. Traylor*, 688 F. App'x 249, 251-253 (5th Cir. 2017), as revised (Apr. 28, 2017) (internal footnotes omitted).

Thereafter, the Defendants filed their notice of appeal (docket entry #1253), appealing the court's "Order Granting Plaintiffs' Contested Motion for Interim Attorneys' Fees for 2012" (docket entry #1248).

> On appeal, the parties focus[ed] on two different bases for attorneys' fees: (1) a contractual basis rooted in whether the first paragraph of the 2007 Fee Order entitles Plaintiffs to permanent fees for the duration of this litigation; and (2) a statutory basis dependent on whether Plaintiffs are a "prevailing party" under 42 U.S.C. § 1988. The latter implicates differing views among the circuits over the bounds of postdecree fee entitlement. Defendants also argue that even if fees were generally available on either a contractual or statutory basis, the district court should have assessed the reasonableness of Plaintiffs' position and their degree of success.

*Frew v. Traylor*, 688 F. App'x 249, 253 (5th Cir. 2017), as revised (Apr. 28, 2017).

The Fifth Circuit first considered "the statutory argument for fees based on 'prevailing party' status." *Id*. at 254. Having found that a party who "successfully obtains a settlement agreement that is made enforceable through a consent decree is a prevailing party", the Fifth Circuit concluded that "[f]ees may also be recoverable for successful work done after entry of the consent decree that is done to enforce the decree." *Id*. However, the Defendants argued that since the Plaintiffs were unsuccessful in extending the Defendants' obligations under the lagging counties provision, the Plaintiffs were not prevailing parties. *Id*.

Noting that the "Defendants would have a strong argument if the Plaintiffs' unsuccessful

---

³*See Frew v. Janek*, No. 3:93-CV-65 (E.D. Tex. Sep. 29, 2014), "Order Granting Plaintiffs' Contested Motion for Interim Attorneys' Fees for 2012" (docket entry #1248).

attempt to extend the lagging counties provisions was not rooted in a procedure Plaintiffs bargained for and obtained in the 2007 Corrective Action Order," the Fifth Circuit found that the Plaintiffs were seeking "attorneys' fees for a discrete set of motions contemplated in the 2007 Corrective Action Order for which they indisputably obtained prevailing party status." *Id*. at 254-256. The Fifth Circuit continued as follows:

> Negotiations and motion practice concerning the status of the checkup reports and lagging counties provision come 2011 was part of what Plaintiffs achieved as a result of their 2007 success. This established framework makes the motions at issue more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was established in the original decree. Defendants argue that unlike the mandatory negotiation provision, the Corrective Action Order did not require the filing of a motion in 2012, and Plaintiffs should thus not receive fees when their decision to file a motion ended up not being a sound one. At a minimum, however, part of what Plaintiffs achieved in 2007 was the opportunity to have the Court decide whether the "checkup reports and lagging counties" plan should continue. Prevailing party status obtained in 2007 thus extended to the final step contemplated in the Corrective Action Order for the lagging counties provision. *See Walker* [*v. U.S. Dep't of Hous. & Urban Dev.*], 99 F.3d [761] at 767 [(5th Cir. 1996)] ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees."). That the work arises out of a discrete procedure expressly anticipated in the Corrective Action Order also eliminates the concern expressed by the Sixth and Seventh Circuits that early success in institutional litigation could create a "gravy train" or "cottage industry" of never-ending fee requests for civil rights attorneys regardless of what they accomplish. See *Binta B.* [*ex rel. S.A. v. Gordon Binta B.*], 710 F.3d [608] at 625 [(6th Cir. 2013)]; *Alliance to End Repression* [*v. City of Chicago*], 356 F.3d [767] at 772 [(7th Cir. 2004)]. Our reasoning would not extend, for example, to a motion filed by Plaintiffs in 2017 seeking to reinstitute the "lagging counties" provision.

*Id.*, 688 F. App'x at 256–57 (internal footnotes omitted).

Having concluded that the "Plaintiffs were the prevailing party for purposes of the two motions at issue as court consideration of them was part of the relief they successfully obtained in the 2007 Corrective Action Order" (*Id*. at 258), the Fifth Circuit then turned to the issue of the reasonableness of the amount of attorneys' fees requested. *Id*. at 257. The Fifth Circuit found that

-5-

> [P]revailing party status does not automatically entitle a party to the full amount of attorneys' fees incurred. Courts review such requests for reasonableness, which includes consideration of the success achieved. *See Hensley* [*v. Eckerhart*], 461 U.S. [424] at 436, 103 S.Ct. 1933, [76 L.Ed.2d 40 (1983)] ("If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.... [T]he most critical factor [in determining a reasonable fee] is the degree of success obtained.").

*Id.* at 257.

The Fifth Circuit concluded that "even if the 2007 Fee Order entitles Plaintiffs to attorneys' fees throughout this litigation, it does not exempt the requested fees from the judicial scrutiny for reasonableness that typically applies to prevailing party fee requests." *Id.* at 257. Noting that this court did not engage in a "degree of success" analysis, the Fifth Circuit vacated this court's interim fee order and remanded to this court consideration of the sole issue of the degree of success obtained when analyzing the reasonableness of the fees requested. *Id.* at 258.[4]

### DISCUSSION AND ANALYSIS

As instructed by the Fifth Circuit, the court turns to *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) for guidance on the issue of "degree of success." In *Hensley*, the Supreme Court noted that

> Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94–1558, p. 1 (1976). Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" S.Rep. No. 94–1011, p. 4 (1976), U.S.Code Cong. & Admin.News

---

[4] In his concurring opinion, Judge Dennis concluded that "the district court correctly concluded that it is the 2007 Fee Order, not 42 U.S.C. § 1988, that entitles the Plaintiffs to attorneys' fees, and I am convinced that this fact should control the reasonableness analysis on remand." *Frew v. Traylor*, 688 F. App'x 249, 258 (5th Cir. 2017), as revised (Apr. 28, 2017) (Dennis, J., concurring).

1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

*Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (footnote omitted).

"The amount of the fee, of course, must be determined on the facts of each case." *Id.*[5] Once the lodestar is calculated,

> [t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
>
> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work

---

[5] The computation of a reasonable attorneys' fee award is a two-step process. *Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted). First, the court must utilize the "lodestar" analysis to calculate a "reasonable" amount of attorneys' fees. *Id*. The "lodestar" is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id*. Second, in assessing the "lodestar" amount, the court must consider the twelve *Johnson* factors before final fees can be calculated. *Id*.

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id*. at 192 n. 23, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). After considering the twelve *Johnson* factors, the court may adjust the "lodestar" upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974). The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *See Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light

of the substantial relief obtained. But had respondents prevailed on only one of their six general claims, for example the claim that petitioners' visitation, mail, and telephone policies were overly restrictive, . . . , a fee award based on the claimed hours clearly would have been excessive.

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

———————————

We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

*Hensley*, 461 U.S. 424, 434-437, 440, 103 S. Ct. 1933, 1940-1941, 1943, 76 L. Ed. 2d 40 (1983)

(internal footnotes omitted).

In their motion for attorneys fees, the Plaintiffs initially extend a policy-type argument, contending that attorneys representing prevailing parties should be compensated like attorneys representing fee-paying clients, *i.e.*, compensated for all time reasonably spent on a matter and "not for each separate procedure or maneuver depending on its isolated success." PL. OPP. MTN. FOR AWARD OF INTERIM ATTORNEYS' FEES, (Dkt. #1569), p. 4. The Plaintiffs go on to argue that

Absent the availability of a reasonable fee award, most private parties, like the plaintiff class of indigent children depending on Medicaid in this case, do not have the means to obtain capable counsel who handle similarly complex federal litigation. The availability of reasonable attorney's fees is essential to the courts' ability, and

> responsibility, to enforce federal rights. Without assurance of reasonable fees being paid for meritorious civil rights cases, important federal rights lose their efficacy.

*Id.* at 5.

The Plaintiffs further argue that the court, in conducting its degree of success analysis, should focus on the significance of the excellent overall results obtained herein rather than on an ultimately unsuccessful motion viewed in isolation. The Plaintiffs also contend that the lagging counties motions are not separate and distinct, but, rather, intertwined, with the successful relief obtained in this case overall. In so arguing, the Plaintiffs urge the court to award them their full interim attorneys' fees.

In response, the Defendants contend that because the Plaintiffs were unsuccessful on their claims alleged in the lagging counties motions, the Plaintiffs' corresponding attorneys' fees for those unsuccessful motions should be zero. The Defendants contend that "[t]he 'success' to be adjudged in the *Hensley* analysis is not the success that Plaintiffs obtained in 2007 when the Corrective Action Orders were entered, but rather the success (*i.e.*, lack of success) Plaintiffs had on the Lagging Counties motions." DEF. RESP. IN OPP. TO PL. OPP. MTN. FOR AWARD OF INTERIM ATTORNEYS' FEES, (Dkt. #1576), p. 15. The Defendants continue by noting that if the Plaintiffs' 2007 success entitled the Plaintiffs to be compensated for work that ultimately proved to be unsuccessful, then the Fifth Circuit could have affirmed this court's prior interim fee order rather than vacating and remanding for further consideration. The Defendants additionally argue that the Plaintiffs' attorneys have already been well-compensated for their successes (*i.e.*, for the entry of the Consent Decree and Corrective Action Orders) and that an award to the Plaintiffs on the lagging counties motions would actually amount to counsel being paid twice for the same work and the same success. Next, the

Defendants argue that the Plaintiffs, in arguing that the lagging counties issues are inextricably intertwined to the successful relief obtained in this case, are confusing the prevailing parties' analysis with the degree of success analysis. However, the Defendants contend that even if the court applies the inextricably intertwined test to its degree of success analysis, the issues raised in the lagging counties motions are separate and distinct from the Plaintiffs' successful claims. Additionally, in response to the Plaintiffs' policy argument, the Defendants contend that

> if the *Frew* Plaintiffs' attorneys are indeed to be compensated every time they file a motion, regardless of whether the motion is meritless, it would give Plaintiffs' attorneys no incentive to ever agree to end the State's obligations under any Corrective Action Order or Consent Decree provision. Plaintiffs should not be rewarded for refusing to acknowledge during Corrective Action Order conference periods that the State has in fact complied with its obligations and/or implemented a durable remedy.

DEF. RESP. IN OPP. TO PL. OPP. MTN. FOR AWARD OF INTERIM ATTORNEYS' FEES, (Dkt. #1576), pp. 22-23.

Finally, the Defendants argue that the Plaintiffs "were not 'enforcing the relief obtained for the Plaintiff class' but were rather asking the Court in their motion for 'further action' to compel Defendants to perform actions not agreed to in the CAO." DEF. SUR-REPLY, (Dkt. #1583), p. 10. The Defendants continue as follows:

> The relief obtained in the CAO was for Defendants to perform specific actions, and the conference period was for the parties to discuss whether Defendants had performed those actions. Plaintiffs agreed during the conference period and at the hearing on the Lagging Counties motions that Defendants had done so. It was not anticipated in the CAO that the post-conference motion procedure would be used to request that the Court order Defendants to perform additional actions that were not bargained for in the CAO, nor is it reasonable for Plaintiffs' counsel to now seek payment for filing such a motion.

*Id.* (footnotes omitted). Based on all of the foregoing arguments, the Defendants urge the court to

deny in its entirety the Plaintiffs' request for 2012 attorneys' fees for their work on the two lagging counties motions.

Alternatively, if the court finds that the Plaintiffs did achieve some degree of success, the Defendants ask the court to reduce the Plaintiffs' attorneys' fee award pursuant to the lodestar and *Johnson* factors.

In conducting its degree of success analysis, the court looks to the factors set forth in *Hensley*: (1) Did the Plaintiffs fail to prevail on claims that were unrelated to the claims on which they succeeded?; and (2) Did the Plaintiffs achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? The court analyzes each factor in turn.

### 1. Did the Plaintiffs fail to prevail on claims that were unrelated to the claims on which they succeeded?

Having considered the arguments of the parties, the court finds that the Plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded. That is, the Plaintiffs failed to succeed on the lagging counties motions which were unrelated to the claims upon which the Plaintiffs had been successful.

The Plaintiffs essentially ask the court to extend the Fifth Circuit's analysis concerning prevailing party status to its degree of success analysis. However, on this set of facts, the court would be remiss in doing so. On August 6, 2012, the Plaintiffs filed their "Motion for Further Action Following Corrective Action Order: Checkup Reports and Plans for Lagging Counties (Dkt. 637)" (docket entry #922). In their motion, the Plaintiffs state that "[t]his motion addresses one of 11 Corrective Action Orders that were entered in 2007 (Dkt. 663) in an effort to bring Defendants

into compliance with a Consent Decree that had been entered in 1996, and which is still in effect. The Corrective Action Order ("CAO") at issue is Check Up Reports and Plans for Lagging Counties (Dkt. 637-3)." PL. MTN. FOR FURTHER ACTION, (Dkt. #922), p. 1. However, just five months later at the January 8, 2013 hearing on certain matters including the motion at issue, counsel for the Plaintiffs stated that the ". . . Corrective Action Order, it has run its course. And in fact, frankly, they're not required to do anything else under the Corrective Action Order, I don't believe. Nothing. It's gone." TR. at p. 124 (docket entry #1003). The court noted at the hearing that "[counsel for the Plaintiffs] just said that he agrees 637-3 has been satisfied." *Id*. at 130. Clearly, then the Plaintiffs, in their Motion for Further Action, were not seeking to enforce the provisions of CAO 637-3, but were, rather, seeking to expand CAO 637-3 even though, by the Plaintiffs' own admission, the CAO had already "run its course." As noted by the Defendants, and the court agrees, it "was not anticipated in the CAO that the post-conference motion procedure would be used to request that the Court order Defendants to perform additional actions that were not bargained for in the CAO, . . ." DEF. SUR-REPLY, (Dkt. #1583), p. 10. Since the Plaintiffs' Motion for Further Action was outside the scope of the procedure contemplated by the CAO, the court concludes that the Plaintiffs' unsuccessful pursuit of their lagging counties motion was not related to the claims upon which they had been successful. That is, the Plaintiffs did not file their Motion for Further Action based upon the success they achieved in 2007, *i.e.*, "the opportunity to have the [c]ourt decide whether the 'checkup reports and lagging counties' plan should continue", *Frew*, 688 F. App'x at 256, because the CAO had already been satisfied.

## 2. Did the Plaintiffs achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Having found that the Plaintiffs' unsuccessful pursuit of their motion for further action and their opposition to the Defendants' motion to modify the consent decree relating to lagging counties are not related to their 2007 success, the court need not examine in depth the second *Hensley* factor. The court simply concludes that the answer to the second *Hensley* factor is "No."

The court notes, however, that this order is specific to this request for attorneys' fees and should not serve as a template for any future request for attorneys' fees, unless, of course, such a request is similar to the facts herein. This order does not prevent the Plaintiffs from pursuing an award of attorneys' fees in the future. In this instance, however, the court finds that even though the Plaintiffs are prevailing parties, they are not able to establish that they achieved any degree of success under *Hensley*, and neither of the *Hensley* factors weighs in favor of the Defendants' motion for award of interim attorneys' fees. Therefore, the court finds that the Plaintiffs should not be awarded any attorneys' fees for their work on the two underlying motions.

Finally, the Plaintiffs move the court for leave to file supplemental authority in support of their interim fee award. The supplemental authority, however, is being offered in support of the Plaintiffs' lodestar calculation. The court notes that in the event the court concluded that the Plaintiffs established that they had achieved any degree of success, the Defendants invited the court to review the lodestar and the remaining *Johnson* factors. As noted in the court's September 29, 2014 "Order Granting Plaintiffs' Contested Motion for Interim Attorneys' Fees for 2012" (docket entry #1248, p. 7), the Defendants failed to object to "the reasonableness of the rate sought" or "the reasonableness of the amount of time spent on any particular task." Additionally, while the

Defendants argued that the court should reduce the requested fee award due to a lack of any degree of success obtained, the Defendants did not argue any of the other *Johnson* factors. The Fifth Circuit noted that "the district court acknowledged that it must review whether the time spent and rates charged for the motion practice was reasonable but Defendants did not object on either ground; . . ." *Frew*, 668 F. App'x at 257. The Defendants had the opportunity to raise any arguments concerning the calculation of the lodestar and the remaining *Johnson* factors in their original opposition to the Plaintiffs' contested motion for interim attorneys' fees but failed to do so at that time. The court is not inclined to address matters now that should have been raised in 2014. Accordingly, the court finds that the Defendants abandoned their arguments relating to the calculation of the lodestar and the remaining *Johnson* factors. Given that the court has declined to address the Defendants' belated contest of the Plaintiffs' lodestar calculation, the Plaintiffs' motion for leave is moot.

## CONCLUSION

Based on the foregoing, the Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1569) is hereby **DENIED**. The Plaintiffs' opposed motion for leave to file supplemental authority in support of Plaintiffs' opposed motion for an award of interim attorneys' fees on remand by the Fifth Circuit's ruling of April 27, 2017 (docket entry #1592) is **DENIED AS MOOT**.

IT IS SO ORDERED.

SIGNED this the 7th day of April, 2020.

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE